David M. Arbogast (SBN 167571)
David@SpiroMoss.com
Ira Spiro (SBN 67641)
Ira@SpiroMoss.com
**SPIRO MOSS BARNESS LLP**
11377 W. Olympic Boulevard, Fifth Floor
Los Angeles, CA 90064-1683
Phone: (310) 235-2468; Fax: (310) 235-2456

Paul R. Kiesel, Esq. (SBN 119854)
kiesel@kbla.com
Patrick DeBlase, Esq. (SBN 167138)
deblase@kbla.com
Michael C. Eyerly, Esq. (SBN 178693)
eyerly@kbla.com
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Phone: (310) 854-4444; Fax: (310) 854-0812

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300; Fax (215) 851-8029

Jeffrey K. Berns, Esq. (SBN 131351)
jberns@jeffbernslaw.com
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax: (818) 867-4820

Attorneys for Plaintiff and all others Similarly Situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| DOLORES MANDRIGUES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB, WACHOVIA MORTGAGE CORPORATION, and DOES 1 through 10 inclusive,<br><br>Defendants. | **CASE NO. C-07-04497 RS**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1)** **Violations of the Truth in Lending Act, 15 U.S.C. §1601,** *et seq*;<br><br>**(2)** **Violation of Bus. & Prof. Code §17200,** *et seq*. **- "Unlawful" Business Practices (TILA);**<br><br>**(3)** **Violation of Bus. & Prof. Code §17200,** *et seq*. **– "Unfair" and "Fraudulent" Business Practices;**<br><br>**(4)** **Breach of Contract;**<br><br>**(5)** **Breach of the Covenant of Good Faith and Fair Dealing; and**<br><br>**(6)** **Violation of Bus. & Prof. Code §17200,** *et seq*. **– "Unlawful" Business Practices (Fin. Code § 22302).**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, DOLORES MANDRIGUES, individually and on behalf of all others similarly situated alleges as follows:

## I.

## INTRODUCTION

1.     This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other statutory and common law in effect.  Plaintiff DOLORES MANDRIGUES, individually, and on behalf of all others similarly situated, brings this action against WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB, WACHOVIA MORTGAGE CORPORATION, and DOES 1-10 (collectively "Defendants"), based, in part, on Defendants' failure to clearly and conspicuously disclose to Plaintiff and the Class Members, in Defendants Option Adjustable Rate Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans, (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser rate will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that Plaintiff and Class members would be paying on the Note(s).

## II.

## THE PARTIES

2.     Plaintiff, DOLORES MANDRIGUES ("Plaintiff") is, and at all times relevant to this Complaint, was an individual residing in Milpitas, California.  On or about August 4, 2006, Plaintiff refinanced her existing home loan and entered into an Option ARM loan agreement with Defendants. The Option ARM loan was secured by Plaintiff's primary residence.  Attached hereto as Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this action.

3.     Defendant WORLD SAVINGS, INC. is a California corporation licensed to do, and is doing business in California.  At all relevant hereto, WORLD SAVINGS, INC., was and is engaged in the business of promoting, marketing, distributing and selling the Option Arm loans that are

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1    the subject of this Complaint.  WORLD SAVINGS, INC. transacts business in Santa Clara County,

2    California and at all relevant times promoted, distributed, and sold the Option Arm loans that are the

3    subject of this Complaint throughout the United States, including Santa Clara County, California.

4    WORLD SAVINGS, INC. has significant contacts with Santa Clara County, California, and the

5    activities complained of herein occurred, in whole or in part, in Santa Clara County, California.

6         4.      Defendant, WORLD SAVINGS BANK, FSB, was and is a business organization form

7    unknown.  Plaintiff is informed and believes and thereupon alleges that Defendant WORLD SAVINGS

8    BANK, FSB is a corporation; that Defendant WORLD SAVINGS BANK, FSB is a partnership; and that

9    Defendant, WORLD SAVINGS BANK, FSB, is a division of Defendant, WORLD SAVINGS, INC.

10        5.      Defendant, WACHOVIA MORTGAGE CORPORATION ("WACHOVIA"), is a North

11    Carolina corporation licensed to do, and is doing business in California.   At all relevant times hereto

12    WACHOVIA was and is engaged in the business of promoting, marketing, distributing and selling the

13    Option Arm loans that are the subject of this Complaint.   WACHOVIA transacts business in Santa

14    Clara County, California and at all relevant times promoted, distributed, and sold the Option Arm loans

15    throughout the United States, including Santa Clara County, California. WACHOVIA has significant

16    contacts with Santa Clara County, California, and the activities complained of herein occurred, in whole

17    or in part, in Santa Clara County, California.

18        6.      Defendants,  WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB,

19    WACHOVIA MORTGAGE CORPORATION, and DOES 1 through 10, shall hereinafter be referred to

20    collectively as "Defendants."

21        7.      At all times mentioned herein, Defendants, and each of them, were engaged in the

22    business of promoting, marketing, distributing, and selling the Option Arm loans that are the subject of

23    this Complaint, throughout the United States, including Santa Clara County, California.

24        8.      Plaintiff is informed and believes, and thereon alleges that each and all of the

25    aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

26    fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

27    for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately

28    caused by the conduct of Defendants.

9.     Plaintiff is informed and believes, and thereon alleges, that at all times material hereto and mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent, servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of each of the remaining Defendants and were at all times acting within the purpose and scope of such agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership or employment and with the authority, consent, approval and ratification of each remaining Defendant.

10.     At all times herein mentioned, each Defendant was the co-conspirator, agent, servant, employee, assignee and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the permission and consent of each of the other Defendants.

11.     Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, are, and at all material times relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in California.  Defendants, and each of them, are corporations or other business entities, form unknown, have, and are doing business in this judicial district.

12.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10, inclusive, are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are assignees to the loans which are the subject of this action.  Plaintiff will seek leave of Court to replace the fictitious names of these entities with their true names when they are discovered by Plaintiff herein.

13.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff at this time, and Plaintiff therefore sue said Defendants by such fictitious names.  Plaintiff alleges, on information and belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiff will seek leave of Court to amend this Complaint when the names of said Doe defendants have been ascertained.

14.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants, and each of them, including without limitation those Defendants herein sued as DOES, were acting in concert or participation with each other, or were joint participants and collaborators in the

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

acts complained of, and were the agents or employees of the others in doing the acts complained of

herein, each and all of them acting within the course and scope of said agency and/or employment by the

others, each and all of them acting in concert one with the other and all together.

### III.

### JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

U.S.C. § 1331.

16.    This Court has personal jurisdiction over the parties in this action by the fact that

Defendants are either individuals who reside in this District within California or are corporations duly

licenced to do business in California.

17.    Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because

a substantial part of the events and omissions giving rise to the claims occurred in this district, and

because there is personal jurisdiction in this district over the named Defendant because it regularly

conducts business in this judicial district.

### IV.

### FACTS COMMON TO ALL CAUSES OF ACTION

18.    WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB and WACHOVIA are

amongst the largest financial institutions in the United States.

19.    The instant action arises out of residential mortgage loan transactions in which

Defendants failed to disclose pertinent information in a clear and conspicuous manner to Plaintiff and

the Class members, in writing, as required by law.

20.    This action also concerns Defendants' unlawful, fraudulent and unfair business acts or

practices.  Defendants engaged in a campaign of deceptive conduct and concealment aimed at

maximizing the number of consumers who would accept this type of loan in order to maximize

Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to

lose their homes through foreclosure.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

21.     Plaintiff, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendants.  The Option ARM loan sold to Plaintiff and the Class is a deceptively devised financial product.  The loan has a variable rate feature with payment caps.  The product was sold based on the promise of a low, fixed interest rate, when in fact Plaintiff and the Class were charged a different, much greater interest rate than promised.  Further, Defendants disguised from Plaintiff and the Class the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.  Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans.  Defendants' Option ARM loan includes a stiff and onerous prepayment penalty making it extremely difficult to extricate from the loans.

22.     The Option ARM loan Defendants sold to Plaintiff violates the Truth In Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to make these disclosures in connection with the Option ARM loan sold to Plaintiff and the Class.

23.     At all times relevant, Defendants promoted their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner.  Defendants promoted to the general public a loan which would provide a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization.  Defendants used this "teaser" rate to lure Plaintiff into purchasing Defendants' Option ARM loan product.  However, the low fixed rate was illusory, a false promise.  Plaintiff and others similarly situated did not receive the benefit of the low rate promised to them.  Once signed on to Defendants' loan, the interest rate applied to Plaintiff's and Class members' loans was immediately and significantly increased.

24.     Plaintiff and others similarly situated were consumers who applied for a mortgage loan through Defendants.  During the loan application process, in each case, Defendants represented to Plaintiff and the Class members that in accepting these loan terms, Plaintiff would be able to lower their mortgage payment and save money.  Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

25.     Based on the Defendants' representations, and the conduct alleged herein, Plaintiff and Class members agreed to finance their primary residence through Defendants' Option ARM loan.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1   Plaintiff and Class members were told they were being sold a home loan with a low interest rate of

2   between 1% and 3.0% interest rate (the "teaser" rate), and that the interest rate was fixed for the first

3   three (3) to five (5) years of the loan.  Defendants also informed Plaintiff, and Plaintiff was lead to

4   believe, that if they made payments based on the promised low interest rate, which were the payments

5   reflected in the written payment schedule provided to them by Defendants, the loan was a no negative

6   amortization home loan.  Plaintiff's payments were to be applied to their principal loan balances as well

7   as to interest.

8           26.    After, the purported three (3) - five (5) year fixed interest period, Plaintiff and the Class

9   members reasonably believed, based on the representations contained in the documents Defendant

10  provided to Plaintiff and the Class members, that they would be able to refinance their loan and get a

11  new loan before their scheduled payments increased.  However, the payment schedule provided by

12  Defendants failed to disclose and by omission failed to inform these consumers that due to the negative

13  amortization that was purposefully built into these loans, Plaintiff and the Class members would be

14  unable to refinance their homes as their would be little or no equity left to refinance.

15          27.    Plaintiff believed these facts to be true because that is what the Defendants wanted

16  consumers to believe.  Defendants aggressively sold their product as a fixed, low interest home loan.

17  Defendants knew that if they sold these loans in such a manner, their Option ARM loan product would

18  be a hugely popular and profitable product for them.  Defendants also knew, however, that they were

19  selling their product in a false and deceptive manner.  While Defendants trumpeted their low, fixed rate

20  loans to the public, Defendants knew their promise of low, fixed interest was illusory.

21          28.    In fact, Defendants' Option ARM loan possessed a low, fixed ***payment*** but not a low,

22  fixed interest rate.  Unbeknownst to Plaintiff and Class members, the actual interest rate they were

23  charged on their loans was not fixed, was not the low teaser interest rate stated in the loan

24  documentation and was in fact considerably higher than going market rates.  And, after purchasing

25  Defendants' Option ARM loan product, Plaintiff and Class members did not actually receive the benefit

26  of the low, teaser rate at all in some cases, or at best, received that rate for only a single month.

27  Immediately, thereafter, Defendants in every instance and for every loan, increased the interest rate they

28  charged consumers.  The now-increased interest charges incurred by Plaintiff and Class members over

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1  and above the fixed interest payment rate were added to the principal balance on their home loans in

2  ever increasing increments, substantially reducing the equity in these borrowers' homes.

3      29.  In stark contrast to this reality, Defendants, through the standardized loan contracts they

4  created and supplied to Plaintiff and the Class, Defendants stated that negative amortization was only a

5  possibility and would occur only if the payments were not sufficient.  Defendants concealed and failed

6  to disclose the fact that the loan as presented and designed, in fact, *guaranteed* negative amortization.

7  Defendants failed to disclose and omitted the objectively material fact that negative amortization would

8  occur if the consumer followed the payment schedule set forth by Defendants in the loan documents.

9  This information was objectively material and necessary for consumers to make an informed decision

10  because this would have revealed that the loan's principal balance would increase if the payment

11  schedule was followed, thereby rendering it impossible to refinance the loan at or around the time the

12  prepayment penalty expired and/or by the time the interest and payment rates re-set.  In this respect,

13  Defendants utterly failed to place any warning on the Truth and Lending Disclosure Form about

14  negative amortization.

15      30.  At all times relevant, once Plaintiff and the Class members accepted Defendants' Option

16  ARM loan contract, they had no viable option by which to extricate themselves because these Option

17  ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

18      31.  The Option ARM loans sold by Defendants all have the following uniform

19  characteristics:

20      (a)  There is an initial low interest rate or "teaser" rate that was used to entice the

21      Plaintiff into entering into the loan.  The rate offered was typically 1%-3%;

22      (b)  The loan has with it a corresponding low payment schedule.  The marketing of the

23      loan with the above teaser was intended to misleadingly portray to consumers that

24      the low payments for the first three (3) to five (5) years were a direct result of the

25      low interest rate being offered;

26      (c)  The initial payments in the required disclosures were equal to the low interest rate

27      being offered.  The purpose was to assure that if someone were to calculate what

28      the payment would be at the low offered interest rate, it corresponded to the

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1    payment schedule.  This portrayal was intended to further mislead consumers into

2    believing that the payments were enough to cover all principal and interest;

3        (d)    The payment has a capped annual increase on the payment amount; and

4        (e)    The loan includes a prepayment penalty preventing consumers from securing a

5    new loan for a period of up to three (3) years.

6        32.    Defendants uniformly failed to disclose and by omission failed inform consumers,

7    including Plaintiff and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate

8    offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty

9    (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the rate

10   promised.

11       33.    Defendants uniformly failed to disclose and by omission failed to inform consumers,

12   including Plaintiff and the Class members, that the payments set forth in Defendants' schedule of

13   payments were insufficient to cover the actual charges and that this was, in fact, a loan that would cause

14   the Plaintiff's and the Class members to lose the equity they have in their home.

15       34.    Defendants uniformly failed to disclose and by omission failed to inform consumers,

16   including Plaintiff and the Class members, that when the principal balance increased to a certain level,

17   they would no longer have the option of making the fixed interest payment amount.

18       35.    Disclosing whether a payment will result in negative amortization is of critical

19   importance to consumers.  If the disclosed payment rate is insufficient to pay both principle and interest,

20   one of the consequences of negative amortization is a loss of equity.  Defendants are and at all times

21   relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a

22   payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely

23   important material information.

24       36.    At all times relevant, Defendants, and each of them, knew or should have known, or were

25   reckless in not knowing, that: (i) the payment rate provided to Plaintiff and the Class members was

26   insufficient to pay both interest and principle; (ii) that negative amortization was substantially certain to

27   occur if Plaintiff and the Class members made payments according to the payment schedule provided by

28   Defendants; and (iii) that loss of equity and/or loss of Plaintiff's and the Class members residence was

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1    substantially certain to occur if Plaintiff and the Class members made payments according to the

2    payment schedule provided by Defendants.

3         37.    In spite of its knowledge, Defendants sold its ARM loans as product that would provide

4    Plaintiff and the Class members with a low interest rate for the first three (3) to five (5) years of the

5    loan, and at all times relevant, failed to disclose and/or concealed by making partial representations of

6    material facts when Defendants had exclusive knowledge of material facts that negative amortization

7    was certain to occur.  This concealed and omitted information was not known to Plaintiff and the Class

8    members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by

9    making such statements and partial, misleading representations to Plaintiff and all others similarly

10   situated.  Because the ARM loans did not provide a low interest rate for the first three (3) to five (5)

11   years of the Note and the payment rate disclosed by Defendants was insufficient to pay both principle

12   and interest, negative amortization occurred.

13        38.    The true facts about Defendants' ARM loans is that they do not provide the low interest

14   rate promised, and are certain to result in negative amortization.

15        39.    Disclosure of a payment rate that is sufficient to pay both principle and interest on the

16   loans is of critical importance consumers.  If the disclosed payment rate is insufficient to pay both

17   principle and interest, one of the consequences is that negative amortization or loss of equity will occur.

18   Defendants are and at all times relevant hereto have been aware that the ability of the disclosed payment

19   rate to pay both principle and interest so as to avoid negative amortization is one of the most important

20   terms of a loan.

21        40.    To this day, Defendants continue to conceal material information from consumers, and

22   the public, that: (i) the payment rate provided to Plaintiff and the Class members is and was insufficient

23   to pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiff and the

24   Class members will suffer negative amortization; and (ii) loss of equity and/or possession of the

25   property is substantially certain to occur if the disclosed payment schedule is followed.  Nevertheless,

26   Defendants have refused to clearly and conspicuously disclose to Plaintiff and the Class members the

27   existence of this important material information and the injury caused thereby, including but not limited

28   to the loss of equity.

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

41.     In the end, the harm caused by Defendants failures to disclose and omissions grossly outweighs any benefit that could be attributed to them.

42.     Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

43.     The ARM loans have resulted and will continue to result in significant loss and damage to the Class Members, including but not limited to the loss of equity these consumers have or had in their homes.

44.     The facts which Defendants misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the ARM loans in that Plaintiff and others similarly situated would not have purchased these loans but for Defendants' unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

45.     Defendants engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

46.     Defendants unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiff or others similarly situated would, in fact, receive a home loan that would actually provide the low interest and payment rate, as promised, for the first three (3) to five (5) years of the loan that is sufficient to pay both principle and interest.

47.     Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise sold these ARM loans throughout the United States, including the State of California.

## V.

## <u>CLASS ACTION ALLEGATIONS</u>

48.     Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b),  and the case law thereunder.  The classes Plaintiff seeks to represent are defined as follows:

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

**The California Class**:  All individuals who, within the four year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the State of California.  Excluded from the California Class are Defendants' employees, officers, directors, agents, representatives, and their family members; and

**The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiff's complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America.  Excluded from the National Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

An appropriate sub-Class exists for the following Class Members:

All individuals in the United States of America who, within the three year period preceding the filing of Plaintiff's complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendants on their primary residence located in the United States of America. Excluded from the National sub-Class are Defendants' employees, officers, directors, agents, representatives, and their family members.

Plaintiff reserves the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through discovery, legal arguments advanced by Defendants or otherwise.

49.    <u>Numerosity</u>:  The Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case.  While the exact number of Class members is unknown at this time, Plaintiff is informed and believes that the entire Class or Classes consist of approximately tens of thousands of members.

50.    <u>Commonality</u>: Common questions of law or fact are shared by the Class members.  This action is suitable for class treatment because these common questions of fact and law predominate over any individual issues.  Such common questions include, but are not limited to, the following:

(1)    Whether Defendants' acts and practices violate the Truth in Lending Act;

(2)    Whether Defendants' conduct violated 12 C.F.R. § 226.17;

(3)    Whether Defendants' conduct violated 12 C.F.R. § 226.19;

(4)    Whether Defendants engaged in unfair business practices aimed at deceiving Plaintiff and the Class members before and during the loan application process;

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

(5)     Whether Defendants, by and through their officers, employees, and agents failed to disclose that the interest rate actually charged on these loans was higher than the rate represented and promised to Plaintiff and the Class members;

(6)     Whether Defendants, by and through their officers, employees and agents concealed, omitted and/or otherwise failed to disclose information they were mandated to disclose under TILA;

(7)     Whether Defendants failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)     Whether Defendants failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9)     Whether Defendants' failure to apply Plaintiff's and the Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10)    Whether Defendants' conduct in immediately raising the interest rate on consumers' loans so that no payments were made to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11)    Whether Defendants' marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendants knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(12)    Whether the terms and conditions of Defendants' Option ARM home loan are unconscionable;

(13)    Whether Plaintiff and the Class are entitled to damages;

(14)    Whether Plaintiff and the Class members are entitled to punitive damages; and

(15)    Whether Plaintiff and the Class members are entitled to rescission.

51.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class members.  Plaintiff and the other Class members were subjected to the same kind of unlawful conduct and the claims of

1    Plaintiff and the other Class members are based on the same legal theories.

2        52.    Adequacy:  Plaintiff is an adequate representative of the Class because her interests do

3    not conflict with the interests of the other members of the Class Plaintiff seeks to represent.  Plaintiff has

4    retained counsel competent and experienced in complex class action litigation and Plaintiff intends on

5    prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately

6    protected by Plaintiff and her counsel.

7        53.    Ascertainable Class:  The proposed Classes are ascertainable in that the members can be

8    identified and located using information contained in Defendants' mortgage lending records.

9        54.    This case is brought and can be maintained as a class action under Rule 23(b)(1),

10   23(b)(2), and 23(b)(3):

11       (a)    Risk of Inconsistent Judgments: The unlawful acts and practices of Defendants, as

12              alleged herein, constitute a course of conduct common to Plaintiff and each Class

13              member.  Prosecution of separate actions by individual Class members would create a

14              risk of inconsistent or varying adjudications which would establish incompatible

15              standards of conduct for Defendants and/or substantially impair or impede the ability of

16              individual Class members to protect their interests;

17       (b)    Injunctive and/or Declaratory Relief to the Class is Appropriate:  Defendants, and each of

18              them, have acted or refused to act on grounds generally applicable to the Class, thereby

19              making final injunctive relief or corresponding declaratory relief with respect to the Class

20              as a whole appropriate; and

21       (c)    Predominant Questions of Law or Fact:  Questions of law or fact common to the Class

22              members, including those identified above, predominate over questions affecting only

23              individual Class members (if any), and a class action is superior to other available

24              methods for the fair and efficient adjudication of the controversy.  Class action treatment

25              will allow a large number of similarly situated consumers to prosecute their common

26              claims in a single forum, simultaneously, efficiently, and without the unnecessary

27              duplication of effort and expense that numerous individual actions would require.

28              Further, an important public interest will be served by addressing the matter as a class

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

action.  The cost to the court system of adjudicating each such individual lawsuit would be substantial.

# VI.

## FIRST CAUSE OF ACTION

**(Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,**

**(Against All Defendants)**

55.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

56.    15 U.S.C. §1601, *et seq*., is the Federal Truth in Lending Act ('TILA").  The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff Commentary.  Compliance by lenders with Regulation Z became mandatory October 1, 1982.  Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

57.    The purpose of TILA is to protect consumers.  This is stated in 12 C.F.R. § 226.1, which reads:

> **§226.1 Authority, purpose, coverage, organization, enforcement and liability. . .**
>
> (b)    Purpose.  The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling . . .

58.    Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendants, must comply:

> **§ 226.17. General disclosure requirements.**
>
> (a)  Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1    information not directly related to the disclosures required under §

2    226.18.

3    59.    The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the

4    borrowers will be able to compare more readily the various credit terms available to them and avoid the

5    uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing

6    practices.

7    60.    Defendants' Option ARM loan violates TILA because Defendants failed to comply with

8    the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the

9    Federal Reserve Board.  Defendants failed in a number of ways to clearly, conspicuously and/or

10    accurately disclose the terms of the Option ARM loan to Plaintiff as Defendants were required to do

11    under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

12    61.    The TILA violations committed by Defendants are more specifically detailed as follows:

13    **A.    Defendants' Failure to Clearly and Conspicuously Disclose The Actual Interest Rate**

14    **Violates Truth in Lending Laws**

15    62.    12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures

16    concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as

17    much a violation of TILA as a failure to disclose at all.  Defendants failed to meet the disclosure

18    mandates required of them concerning the interest rate Defendants actually applied to Plaintiff's and

19    Class members' loans, as well as the interest actually charged to Plaintiff and the Class members.

20    63.    Defendants' disclosure in the Promissory Note concerning the interest rate is, at best,

21    unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly

22    different than the interest rate set forth by Defendants in the TILA Disclosure Form.  The interest rate

23    information set forth by Defendants in the Note conflicts with the interest rate information set forth by

24    Defendants in the TILA Disclosure Form.

25    64.    The interest rate set forth in the Note is the teaser rate that Defendants, in fact, apply to

26    the loan for a single month.  However, Defendants do not make clear in the Note or anywhere else that

27    this low promised rate (the same rate upon which Defendants base the written payment schedule

28    provided to Plaintiff) is only offered for the first thirty (30) days of the loan.  Defendants employ the

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

most convoluted, confusing and circuitous methodology in describing the interest rate.  In one part of the Note, Defendants state that the promised low interest rate is the rate until the "change date."  A description of the change date is found in another part of the Note.  The convoluted and disjointed method employed by which Defendants provide this information makes it extremely difficult, if not impossible for anyone to determine that, in fact, that the change date corresponds to the very first monthly payment Plaintiff and the Class members made on their loans.

65.    The convoluted language used by Defendants to disclose the interest rate on Plaintiff's and the Class members loans is not clear and conspicuous.  Rather, the disclosures used by Defendants were purposefully unclear and meant to mislead and confuse Plaintiff and the Class members.  In particular, it is virtually impossible to discern when Plaintiff and the Class members would receive the low interest rate they were promised, if, in fact, it can be determined at all.  And, the truth is that Plaintiff and the Class members *never* received the low interest rate, or in some cases received it for only thirty days.  Defendants promise of a low interest rate is and was wholly illusory and the deception, as alleged herein, was uniformly practiced on Plaintiff and Class members by Defendants to facilitate sales of their loans to consumers.

66.    The Note also sets forth the amount of Plaintiff's and Class members' initial monthly payments.  That amount is equal to what the payment would be if the low interest rate promised to Plaintiff by Defendants was true and was being applied to the principal balance on the loans.  This is a further deception committed by Defendants, because the real interest rate charged on the loans by Defendants is much higher than the low interest rate promised to Plaintiff and Class members.  Thus, the payment amount provided by Defendants was intended to and did deceive consumers into falsely believing they would, in fact, receive the teaser interest rate promised to them.

67.    The TILA Disclosure Form is also confusing and deceptive for much the same reason.  It shows the scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser" rate Plaintiff and Class members were promised.  In truth, however, this payment schedule has no real relation to the interest rate Defendants actually charged Plaintiff and the Class members on their loans.

/ / /

-17-

68.     Defendants' failure to clearly, conspicuously and accurately disclose the actual interest rate applied to Plaintiff's and Class members' loans, the Notes expressly state and/or implies that Plaintiff's and the Class members payments will pay off principal and interest on the loan.  Based on the payment schedule provided by Defendants in the Note and TILA Disclosure Form, Plaintiff and the Class members were led to believe that they would be paying off both principal and interest on their loans by making payments according to the payment schedule.  The contractual language in the Note only makes sense, and can only be true, if the promised low interest rate actually applied to Plaintiff's and the Class members loans was, in fact, the "teaser" rate promised by Defendants.  Thus, Plaintiff and the Class members reasonably believed that the low rate promised to them would be applied to their loans.  However, the true fact is that the payment schedule provided by Defendants did not pay any principal on the loan at all.  The payment schedule provided by Defendants only covered a portion of the interest Defendants charged Plaintiff and the Class members for these loans.

69.     Taken separately and in totality, all of the unclear and contradictory information given to, and representations made by Defendants, to Plaintiff and the Class members, violated TILA in that it failed to provide the clear and conspicuous disclosures as required under the Act.

**B.     Defendants' Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

70.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

§ 226.19.  **Certain residential mortgage and variable-rate transactions.** . . .

(b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . .

(vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an*

1         *explanation of interest rate or payment limitations, negative amortization,*

2         *and interest rate carryover*. (Emphasis added.)

3       71.     These required disclosures must be made in the TILA Disclosure Form with the other

4 disclosures. The TILA Disclosure Form must state whether the loan *is* a negative amortizing loan and

5 whether unpaid interest *is* being added to principal.

6       72.     In 1995, and continuing each time new Official Staff Commentary was issued, the

7 Federal Reserve Board made clear that when the loan was a variable rate loan and it had payment caps,

8 that the disclosure required a definitive statement about negative amortization:

9                     12 CFR Part 226

10             [Regulation Z; Docket No. R-0863]

11              Monday, April 3, 1995

12        AGENCY: Board of Governors of the Federal Reserve System.

13          ACTION: Final rule; official staff interpretation.

14          "For the program that gives the borrower an option to cap

15            monthly payments, the creditor must fully disclose the rules

16            relating to the payment cap option, including the effects of

17            exercising it (such as **negative amortization occurs** and

18            that the **principal balance will increase**)…" (Found at

19            C.F.R. § 226.19)

20       73.     At all times relevant, statutory and common law in effect make it unlawful for a lender,

21 such as Defendants, to fail to comply the Federal Reserve Board's Official Staff Commentary as well as

22 Regulation Z and TILA.

23       74.     Defendants sold Plaintiff and the Class members an Option ARM loan which has a

24 variable rate feature with payment caps. Defendants failed to include any reference on the TILA

25 Disclosure Form that there was negative amortization. There is nothing that would indicate to anyone

26 that the loan schedule had negative amortization. The payment schedule makes no reference to negative

27 amortization and makes it appear that the payments cover both principal and interest.

28 / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

75.     In fact, the only place where Defendants even inferentially reference negative amortization is in the Note.  However, they mention it in such a way as to make a reasonable person believe that negative amortization is only a possibility, rather than a certainty.  And, these loans are, in fact, designed in such a manner so as to make negative amortization an absolute certainty.

76.     This attempt at a disclosure did not actually serve to alert or inform the borrowers of anything, much less clearly and conspicuously disclose that the payment schedule provided by Defendants absolutely would not pay both principal and interest, and therefore would guarantee that negative amortization was to occur on these loans.  Rather, Defendants made it appear that as long as the payment schedule provided by Defendants was followed, there would be no negative amortization.

77.     So, even where any language is found describing negative amortization, the language is misleading and deceptive.  In fact, Defendants' Option ARM loan was designed in such a way as to guarantee negative amortization.  TILA demands more than a statement that the payment <u>could</u> be less when Defendants were well aware that the payment is less, and would always be less, than the full interest and principal.

**C.      Defendants' Failure to Clearly and Conspicuously Disclose that the Initial Interest Rate is Discounted Violates Truth in Lending Laws**

78.     As previously stated, the informed use of credit means being able to make decisions, as well as being able to plan an individual's finances.  Every month consumers look at their income and budget where their funds must be paid.  The biggest investment in one's life is generally that person's home.  In fact, it is often referred to as "the American Dream" to own a home.

79.     Variable rate loans are based on a "margin" and an "index."  The index is often the Prime Rate or the LIBOR exchange rate.  The margin is the amount the lender charges over that rate, basically it is the lender's profit on the loan.

80.     TILA and Regulation Z require disclosures to be clear and conspicuous so people understand what their obligations are.  In particular, when the payment is not based on that index and margin a separate disclosure is required.  Further, the disclosure must inform the borrower that the payment they are making is not based on what the index and margin really should be in order to avoid negative amortization.  The disclosure must also inform that interest rate and payment may go up and

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1   clearly and conspicuously provide  the circumstances under which the rate and payment will increase.

2       81.    The Federal Reserve Board established disclosure requirements for variable rate loans.

3   26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

4   to borrowers.  If interest rate changes will be imposed more frequently or at different intervals than

5   payment changes, a creditor must disclose the frequency and timing of both types of changes.

6       82.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because

7   Plaintiff and other consumers similarly situated need this information in order to budget their money.

8   They need to know if their house payments are going to go up so that they can plan for it.  If the change

9   comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their

10  homes.

11      83.    Defendants, and each of them, state only that the interest rate *may* increase in the future.

12  However, an interest rate increase was in fact far more certain than this disclosure led Plaintiff and the

13  Class members to believe.  If Defendants had given the Plaintiff and the Class members the promised

14  low interest rate for any initial period of time, the interest rate was guaranteed to go up even without any

15  change in the index.  Thus, the increase in the interest rate on these loans was not just a possibility; it

16  was an absolute certainty and Defendants failed and omitted this material information in their

17  disclosures to Plaintiff and the Class members.

18      84.    Defendants disclosure statement provided that, the interest rate may increase during the

19  term of this transaction if the index increases.  This, however, was not the only circumstance that could

20  cause an increase in the interest rate.  The Defendants, and each of them, failed to disclose that the initial

21  interest rate is discounted, creating the possibility of an increase even when the index did not rise.  Due

22  to the initial discounted interest rate, the annual interest rate would increase if the index remained

23  constant, or even if the index declined.  Because Defendants' disclosure failed to provide this extremely

24  important, material information, Defendants disclosure failed to meet the clear and conspicuous standard

25  mandated under TILA.

26      85.    Defendants failed to disclose to Plaintiff and the Class members that their rate was, with

27  100% certainty, going to increase, regardless of whether or not the index upon which their loans are

28  based changed.  As such, Defendants violated TILA and Regulation Z with unclear, deceptive and

-21-

1    poorly drafted or intentionally misleading disclosure.

2    **D.**    **Defendants' Failure to Disclose the Composite Interest Rate Violates Truth in**
3    **Lending Laws**

4    86.    Defendants provided Plaintiff and Class members with multiple, conflicting interest rates
5    when describing the costs of this loan.  On the TILA Disclosure Form Defendants set forth one interest
6    rate, while on the Note, Defendants set forth one or two other, different interest rates.

7    87.    The official staff commentary to 226 C.F.R. § 17(C)(8) states:

8    *Basis of disclosures in variable-rate transactions*. The disclosures for a

9    variable-rate transaction must be given for the full term of the transaction

10   and must be based on the terms in effect at the time of consummation.

11   Creditors should base the disclosures only on the initial rate and should

12   not assume that this rate will increase. For example, in a loan with an

13   initial rate of 10 percent and a 5 percentage points rate cap, creditors

14   should base the disclosures on the initial rate and should not assume that

15   this rate will increase 5 percentage points. **However, in a variable-rate**

16   **transaction with a** seller buydown that is reflected in the credit contract,

17   a consumer buydown, or **a discounted or premium rate, disclosures**

18   **should not be based solely on the initial terms. In those transactions,**

19   **the disclosed annual percentage rate should be a composite rate based**

20   **on the rate in effect during the initial period and the rate that is the**

21   **basis of the variable-rate feature for the remainder of the term.** (See

22   the commentary to section 226.17(c) for a discussion of buydown,

23   discounted, and premium transactions and the commentary to section

24   226.19(a)(2) for a discussion of the redisclosure in certain residential

25   mortgage transactions with a variable-rate feature.)

26   88.    The reason for this requirement is clear.  Consumers cannot make informed decisions
27   when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon
28   Defendants to show the composite interest rate in effect so that the borrowers can understand exactly

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1  what they are paying for the loan.

2      89.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite

3  rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiff and Class

4  members by Defendants is a discounted variable-rate loan.  Because Defendants failed to properly,

5  clearly and conspicuously, disclose a composite annual percentage rate on these loans Defendants

6  violated TILA and Regulation Z.

7      90.    As a direct and proximate result of Defendants' conduct in violation of TILA, Plaintiff

8  and Class members have suffered injury an amount to be determined at time of trial.  If Defendants had

9  not violated TILA and had instead properly disclosed the material terms of Defendants' Option ARM

10  loan product, as alleged herein, Plaintiff and Class members would not have entered into the home loan

11  agreements which are the subject of this action.  Because Defendants failed to make proper disclosures

12  in violation of TILA, Plaintiff and Class members now seek redress in an amount and/or type as proven

13  at time of trial.

14      91.    WHEREFORE, Plaintiff and the Class members are entitled to an order declaring that

15  Defendants violated TILA, 15 U.S.C. §1601, *et seq.*, that Plaintiff and the Class have the right to rescind

16  pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640, attorneys

17  fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiff's individual

18  mortgage and those of any class member desirous of such relief, and for an order awarding other relief

19  as the Court deems just and proper.

20

21                                    **VII.**

22                          **SECOND CAUSE OF ACTION**

23      **Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* -**

24          **"Unlawful" Business Acts or Practices Predicated on Violations of TILA**

25                          **(Against all Defendants)**

26      92.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

27      93.    Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her

28  capacity as a private attorney general against all Defendants for their unlawful business acts and/or

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1  practices pursuant to California Business and Professions Code Sections 17200 *et seq*., which prohibits

2  all unlawful business acts and/or practices.

3      94.    Plaintiff asserts these claims as she is a representative of an aggrieved group and as a

4  private attorney general on behalf of the general public and other persons who have expended funds that

5  the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

6  provided by California Business and Professions Code Sections 17200 *et seq.*

7      95.    The unlawful acts and practices of Defendants alleged above constitute unlawful business

8  acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

9  seq.

10     96.    By engaging in the above-described acts and practices, Defendants have committed one

11  or more acts of unfair competition within the meaning of Business and Professions Code Sections

12  17200, *et seq*.

13     97.    Defendants' unlawful business acts and/or practice as alleged herein have violated

14  numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

15  *seq.*  These predicate unlawful business acts and/or practices include Defendants failure to comply with

16  the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.,* Regulation Z and Official

17  Staff Commentary issued by the Federal Reserve Board.  And, as described in more detail above,

18  Defendants also failed in a number of ways to clearly or accurately disclose the terms of the ARM loan

19  to Plaintiff and the Class members as required under TILA.

20     98.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive

21  advantage over their competitors.

22     99.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

23  them, received monies and continues to hold the monies expended by Plaintiff and others similarly

24  situated who purchased the ARM loans as described herein.

25     100.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a

26  constructive trust over, and restitution of, the monies collected and realized by Defendants.

27     101.    The unlawful acts and practices, as fully described herein, present a continuing threat to

28  members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiff and

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1    other members of the general public have no other remedy of law that will prevent Defendants

2    misconduct as alleged herein from occurring and/or reoccurring in the future.

3        102.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff

4    and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and

5    the Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each

6    has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

7    competition.

8        103.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief,

9    including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

10   unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent

11   injunction enjoining Defendants from their unlawful activity.

12

13                                    **VIII.**

14                            **THIRD CAUSE OF ACTION**

15    **(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq.*,**

16                **"Unfair" and "Fraudulent" Business Acts or Practices,**

17                            **(Against all Defendants)**

18        104.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

19        105.    Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her

20   capacity as a private attorney general against all Defendants for their unfair, fraudulent and/or deceptive

21   business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et

22   seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

23        106.    Plaintiff asserts these claims as she is a representative of an aggrieved group and as

24   private attorney general on behalf of the general public and other persons who have expended funds that

25   the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies

26   provided by California Business and Professions Code Sections 17200 et seq.

27        107.    The instant claim is predicated on the generally applicable duty of any contracting party

28   to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

practices.  The Plaintiff and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

108.    At all times relevant, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each of them, sold Plaintiff and the Class members a deceptively devised financial product.  Defendants sold their Option ARM loan product to consumers, including Plaintiff and the Class members, in a false or deceptive manner.  Defendants promised that the loan would have a very low, fixed interest rate for a period of three (3) to five (5) years and no negative amortization.  Further, Defendants disguised from Plaintiff and the Class members the fact that Defendants' Option ARM loan was designed to, and did, cause negative amortization to occur.

109.    Defendants lured Plaintiff and the Class members into the Option ARM loan with promises of low fixed interest.  Once Plaintiff and the Class members entered into these loans, Defendants switched the interest rate charged on the loans to a much higher rate than the one they were promised.  After entering these loans, Class members could not escape because Defendants purposefully placed into these loans an extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from these loans.  Thus, once on the hook, consumers could not escape from Defendants loans.

110.    Plaintiff and Class members were consumers who applied for a mortgage loan through Defendants.  During the loan application process, in each case, Defendants uniformly represented to Plaintiff and Class members that in accepting these loan terms, Plaintiff and Class members would be able to lower their mortgage payment and save money.

111.    Defendants promoted their Option ARM loan as having a low fixed interest rate, i.e., typically between 1% and 3%.  However, Defendants did not disclose that this was just a "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with Defendants.  Defendants did not disclose to Plaintiff and the Class members that the "teaser" rate was not the fixed rate that Defendants would actually charge Plaintiff and the Class members on their outstanding loan balances.

112.    Based on the Defendants' representations and conduct, Plaintiff and the Class members agreed to finance their primary residence through Defendants' Option ARM loan.  Plaintiff and the Class members were told they were being sold a home loan with a low interest rate, fixed for the first three (3) to five (5) years of the loan.  Plaintiff and the Class members were also lead to believe that if they made payments based on this promised low "teaser" interest rate, and the payment schedule provided to them by Defendants, that the loan was a no negative amortization home loan.  After, the fixed interest period, Plaintiff and the Class members were told their rate "may" change.  And, Plaintiff believed they would then be able to re-finance to another home loan.  Plaintiff and the Class members believed these facts to be true because that is what the Defendants wanted consumers to believe, that is what Defendants lead consumers to believe.

113.    Defendants aggressively sold their product as a fixed low interest home loan.  Defendants knew that if they sold these loans in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them.  Defendants also knew, however, that they were marketing their product in a false and deceptive manner.  While Defendants trumpeted their low, fixed rate loans to the public, Defendants knew, however, that this was not entirely true.

114.    In fact, Defendants' Option ARM loan possessed a low, fixed *payment* but not a low, fixed interest rate.  Unbeknownst to Plaintiff and Class members, the actual interest rate they were charged on their loans was not fixed.  After purchasing Defendants' Option ARM loan product, Plaintiff and class members never actually received the benefit of the low interest rate promised to them, or, in some cases, consumers received the low rate for just a single month.  Immediately, thereafter, Defendants in every instance and for every loan increased the interest rate they charged Plaintiff and the Class members.  Once Plaintiff and Class members accepted Defendants' Option ARM loan, they had no viable option to extricate themselves because of these loan agreements included a draconian pre-payment penalty.

115.    Defendants perpetrated a bait and switch scheme on Plaintiff and Class members.  Defendants' conduct and failure to disclose the whole truth about the loan's interest rate and to describe the loan as having a fixed interest rate was deceptive and unfair.  Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits.

116.    The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

117.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

118.    Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times, Defendants' failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

119.    Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors.

120.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the ARM loans as described herein.

121.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

122.    The harm to Plaintiff, members of the general public and others similarly situated outweighs the utility of Defendants' policies, acts and/or practices and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code Sections 17200 et seq.

123.    The unfair, deceptive and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be mislead and/or deceived by Defendants ARM loans as described herein.  Plaintiff and other members of the general public have no other remedy of law that will prevent Defendants misconduct as alleged herein from occurring and/or reoccurring in the future.

124.    As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiff and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and Class members are direct victims of the Defendants' unlawful conduct, and each

1  has suffered injury in fact, and have lost money or property as a result of Defendants' unfair

2  competition.

3       125.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief,

4  including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

5  unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a

6  permanent injunction enjoining Defendants from their unfair, fraudulent and deceitful activity.

7

8                                         **IX.**

9                         <u>**FOURTH CAUSE OF ACTION**</u>

10                            **Breach of Contract**

11                          **(Against All Defendants)**

12      126.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

13      127.    Plaintiff and Class members entered into a written home loan agreement – the contract or

14  Note – with Defendants.  The Note was drafted by Defendants and could not be modified by Plaintiff or

15  Class members.  The Note describes terms and respective obligations applicable to the parties herein.

16      128.    The Note describes Plaintiff's and Class members' interest rate on the loan as a low

17  interest rate, typically between 1% and 3%.  In addition, as required by federal law, the Defendants

18  provided a Truth In Lending Disclosure concerning the home loan agreement that shows a payment

19  schedule based on that low 1% to 3% interest rate.  For the first three (3) to five (5) years the payment

20  schedule shows that Plaintiff's and Class members' monthly payment obligations to Defendants are the

21  exact payments necessary to pay off all principal and interest during the terms of the loans if, indeed, the

22  interest rate actually charged by Defendants on the loans was the low interest rate promised.

23      129.    Defendants drafted the Note and did not allow Plaintiff or the Class members any

24  opportunity to make changes to the Note and due to Defendants superior bargaining position, the Note

25  was offered on a take it or leave it basis.  As such, the Notes at issue are contracts of adhesion.

26      130.    Defendants expressly and/or through their conduct and actions agreed that Plaintiff's and

27  the Class members' monthly payment obligations would be sufficient to pay both the principal and

28  interest owed on the loans.  Defendants breached this agreement and never applied any of Plaintiff's and

1  the Class members' payments to principal.

2    131.    The written payment schedules prepared by Defendants, and applicable to Plaintiff's and

3  Class members' loans, show that the payment amounts owed by Plaintiff and Class members to

4  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

5  interest actually charged on the loan was the low interest rate promised.  If the Defendants did as

6  promised, the payments would have been sufficient to pay both principal and interest amounts.

7    132.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rates and

8  applied ***no part*** of Plaintiff's and Class members' payments were applied to the principal balances on

9  their loans.  In fact, because Defendants charged more interest than was agreed to and payments, as

10  disclosed by Defendants, were, at all times relevant, insufficient to cover the interest charge and thus

11  principal balances increased (which is the negative amortization built into the loan).

12    133.    Defendants breached the written contractual agreement by failing to apply any portion of

13  Plaintiff's and the Class members' monthly payments towards their principal loan balances.

14    134.    Plaintiff and the Class members, on the other hand, did all of those things the contract

15  required of them.  Plaintiff and the Class members made monthly payments in the amount required by

16  the terms of the Note and reflected in the payment schedule prepared by Defendants.

17    135.    As a result of Defendants' breach of the agreement, Plaintiff and the Class members have

18  suffered harm.  Plaintiff and Class members have incurred additional charges to their principal loan

19  balance.  Plaintiff and Class members have incurred and will continue to incur additional interest

20  charges on the principal loan balance and surplus interest added to Plaintiff's and Class members'

21  principal loan balance.  Furthermore, Defendants' breach has placed Plaintiff and Class members in

22  danger of losing their homes through foreclosure, as Defendants have caused Plaintiff's and Class

23  members' principal loan balances to increase and limited these consumers' ability to make their future

24  house payments or obtain alternative home loan financing.

25    136.    At all times relevant, there existed a gross inequality of bargaining power between the

26  parties to the ARM loan contracts.  At all times relevant, Defendants unreasonably and unconscionably

27  exploited their superior bargaining position and foisted upon Plaintiff and the Class members extremely

28  harsh, one-sided provisions in the contract, which Plaintiff and Class members were not made aware of

1  and did not comprehend (*e.g.* Defendants fraud and failures to clearly and conspicuously disclose as

2  alleged herein), and which attempt to severely limit Defendants obligations under the contracts at the

3  expense of Plaintiff and Class members, as alleged herein.  As a result of these extremely harsh, one-

4  sided provisions, including but not limited to the provisions which seek to limit the "teaser" interest rate

5  for one month or less, these provisions are unconscionable and therefore unenforceable.

6           137.    WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief,

7  compensatory damages proximately caused by Defendants breach of contract as alleged herein, pre-

8  judgment interest, costs of suit and other relief as the Court deems just and proper.

9

10                                              **X.**

11                              <u>**FIFTH CAUSE OF ACTION**</u>

12              **Breach of Implied Covenant of Good Faith and Fair Dealing**

13                              **(Against All Defendants)**

14           138.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

15           139.    Defendants entered into written agreements with Plaintiff and Class members based on

16  representations Defendants made directly and indirectly to Plaintiff and the Class members about the

17  terms of their loans.

18           140.    Defendants expressly and impliedly represented to Plaintiff and the Class members that

19  they would provide loans secured by Plaintiff's and Class members' homes, and that the loans would

20  have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

21           141.    Defendants also represented that if Plaintiff and the Class members made the monthly

22  payments in the amount prescribed by Defendants that no negative amortization would occur.  The Note

23  expressly states and/or implies that Plaintiff's and Class members' monthly payment obligation **will** be

24  applied to pay both principal and interest owed on the loan.  The Note further states that for each

25  monthly payment Plaintiff and the Class members interest shall be paid before principal.

26           142.    The written payment schedules prepared by Defendants, and applicable to Plaintiff's and

27  Class members' loans, show that the payment amounts owed by Plaintiff and Class members to

28  Defendants in year one are exactly equal to the amount required to pay off the loan if, indeed, the

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1  interest actually charged on the loan was the low interest rate promised.  If the Defendants acted as it

2  promised, the payments would have been sufficient to pay both principal and interest.

3        143.    Instead, Defendants immediately raised Plaintiff's and Class members' interest rate and

4  applied ***no part*** of Plaintiff's and Class members' payment to principal.  In fact, because Defendants

5  charged more interest than was disclosed and agreed to in the loans, Plaintiff and the Class members'

6  payments were insufficient to cover the interest that Defendants charged resulting in an increase in the

7  amount of principal Plaintiff and the Class members owed on their homes.

8        144.    Defendants unfairly interfered with Plaintiff's and Class members' rights to receive the

9  benefits of the contract.  These loans will cost Plaintiff and Class members thousands of dollars more

10  than represented by Defendants.  Plaintiff and Class members did not receive the fixed low interest rate

11  home loan promised them by Defendants.  Defendants have caused Plaintiff and Class members to lose

12  equity in their homes and therefore have denied Plaintiff and Class members the enjoyment, security of

13  one of their most important investments.

14        145.    Plaintiff and Class members, on the other hand, did all of those things the contract

15  required of them.  Plaintiff and Class members made monthly payments in the amount required by the

16  terms of the Note and reflected in the payment schedule prepared by Defendants.

17        146.    At all times relevant, Defendants unreasonably denied Plaintiff and members of the Class

18  the benefits promised to them under the terms of the Note, including but not limited to a low interest rate

19  for the first three (3) to five (5) years of the loan, and clear and conspicuous disclosure of a payment

20  amount sufficient to pay both principle and interest so as to avoid negative amortization and the other

21  failures to comply with the disclosure requirements mandated by TILA, 15 U.S.C. §1601, et seq.,

22  Regulation Z and Official Staff Commentary issued by the Federal Reserve Board as alleged herein

23        147.    Knowing the truth and motivated by profit and market share, Defendants have knowingly

24  and willfully breached the implied covenant of good faith and fair dealing by engaged in the acts and/or

25  omissions to mislead and/or deceive Plaintiff and others similarly situated as alleged herein.

26        148.    Defendants breaches, as alleged herein were committed with willful and wanton

27  disregard for whether or not Plaintiff or others similarly situated would actually receive a home loan that

28  would provide the promised low interest and payment rate for the first three (3) to five (5) years of the

-32-

1   loan sufficient to pay both principle and interest.

2       149.   Upon information and belief and at all times relevant, Defendants possessed full

3   knowledge and information concerning the above facts about the ARM loans, and otherwise sold these

4   ARM loans throughout the United States, including the State of California.

5       150.   Defendants' placing of their corporate and/or individual profits over the rights of others

6   is particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on

7   the part of officers, directors, and/or managing agents of each corporate defendant and/or taken with the

8   advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified

9   said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or

10   conscious disregard for the rights and safety of others, including Plaintiff and the General Public.

11       151.   At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive,

12   and/or fraudulent.

13       152.   As a result of Defendants' conduct, Plaintiff and Class members have suffered harm.

14   Plaintiff and the Class members have incurred additional charges to their principal loan balance.

15   Plaintiff and Class members have incurred and will continue to incur additional interest charges on the

16   principal loan balance and surplus interest added to Plaintiff's and Class members' principal loan

17   balance.  Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiff and the Class

18   members in danger of losing their homes through foreclosure and, as a direct and proximate result of

19   said misconduct, caused Plaintiff's and the Class members' principal loan balances to increase limiting

20   these consumers' ability to make their future house payments or obtain alternative home loan financing.

21       153.   WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief, all

22   damages proximately caused by Defendants breach of the implied covenant of good faith and fair

23   dealing as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the

24   Court deems just and proper.

25   / / /

26   / / /

27   / / /

28

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

# XI.

## SIXTH CAUSE OF ACTION

**Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq.*, –**

**"Unlawful" Business Acts or Practices Predicated on Violations of Cal. Financial Code § 22302**

**(Against all Defendants)**

154.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

155.    Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her capacity as a private attorney general against all Defendants for their unlawful business acts and/or practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits all unlawful business acts and/or practices.

156.    Plaintiff asserts these claims as she is a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 *et seq.*

157.    The unlawful acts and practices of Defendants alleged above constitute unlawful business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

158.    By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

159.    Defendants' unlawful business acts and/or practice as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et seq.*  These predicate unlawful business acts and/or practices include Defendants violation of California Financial Code § 22302.

160.    California Financial Code § 22302 applies to consumer loan contracts.  It states that a loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be deemed to be a violation of Financial Code § 22302.

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

161.    The loan contracts prepared by Defendants and entered into between Plaintiff and Class members and Defendants were, and are, unconscionable pursuant to Section 1670.5 of the Civil Code.

162.    The relative bargaining power between Plaintiff and Class members and Defendants was unequal.  Plaintiff and Class members could not negotiate or change any of the particular terms related to the loan and drafted by Defendants.  To secure the loan Plaintiff and Class members were given no choice but to make payments as described in the payment schedule and to accept and sign all the associating documents numbering over a hundred pages.

163.    The period of time where Defendants offered Plaintiff and Class members a low interest rate, often was for only one month.  Because Defendants packaged the loan contracts in such a manner as to lead Plaintiff and Class members to believe that they had a low interest rate and therefore low payments for three to five years, Plaintiff and Class members would end up owing significantly more principle on their homes than before they entered the contracts and with a significant chance of losing their homes through foreclosure.

164.    Defendants drafted the subject ARM loan contracts for use on tens of thousands of individuals.  The loan process was such that individual terms of the contract could not be modified.  The standardized loan contracts were delivered to Plaintiff and Class members at the time of signature.  The loan process offered by Defendants did not permit for any meaningful negotiation of terms or even review of the loan documents at the time of execution.

165.    Defendants further inserted into the subject ARM loan contracts a draconian prepayment penalty that has as it sole purpose to cause Plaintiff and Class members to continue under the terms of their loans or lose thousands of dollars if Plaintiff try to refinance the loans.

166.    The standardized loan contracts drafted by Defendants were so harsh and one-sided that they could only lead Plaintiff and Class members to one result, a significant loss of money.  As a result of Defendants' unreasonable and unconscionable conduct, as alleged herein, Plaintiff and the Class members have suffered direct and actual injury.

167.    Because Defendants' Option ARM loan contract is unconscionable pursuant to Section 1670.5 of the Civil Code, Defendants' Option ARM loan violates Financial Code § 22302 and constitutes a violation of the UCL.

1   168.    As a direct and proximate result of the aforementioned acts, Defendants, and each of

2   them, received monies and continues to hold the monies expended by Plaintiff and others similarly

3   situated who purchased the ARM loans as described herein.

4   169.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a

5   constructive trust over, and restitution of, the monies collected and realized by Defendants.

6   170.    The unlawful acts and practices, as fully described herein, present a continuing threat to

7   members of the public to be mislead and/or deceived by Defendants as described herein.  Plaintiff and

8   other members of the general public have no other remedy of law that will prevent Defendants

9   misconduct as alleged herein from occurring and/or reoccurring in the future.

10   171.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiff

11   and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and

12   Class members are direct victims of the Defendants' unlawful conduct, as herein alleged, and each has

13   suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition.

14   172.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief,

15   including restitution, restitutionary disgorgement of all profits accruing to Defendants because of their

16   unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and

17   a permanent injunction enjoining Defendants from their unlawful activity.

18

19                                **PRAYER FOR RELIEF**

20   WHEREFORE, Plaintiff and all Class members pray for judgment against each Defendant,

21   jointly and severally, as follows:

22   A.    An order certifying ther case as a class action and appointing Plaintiff and their counsel

23        to represent the Class;

24   B.    For actual damages according to proof;

25   C.    For compensatory damages as permitted by law;

26   D.    For consequential damages as permitted by law;

27   E.    For statutory damages as permitted by law;

28   F.    For punitive damages as permitted by law;

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1    G.    For rescission;

2    H.    For equitable relief, including restitution;

3    I.    For restitutionary disgorgement of all profits Defendants obtained as a result of their

4          unfair competition;

5    J.    For interest as permitted by law;

6    K.    For Declaratory Relief;

7    L.    For a mandatory injunction requiring Defendants to permanently include in every Option

8          ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual

9          interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. §

10         226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure

11         statement(s) that payments on the variable interest rate loan during the initial period at

12         the teaser rate will result in negative amortization and that the principal balance will

13         increase as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure

14         that the initial interest rate provided is discounted and does not reflect the actual interest

15         that Plaintiff and Class members would be paying on the Note(s).

16   M.    For reasonable attorneys' fees and costs; and

17   N.    For such other relief as is just and proper.

18   DATED: October 11, 2007          **SPIRO MOSS BARNESS LLP**

19

20                                    By:    _____/S/_____
                                            David M. Arbogast, Esq.
21                                          11377 W. Olympic Boulevard, Fifth Floor
                                            Los Angeles, CA 90064-1683
                                            Phone: (310) 235-2468; Fax:  (310) 235-2456
22
                                            Paul R. Kiesel, Esq.
23                                          Patrick Deblase, Esq.
                                            Michael C. Eyerly, Esq.
24                                          **KIESEL BOUCHER LARSON LLP**
                                            8648 Wilshire Boulevard
25                                          Beverly Hills, California 90210
                                            Phone:  (310) 854-4444; Fax:  (310) 854-0812
26

27   / / /

28   / / /

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jonathan Shub, Esq.
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300; Fax (215) 851-8029

Jeffrey K. Berns, Esq.
**LAW OFFICES OF JEFFREY K. BERNS**
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax:  (818) 867-4820

Attorneys for Plaintiff and all others Similarly
Situated

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

DATED: October 11, 2007          **SPIRO MOSS BARNESS LLP**

By:       _____/S/_____
          David M. Arbogast, Esq.
          11377 W. Olympic Boulevard, Fifth Floor
          Los Angeles, CA 90064-1683
          Phone: (310) 235-2468; Fax: (310) 235-2456

          Paul R. Kiesel, Esq.
          Patrick Deblase, Esq.
          Michael C. Eyerly, Esq.
          **KIESEL BOUCHER LARSON LLP**
          8648 Wilshire Boulevard
          Beverly Hills, California 90210
          Phone: (310) 854-4444; Fax: (310) 854-0812

          Jonathan Shub, Esq.
          **SEEGER WEISS LLP**
          1515 Market Street, Suite 1380
          Philadelphia, PA 19107
          Phone: (215) 564-2300; Fax (215) 851-8029

          Jeffrey K. Berns, Esq.
          **LAW OFFICES OF JEFFREY K. BERNS**
          19510 Ventura Blvd, Suite 200
          Tarzana, California 91356
          Phone: (818) 961-2000; Fax:  (818) 867-4820

          Attorneys for Plaintiff and all others Similarly
          Situated

FIRST AMENDED CLASS ACTION COMPLAINT - C-07-04497 RS

**Exhibit No. 1**

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT LOAN

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: 0043651850                    DATE:  **August 4, 2006**

BORROWER(S):   DOLORES MANDRIGUES, AN UNMARRIED WOMAN   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS:  **524 CESTARIC DR, MILPITAS, CA  95035-4006**

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.  **$170,000.00** , called "Principal," plus interest, to the order of the Lender. The Lender is WORLD SAVINGS BANK, FSB, a  FEDERAL  SAVINGS BANK,, ITS  SUCCESSORS  AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

**2.  INTEREST**

**(A)    Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at the yearly rate of **6.790%**. The interest rate I will pay  may change as described in this Section 2.  Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)    Interest Change Dates**

The interest rate I will pay may change on the 15th day of **September, 2006** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

**(C)    Interest Rate Limit**

My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap."

LENDER'S USE ONLY

0 0 1

00001

0043651850

**(D)  Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an index is substituted as described in Section 2(F) of this Note, the alternative index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)  Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.850** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)  Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available.  For purposes of this Section 2(F), the Index is not "available" if:  (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.  The selection of the alternative index shall be at Lender's sole discretion.  The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator.  The Lender will give me notice of the alternative index.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **15th** day of each month beginning on **September 15, 2006**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **August 15, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ **628.36**. This amount will change as described in Sections 3(C) and 3(D) below. My initial  monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **15th** day of **September, 2007** and on that day every **12th**  month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap."  The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

00002

0043651850

**(E)    Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)    Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)    Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)    Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.    FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.    MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

00003

0043651850

**(B)    Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)    Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)    No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)    Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **524 CESTARIC DR, MILPITAS, CA  95035-4006**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

00004

0043651850

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)    Lender approves the creditworthiness of the transferee in writing;

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

## 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

## 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

0043651850

**SIGNATURE PAGE**

**NOTICE TO BORROWER(S):**

**BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.**

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED**

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

_____ **(Seal)**

DOLORES MANDRIGUES

00006

| **WORLD SAVINGS** | FEDERAL TRUTH IN LENDING DISCLOSURE REQUIRED BY REGULATION Z |
| --- | --- |

Customer's Name:    Date: July 24, 2006
DOLORES MANDRIGUES    Loan No.: 0043651850

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
| --- | --- | --- | --- | --- |
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total price of your purchase on credit including your down payment of |
| | | | | Not Applicable |
| 6.853 % | $283,991.46 | $ 167,713.28 | $ 451,704.74 | Not Applicable |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due: |
| --- | --- | --- |
| | | MONTHLY beginning on |
| 12 | $ 628.36 | 10/01/06 |
| 12 | 675.49 | 10/01/07 |
| 12 | 726.15 | 10/01/08 |
| 12 | 780.61 | 10/01/09 |
| 12 | 839.16 | 10/01/10 |
| 12 | 902.10 | 10/01/11 |
| 12 | 969.76 | 10/01/12 |
| 12 | 1,042.49 | 10/01/13 |
| 12 | 1,120.68 | 10/01/14 |
| 12 | 1,204.73 | 10/01/15 |
| 239 | 1,437.64 | 10/01/16 |
| 1 | 1,434.42 | 09/01/36 |

VARIABLE RATE: THIS LOAN CONTAINS AN ADJUSTABLE RATE FEATURE. SEE THE ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT PREVIOUSLY GIVEN TO YOU.

This loan DOES NOT HAVE A DEMAND FEATURE.

Insurance:  You may obtain property insurance from anyone you want who is acceptable to the Lender.

Security:  You are giving a security interest in the real property located at 524 CESTARIC DR, MILPITAS, CA 95035-4006.

Filing Fees:  $    80.00

Late Charge:  If a payment is late, you will be charged 5.00% of the payment.

Prepayment:  If you pay off the loan early, you MAY have to pay a penalty and you WILL NOT be entitled to a refund of ANY PART OF THE FINANCE CHARGE ALREADY PAID.

Assumption:  SOMEONE BUYING YOUR HOUSE CAN ASSUME THE REMAINDER OF THE LOAN UNDER CERTAIN TERMS AND CONDITIONS. TERMS MAY BE DIFFERENT FROM YOUR ORIGINAL TERMS - SEE YOUR ADJUSTABLE LOAN PROGRAM DISCLOSURE STATEMENT.

Due on Sale:  If the property securing the loan is sold or transferred to anyone without first obtaining Lender's written consent, all sums owed could become immediately due and payable. In this event failure to pay all the sums declared due and payable may result in the forced sale of the property.

See your Contract documents for additional information about non-payment, default, any required repayment in full before the scheduled date and other important terms and conditions of your loan.

ALL NUMERICAL DISCLOSURES EXCEPT THE LATE PAYMENT DISCLOSURE ARE ESTIMATED.

**By signing below,** you acknowledge that you received a copy of this FEDERAL TRUTH IN LENDING DISCLOSURE.

_____    _____
DOLORES MANDRIGUES    Date

GF004A1 (2004-03-1)  UPFRONT    CA
    DISTRIBUTION: 1 COPY-RETURN SIGNED TO LENDER    1 COPY-CUSTOMER    2 COPIES-FILE



0 2 2    LENDER'S USE ONLY