Jack R. Nelson (SBN 111863)
David S. Reidy (SBN 225904)
Keith D. Yandell (SBN 233146)
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936

Telephone:    +1 415 543 8700
Facsimile:    +1 415 391 8269

Attorneys for Defendants World Savings Bank,
FSB and Wachovia Mortgage Corporation

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| DOLORES MANDRIGUES, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    vs.<br><br>WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB, WACHOVIA MORTGAGE CORPORATION, and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. C07 04497<br><br>**DEFENDANTS WORLD SAVINGS BANK FSB'S AND WACHOVIA MORTGAGE CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE PORTIONS OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:        January 4, 2007<br>Time:       9:00 a.m.<br>Place:      Courtroom 3, 5th Floor<br><br>Compl. Filed:   August 30, 2007<br><br>The Honorable Jeremy Fogel |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The
Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

# TABLE OF CONTENTS

**Page**

I . INTRODUCTION ...................................................................................................1

II . PLAINTIFF'S FACTUAL ALLEGATIONS ........................................................2

III . LEGAL ARGUMENT ...........................................................................................2

    A.    Applicable Legal Standards ..........................................................................2

        1.    Motion to Dismiss / Motion to Strike ...............................................2

        2.    Required Disclosures Under TILA ...................................................3

        3.    Plaintiff's Causes Of Action Seeking Actual And Statutory Are Time-Barred ....................................................................................4

    B.    World's Disclosures Were Clear and Conspicuous ......................................4

    C.    The Complaint Fails to Allege a Violation of the TILA ...............................6

        1.    World Disclosed the Actual Interest Rate ..........................................6

        2.    World Provided All Required Disclosures Regarding Negative Amortization ....................................................................................7

        3.    Plaintiff's Initial Interest Rate Was Not "Discounted" .....................10

        4.    World Properly Disclosed the Annual Percentage Rate .....................11

    D.    Plaintiff's Second, Third And Sixth Causes Of Action Fail Because HOLA Preempts The UCL As Plaintiff Seek To Apply It ...........................11

        1.    Plaintiff's Second Cause Of Action Fails Because California's UCL May Not Be Used As A Means To Enforce TILA ...............................13

        2.    Plaintiff's Third Cause Of Action For Violation Of The UCL Fails Because It Is Grounded In World's Allegedly Deceptive Advertisements and Disclosures ......................................................13

        3.    Plaintiff's Sixth Cause Of Action Is Preempted Because Plaintiff Bases Her Claim Entirely On A State Law That Explicitly Targets Loans ...........................................................................................14

    E.    Plaintiff Fails To State A Cause Of Action For Breach Of Contract Because World's Alleged Conduct Is Consistent With Its Contractual Obligations ..................................................................................................15

    F.    Plaintiff Fails To State A Cause Of Action For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Because California Law Does Not Recognize Such A Cause Of Action Outside of the Insurance Context And Because Plaintiff Seeks To Impose Duties Inconsistent With That Of The Contract ...................................................................................................16

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

G.    Plaintiff's Prayer For Punitive Damages Should Be Stricken ....................................16

H.    Plaintiff Fails To Allege Facts Sufficient To State Any Claim Against WMC...............................................................................................................................17

IV .    CONCLUSION.............................................................................................................18

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

# TABLE OF AUTHORITIES

2

## CASES

3    Am. Bankers Ass'n v. Lockyer,
        239 F. Supp. 2d 1000 (E.D. Cal. 2003) .................................................................12
4

5    Andrews v. Chevy Chase Bank, FSB,
        240 F.R.D. 612 (D. Wisc. 2007).......................................................................8, 9
6
     Andrews v. Chevy Chase Bank, FSB,
        474 F. Supp. 2d 1006 (D. Wisc. 2007) ..................................................................8
7

8    Balisteri v. Pacifica Police Dept.,
        901 F.2d 696 (9th Cir. 1988) .................................................................................2
9    Branch v. Tunnell,
        14 F.3d 449 (9th Cir. 1994) ...............................................................................3, 9
10

11   Brousseau v. Jarrett,
        73 Cal. App. 3d 864 (1977) .................................................................................17
12   Churchill v. Star Enters.,
        183 F.3d 184 (3d Cir. 1999) ...................................................................................3
13

14   Darby v. City of Torrance,
        810, F. Supp. 271 (C.D. Cal. 1992), *rev'd on other grounds*...............................3, 17
15   Doe v. Luster,
        145 Cal. App. 4th 139 (2006) ..............................................................................15
16

17   Dixey v. Idaho First Nat'l Bank,
        677 F.2d 749 (9th Cir. 1982) .................................................................................5
18   Fallat v. Central Bank, 1988 U.S. Dist. LEXIS 13041, *24 (N.D. Cal. 1988) ...............................4

19   Fidelity Federal Sav. & Loan Assn. v. De La Cuesta,
        458 U.S. 141 (1982)......................................................................................11, 15
20

21   Foley v. Interactive Data Corp.,
        47 Cal. 3d 654 (1988) ....................................................................................16, 17
22   Freeman & Mills v. Belcher Oil Co.,
        11 Cal. 4th 85 (1995)......................................................................................16, 17
23

24   G.D. Searle & Co. v. Superior Court  49 Cal. App. 3d 22 (1975) ...................................17

25   Galbraith v. County of Santa Clara,
        307 F.3d 1119 (9th Cir. 2002) ...............................................................................2
26   Grant v. State Farm Life Ins. Co.,
        2007 U.S. Dist. LEXIS 78501 (E.D. Cal. 2007) ...................................................17
27

28   Griffin Indus. v. Irvin,
        2007 U.S. App. LEXIS 19828 (11th Cir. August 21, 2007) .....................................2

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The
Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

1

Guz v. Bechtel National, Inc.,
    24 Cal. 4th 317 (2000) ...................................................................................16

In re Stac Electronics Securities Litig.,
    89 F.3d 1399 (9th Cir. 1996) ........................................................................3, 9

Leamer v. Fauver,
    288 F.3d 532 (3d Cir. 2002) ................................................................................2

Lifanda v. Elmhurst Dodge, Inc.,
    237 F.3d 803 (7th Cir.2001) .................................................................................5

Lopez v. World Savings and Loan Association,
    105 Cal. App. 4th 729 (2003) ...............................................................12, 14, 15

Lopez v. World Savings and Loan Association,
    105 Cal. App. at 738 ...........................................................................................11

Motor Credit Co. v. Milhollin,
    444 U.S. 555 (1980)..............................................................................................4

Pension Benefit Guar. Corp. v. White Consolidated Industries, Inc.,
    993 F.2d 1192 (3rd Cir. 1993) .............................................................................2

Pulphus v. Sullivan,
    2003 U.S. Dist. LEXIS 7080 (D. Ill. 2003) ................................................4, 6, 8

Rosenberg v. Washington Mutual Bank, F.A.,
    849 A.2d 566 (N.J. Super. 2004) .......................................................................12

Santos-Rodriguez v. Doral Mortg. Corp.,
    485 F.3d 12 (1st Cir. (Puerto Rico), 2007),
    citing Veale v. Citibank, 85 F.3d 577 (11th Cir.1996) ........................................3

Silvas v. E*Trade Mortgage Corporation,
    421 F. Supp. 2d 1315 (S.D. Cal. 2006)..................................................... passim

Smith v. Check-N-Go of Ill., Inc.,
    200 F.3d 511 (7th Cir.1999) .................................................................................5

Thompson v. Illinois Dept. of Prof. Reg.,
    300 F.3d 750 (7th Cir. 2002) .............................................................3, 7, 10, 11

Tucker v. New Rogers Pontiac, Inc.,
    2003 WL. 22078297 (N.D.Ill., 2003) ...................................................................5

Vermurlen v. Ameriquest Mortg. Co.,
    2007 U.S. Dist. LEXIS 75070 (D. Mich. 2007), citing, Dixey v. Idaho First Nat'l Bank,
    677 F.2d 749 (9th Cir. 1982) ...............................................................................5

Wuxi Multimedia, Ltd. v. Koninklijke Phillips Elecs., N.V.,
    2006 U.S. Dist. LEXIS 9160 (D. Cal. 2006) .................................................3, 17

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# RULES

Fed. R. Civ. P. 12(b) ............................................................................................................9

Fed. R. Civ. P. 12(b)(6) ......................................................................................................2, 3

Fed. R. Civ. P. 12(c) ............................................................................................................9

Fed. R. Civ. P. 12(f) ............................................................................................................3, 17

# FEDERAL STATUTES AND REGULATIONS

12 C.F.R. §26.18 ..................................................................................................................5

12 C.F.R. §26.18(a) ..............................................................................................................4

12 C.F.R. §26.18(b) ..............................................................................................................4

12 C.F.R. §26.18(e) ..............................................................................................................4

12 C.F.R. §226.17 ................................................................................................................4, 6

12 C.F.R. §§ 226.18(e) ........................................................................................................7

12 C.F.R. § 226.18(f) ...........................................................................................................6

12 C.F.R. § 226.19 ...............................................................................................................6, 13

12 C.F.R. § 226.19(2) ..........................................................................................................8

12 C.F.R. § 226.19(b) ..........................................................................................................4, 6, 8

12 C.F.R. § 226.19(b)(1) ......................................................................................................5

12 C.F.R. § 226.19(b)(2)(v) .................................................................................................8, 10

12 C.F.R. § 226.23(a)(3) ......................................................................................................6

12 C.F.R. § 506.2(b)(9) ........................................................................................................14

12 C.F.R. §560.2 ..................................................................................................................10, 11, 13

15 U.S.C. § 1632(a) .............................................................................................................3

15 U.S.C. §1638 ...................................................................................................................2

15 U.S.C. 1639(c) ................................................................................................................15

15 U.S.C. 1640(e) ................................................................................................................3

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The
Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

## CALIFORNIA STATUTES AND REGULATIONS

Cal. Bus. & Prof. Code  § 17500 ................................................................................12

Cal. Civ. Code § 3294 ..................................................................................................16

Cal. Civ. Code §§ 3294(a) & (c) .................................................................................16

Cal. Fin. Code §22050, et seq .....................................................................................14

Cal. Fin. Code § 22302 ...........................................................................................11, 14

## OTHER AUTHORITIES

Rest. 2d Contracts §202(2) ..........................................................................................15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## I.    INTRODUCTION

Plaintiff Dolores Mandrigues ("Plaintiff"), on behalf of herself and putative class members, has sued her lender, World Savings Bank FSB, erroneously sued as "World Savings, Inc." ("World"), and a separate entity with which Plaintiff has no relationship whatsoever, Wachovia Mortgage Corporation ("WMC"). As the loan documents that Plaintiff herself attached to her complaint establish, Plaintiff took out an adjustable rate mortgage loan from World that is referred to as a "Pick-A-Payment" loan because it allowed her to self-select an initial payment amount to suit her financial needs. Plaintiff now alleges, however, that World represented to her, and then contracted with her, that she would receive a loan with an interest rate "fixed" at less than 3%, but supposedly then switching her to a higher rate that caused her self-selected initial payment level to be insufficient to fully amortize her loan. But the World loan documents that Plaintiff attached to her complaint not only do not support these allegations, they show them to in fact be both spurious and legally deficient in many ways.

Plaintiff's internally-inconsistent, "cookie-cutter" First Amended Complaint ("FAC") alleges: (1) that World's Truth In Lending Act ("TILA") disclosures were inadequate; (2) that these alleged TILA violations give rise to claims under California's Unfair Competition Law; and 3) that World breached Plaintiff's promissory note ("Note") by not applying Plaintiff's payments under the Note to principal and interest.[1]

Plaintiff's allegations regarding World's "defective" disclosures are belied by the Adjustable Rate Mortgage Note ("Note") and truth-in-lending disclosure statement ("TILDS") that she attaches to her FAC. Those documents contradict Plaintiff's allegations regarding the existence of a permanently discounted rate, and demonstrate that World clearly and conspicuously disclosed all information required by the TILA. Moreover, to the extent Plaintiff seeks statutory and actual

---

[1] With respect to WMC, Plaintiff alleges essentially nothing. She alleges correctly that World and WMC are separate entities (compare FAC ¶¶4-5 and 6), and then concedes (implicitly by failing to allege it and directly by attaching her World loan agreement) that she never had any relationship with WMC, but yet simply go ahead and lumps WMC in with World for purposes of her substantive charging allegations. As explained below, because Plaintiff lacks privity of contract with WMC and standing to maintain any claim against it, WMC must be dismissed from this action. The bulk of this brief therefore addresses the specific allegations that Plaintiff makes against World.

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

1  damages under her TILA claims, these damages are time-barred under the applicable one-year

2  statute of limitations.  In sum, Plaintiff's TILA cause of action fails.

3         Plaintiff's state law claims also fail.  World is a federal savings bank[2] whose lending

4  activities, including those relating to Plaintiff's loan, were and are governed exclusively by the

5  Home Owners' Loan Act of 1933 ("HOLA"),  which preempts Plaintiff's state law claims arising

6  from advertising and/or disclosures made by World in connection with Plaintiff's loan.  Moreover,

7  Plaintiff's claims for breach of contract and the implied covenant of good faith fail in any event

8  because World's alleged behavior was entirely consistent with the parties' agreement as reflected in

9  the Note (attached to the FAC).  Thus, pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(c)

10  and 12(f), World seeks an Order dismissing Plaintiff's FAC or, in the alternative, striking those

11  portions of the FAC which fail to state a claim for relief.

12  ## II.  PLAINTIFF'S FACTUAL ALLEGATIONS

13         Plaintiff refinanced her loan with World on August 4, 2006.  FAC ¶2.  More than a

14  year after the close of the loan, Plaintiff filed the instant action.  Plaintiff alleges she was initially

15  told the interest rate on her loan would be low, between 1% and 3%.  Id. at ¶25.  Contracy to these

16  allegations, however, the Note and TILDS that Plaintiff attached to her FAC state clearly the parties'

17  agreement that the initial interest rate and APR on Plaintiff's loan would be 6.790% and 6.853%,

18  respectively.  See FAC, Exh. 1.

19  ## III.  LEGAL ARGUMENT

20  ### A.  Applicable Legal Standards

21  ### 1.  Motion to Dismiss / Motion to Strike

22         Dismissal under Rule 12(b)(6) is proper when a complaint either exhibits a "lack of a

23  cognizable legal theory or the absence of sufficient facts under a cognizable legal theory."  Balisteri

24  v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1988); see also, Silvas v. E*Trade Mortgage

25  Corporation, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006).  The standards for motions under Rule

26  12(c) are the same as those under Rule 12(b)(6).  Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir.

27  _____

[2] See World' Request For Judicial Notice, ¶1.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The
Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

2002); Churchill v. Star Enters., 183 F.3d 184, 190 n.5 (3d Cir. 1999).  For the purposes of ruling on a motion to dismiss, material facts alleged in a complaint are of course treated as true, [id.], but where a complaint contains inconsistent allegations, the Court need not accept those allegations. Wuxi Multimedia, Ltd. v. Koninklijke Phillips Elecs., N.V., 2006 U.S. Dist. Lexis 9160, 26-27 (D. Cal. 2006).  Further, a court "need not ignore specific factual details of the pleading in favor of general or conclusory allegations."  Griffin Indus. v. Irvin, 2007 U.S. App. LEXIS 19828 (11th Cir. August 21, 2007), see also Thompson v. Illinois Dept. of Prof. Reg., 300 F.3d 750, 754 (7th  Cir. 2002) ("When a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*.") (emphasis in original).

To prevent "a plaintiff with a legally deficient claim (from surviving) a motion to dismiss simply by failing to attach a dispositive document on which it relied," courts may even consider documents not attached to the complaint if: 1) the documents are central to the complaint, 2) the complaint refers to such document, and 3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.  Pension Benefit Guar. Corp. v. White Consolidated Industries, Inc., 993 F.2d 1192, 1196 (3rd Cir. 1993); see also, Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994) (overruled on other grounds in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)).  Similarly, the Court may consider the entire content of a document only quoted in part. See In re Stac Electronics Securities Litig., 89 F.3d 1399, 1405, fn. 4 (9th  Cir. 1996).

Separately, a motion to strike pursuant to Rule 12 is proper where a matter plead in a complaint is "redundant, immaterial, impertinent or scandalous."  Fed. R. Civ. P. 12(f).  Among other things, this means that the Court may strike requests for remedies which are unavailable as a matter of law.  See Darby v. City of Torrance, 810, F.Supp. 271, 272-273 (C.D. Cal. 1992), *rev'd on other grounds*.[3]

**2.     Required Disclosures Under TILA**

TILA requires lenders to disclose certain information to the borrower about the terms of a proposed loan before consummation of the transaction.  See 15 U.S.C. §1638; 12 C.F.R.

---

[3] This rule is significant relative to the scattergun requests for relief in Plaintiffs' First Amended Complaint.

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  §226.17.  The lender must disclose, among other things, the identity of the creditor, amount

2  financed, and annual percentage rate.  12 C.F.R. §26.18(a), (b), (e).  Where, as here, a loan contains

3  a variable interest rate feature, the lender must disclose that fact.  12 C.F.R. 226.19(b).  Although 12

4  C.F.R. §226.19(b) contains other disclosure requirements regarding variable rate loans, failure to

5  comply with those requirements does not extend a borrower's right to rescind.  See Pulphus v.

6  Sullivan, 2003 U.S. Dist. LEXIS 7080 (D. Ill. 2003).

7          The disclosures must be grouped together and, for this reason, many lenders –

8  including World here – place the disclosures in a TILDS.

9       **3.    Plaintiff's Causes Of Action Seeking Actual And Statutory Are Time-Barred**

10          Under TILA, any claim for actual or statutory damages must be brought within a year

11  of the closing of the loan or the date the allegedly defective disclosures were provided, whichever is

12  later.  15 U.S.C. 1640(e).  Plaintiff closed the refinancing loan at issue here on August 4, 2006.  FAC

13  ¶2.  Plaintiff received relevant disclosures on or before this date.  See Exhibit 1 to FAC.  Plaintiff did

14  not file the instant action until August 30, 2007.  Thus, the statute of limitations has plainly run on

15  any claim Plaintiff seeks to assert for actual and statutory damages under TILA.

16  **B.    World's Disclosures Were Clear and Conspicuous**

17          All disclosures required by the TILA must be clear and conspicuous.  See 15 U.S.C.

18  § 1632(a); 12 C.F.R. § 226.17.  "The commentary to 12 C.F.R. 226.17(a) states that clear and

19  conspicuous requires that disclosures be in a reasonably understandable form.'"  Fallat v. Central

20  Bank, 1988 U.S. Dist. LEXIS 13041, *24 (N.D. Cal. 1988) (holding, as a matter of law TILA,

21  disclosure was clear and conspicuous where the loan's APR was placed in a box in the center of the

22  TILDS).  "Most courts have concluded that the TILA's clear and conspicuous standard is less

23  demanding than a requirement of perfect notice."  Santos-Rodriguez v. Doral Mortg. Corp., 485 F.

24  3d 12, 16-17 (1st Cir. (Puerto Rico), 2007), citing Veale v. Citibank, 85 F. 3d 577, 581 (11th

25  Cir.1996).  Indeed, recent amendments to the TILA were intended by Congress to "provide higher

26  tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations."  Id.

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The standard for determining whether a disclosure is sufficient is an objective one. Smith v. Check-N-Go of Ill., Inc., 200 F.3d 511 (7th Cir.1999).  The Supreme Court has recognized that:

> [T]he concept of 'meaningful disclosure' that animates TILA … cannot be applied in the abstract.  Meaningful disclosure does not mean *more* disclosure.  Rather, it describes a balance between competing considerations of complete disclosure and the need to avoid informational overload.  [Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568 (1980) (citations, quotations omitted)]

The question of whether a particular disclosure is clear and conspicuous for purposes of TILA is a question of law and courts examine the disclosures from the viewpoint of an objective reasonable person.  Vermurlen v. Ameriquest Mortg. Co., 2007 U.S. Dist. LEXIS 75070, *7 (D. Mich. 2007), citing, Dixey v. Idaho First Nat'l Bank, 677 F.2d 749 (9th Cir. 1982); Smith, 200 F.3d at 514-15.  The adequacy of a defendant's TILA disclosures may be tested by a Rule 12(c) motion to dismiss for judgment on the pleadings.  See Tucker v. New Rogers Pontiac, Inc., 2003 WL 22078297, *2 (N.D.Ill., 2003), citing Lifanda v. Elmhurst Dodge, Inc., 237 F.3d 803, 805 (7th Cir.2001).

Plaintiff's Complaint makes repeated allegations that required disclosures are not clear and conspicuous, yet the Note and TILDS contain all the information required by the TILA.  As set forth in detail below, Plaintiff's TILDS identifies the identity of the creditor, the amount financed, and the APR.  See 12 C.F.R. §§26.18, 226.19(b)(1).  The TILDS also states in clear, all capitals font that the "LOAN CONTAINS AN ADJUSTABLE RATE FEATURE."  Moreover, the Note clearly explains the index used to make adjustments to the interest rate (Note, ¶2(D)), and explains how the interest rate and payment will be determined (Note, ¶2(E)).  Finally, Plaintiff does not and cannot allege that World provided additional contradictory disclosures.

Here, the Note and TILDSs clearly satisfy the standards required by the TILA, and World is entitled to judgment on the pleadings on the grounds that its disclosures were clear and conspicuous.

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**C.     The Complaint Fails to Allege a Violation of the TILA**

Plaintiff asserts four theories in support of her TILA cause of action against World, alleging that World failed to disclose: (1) the initial interest rate applicable to Plaintiff's loan; (2) the possibility that negative amortization would occur under the loan; (3) the "fact" that the initial interest rate was a discounted rate; and (4) the composite rate under the loan.  The Note and TILDS attached to Plaintiff's Complaint prove these allegations frivolous, however, and demonstrate that World met its obligations under the TILA.

**1.     World Disclosed the Actual Interest Rate**

Plaintiff alleges that World failed to comply with 12 C.F.R. § 226.17 and 226.19's requirements by misstating the loan's interest rate, thereby extending Plaintiff's right to rescind. FAC ¶ 62.  She further argues that the Note "conflicts with" the TILDS because the interest rates disclosed are allegedly not the same.  FAC ¶63.  Specifically, Plaintiff alleges that the Note does not properly disclose the fact that the initial interest rate is a so-called "teaser" rate, offered only for the first thirty days of the loan.  Id. ¶64.  Consequently, according to the Complaint, the TILDS is "confusing and deceptive," because the "real" interest rate is higher than the initial rate.  Id. ¶¶66-67. Plaintiff does not explain what this "real" interest rate is, and attempts to ignore the plain language of the Note, which explains that the rate is adjustable.

Plaintiff's allegation that World failed to disclose that a "teaser rate" would not be the "actual" initial interest rate or annual percentage rate ("APR")  on her loan, even if true, would not extend her right to rescind.[4]  As the Court explained in Pulphus, "The plain meaning of the Board's commentary on 12 C.F.R. § 226.23(a)(3) is that only one variable rate disclosure violation -- a lender's failure to disclose the existence of a variable rate feature -- tolls the rescission period. A lender's failure to provide any of the other variable rate disclosures required by 12 C.F.R. §§ 226.18(f) and 226.19(b) may subject it to other sanctions, but it will not extend the rescission period granted to the consumer."  Pulphus v. Sullivan, 2003 U.S. Dist. LEXIS 7080 (D. Ill. 2003).  In sum,

---

[4] Further, as noted above, the statute of limitation on Plaintiff's claims for actual and statutory damages under TILA has run.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Plaintiff's allegation that World failed to clearly and conspicuously disclose the interest rate on her

2    loan does not extend her right to rescind.

3            Notwithstanding the foregoing, Plaintiff fails to state a TILA cause of action based on

4    World's alleged failure to disclose the actual interest rate. Plaintiff's allegations are belied by the

5    unambiguous terms of the Note and TILDS attached to the Complaint, which correctly identify the

6    initial interest rate and APR as 6.790% and 6.853%, respectively.  See Exhibit 1 to FAC at 1, 7.[5]

7    Moreover, as noted above, these documents contradict directly Plaintiff's generic allegation that the

8    loan initially "promised" a low 1-3% "fixed" rate – the Note refers only to the 6.79% fully indexed

9    initial rate and the TILDS refers only to the APR (as required by TILA).  Further, Plaintiff's

10   allegation that World did not disclose that the loan contained an adjustable rate is also without merit.

11   The Note clearly states, in large, all-capital lettering, "**ADJUSTABLE** RATE MORTGAGE

12   LOAN."  (Emph. added.).  The TILDS says "This loan contains an adjustable rate feature," and even

13   the payment schedule included in the TILDS reflects changes to Plaintiff's payments due to the

14   adjustable rate.

15           The Note, dated August 4, 2006, states in no uncertain terms that the interest rate may

16   change the following month.  See Note, FAC, Exh. 2, ¶2(B).  Plaintiff therefore agreed to the

17   adjustable rate, and her allegations to the contrary do not stand.  See Thompson, 300 F.3d 750, 754.

18   Thus, the TILDS complies with the TILA, and there is no "conflict" with the initial interest rate set

19   forth in the Note.  See 12 C.F.R. §226.18(e).  The Complaint and Exhibits, taken together, thereto

20   fail to allege that World did not properly disclose the fact that the initial interest rate was subject to

21   change.

22       **2.    World Provided All Required Disclosures Regarding Negative Amortization**

23           Plaintiff next alleges that the TILDS "makes no reference to negative amortization.".

24   FAC, at ¶¶74-75.  Plaintiff concedes, however, that the Note outlines the possibility of negative

25

26   [5] It is unclear whether Plaintiff intends to argue that the difference between the APR in the Regulation Z Disclosure and
     the interest rate in the Note gives rise to a TILA cause of action.  Such an assertion would be nonsensical as APR and
27   interest rate are different terms and more often than not, are represented by different values.  The APR and interest rate
     listed in Exhibit 1 are entirely consistent.

28

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The
Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

amortization but argues the disclosure was "misleading" because negative amortization was a certainty, rather than the mere possibility disclosed.  Id. at ¶77.

At the outset, it is against important to note that Plaintiff's claim is barred by the statute of limitations and her cause of action under 12 C.F.R. 226.19(b) cannot extend her right to rescind.  See Pulphus, 2003 U.S. Dist. LEXIS 7080 at *42-44.

In any event, Plaintiff fails to state a claim.  The Commentary to 226.19(b)(2)(v) explains that "[a] creditor must disclose, where applicable, the possibility of negative amortization." Where, as here, a loan permits a borrower to choose their monthly payment, "the creditor must fully disclose the rules relating to the option, including the effects of exercising the option (such as negative amortization will occur and the principal balance will increase)."  Commentary § 226.19(2). Applying this language, the Court in Andrews v. Chevy Chase Bank, FSB, 240 F.R.D. 612, 620 (D. Wisc. 2007)[6], found the a TILDS need not disclose a loan's potential for negative amortization if such information is disclosed elsewhere.  In addition, the Court found the following statement contained in defendant's supplemental adjustable rate mortgage disclosure (not its TILDS) satisfied TILA requirements because it informed "borrowers as to what would occur if they made only the minimum monthly payments:"

> Interest Rate changes and your ability to make less than a Fully Amortizing Payment each month, or a combination of the two, may result in the accumulation of accrued but unpaid interest ('Deferred Interest Balance').
>
> Each month that the payment option you choose is less than the entire interest portion, we will add the Deferred Interest Balance to your unpaid principal.  We will also add interest on the Deferred Interest Balance to your unpaid principal each month.  The interest rate on the Deferred Interest Balance will be the Fully Indexed Rate.
>
> Id.

---

[6] The court in Andrews, 240 F.R.D. 612, 616-619, found a TILA violation in the TILDS before it on other grounds and, after the court certified a resulting class of borrowers seeking to rescind their loans, the lender appealed. The appeal is still pending before the Seventh Circuit.  See, Andrews v. Chevy Chase Bank, FSB, 474 F.Supp. 2d 1006 (D. Wisc. 2007).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

World provided Plaintiff similar, but stronger, language in its Note and in the "Adjustable Loan Program Disclosure Statement" ("ALPDS") that it provided to Plaintiff.[7]  Plaintiff acknowledges in the Note, "My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and *may not be sufficient to pay the entire amount of the Interest accruing on the unpaid Principal balance*."  Note ¶3(B) (emphasis added). [8]  Next, under the bolded heading, "**Deferred Interest; Additions to My Unpaid Principal**," the Note states, "From time to time, my monthly payments *may be insufficient to pay the total amount of monthly Interest that is due.  If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest* at the same rate as the Principal."  Note ¶3(E) (emphasis added).  This language is nearly identical to that the Court in Andrews held satisfied TILA requirements.  Thus, Plaintiff's allegation that World failed to provide meaningful disclosure of the potential for negative amortization fails.

The ALPDS further outlines the loan's potential for negative amortization under the bolded heading, "**HOW DOES THE PRINCIPAL BALANCE CHANGE?**"  See Exhibit A attached hereto.  It states, "At various times during the life of your loan the monthly payment may not be sufficient to pay the full amount of interest due.  This can occur if the initial payment amount that you select is less than the full amount of interest due."  Id.  In sum, viewed alone or together, the Note and ALPDS provided clear and conspicuous disclosure of the loan's potential for negative amortization.

---

[7] Andrews, 240 F.R.D. 612, differs from this action, however, because once the court went beyond the finding that there had been proper disclosure of negative amortization, it found a technical TILA violation based on facts not present here.

[8] The TILDS incorporates by reference the ALPDS, which is conspicuously omitted from Plaintiff's FAC.  See FAC, Exh. 1.  As outlined above, for the purposes of a 12(b) or 12(c) motion, the Court may consider documents referenced in, but not attached to the complaint.  See In re Stac Electronics Securities Litig., 89 F.3d 1405, fn. 4; Branch v. Tunnell, 14 F.3d  453-54.  Further, it is proper for the Court to consider the ALPDS because, in determining whether a disclosure is clear as required by TILA, courts may examine all of the information in defendant's disclosures.  Andrews, 240 F.R.D. 616.  Thus, the Court may consider the ALPDS as part  of the instant motion.

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

### 3.    Plaintiff's Initial Interest Rate Was Not "Discounted"

2          Plaintiff alleges that the initial interest rate was "discounted," and could therefore

3   increase even if the index remained the same.  Id. ¶84.  Regulation Z requires a disclosure where the

4   "interest rate will be discounted."  12 C.F.R. 226.19(b)(2)(v).  However, as noted above, a violation

5   of 12 C.F.R. 226.19(b)(2)(v) does not extend the rescission period.  As the statute of limitations has

6   run on Plaintiff's actual and statutory damages claims, she cannot state a cause of action based on

7   this alleged violation.

8          In any event, Plaintiff's claim that the initial interest rate was discounted is flatly

9   contradicted by the terms of the Note, which govern Plaintiff's loan with World.  The purpose of

10  TILA's APR disclosure requirements is to inform the borrower of the actual cost of credit.  World

11  satisfied this requirement as outlined below.  Further, as evidenced by the Note and TILDS, this loan

12  did not contain a discounted rate.  Plaintiff's boilerplate allegations that the loan contained a "teaser

13  rate" of 1-3% are inconsistent with the documents attached to the FAC and need not be accepted as

14  true.  See Thompson, 300 F.3d 754.  Therefore, no disclosure was required.  12 C.F.R.

15  226.19(b)(2)(v).  Indeed, as the payment chart in Plaintiff's TILDS demonstrates, the payments were

16  contemplated to increase over time based upon an adjustable rate, which is disclosed in the Note.

17  Further, the payment schedule correctly outlines the payments needed to fully amortize the loan at its

18  initial fully indexed rate[9]:

19

20

21

| "Change Date" | Number of Payments | Amount of Payments | When Monthly Payments DUE | Total Payments |
|---|---|---|---|---|
|   | 12 | $628.36 | 10/1/06 | $7,540.32 |
| 1 | 12 | $675.49 | 10/1/07 | $8,105.88 |
| 2 | 12 | $726.15 | 10/1/08 | $8,713.80 |
| 3 | 12 | $780.61 | 10/1/09 | $9,367.32 |
| 4 | 12 | $839.16 | 10/1/10 | $10,069.92 |
| 5 | 12 | $902.10 | 10/1/11 | $10,825.20 |
| 6 | 12 | $969.76 | 10/1/12 | $11,637.12 |
| 7 | 12 | $1,042.49 | 10/1/13 | $12,509.88 |

26

27  [9] The sum of the payment amounts included in the TILDS' payment schedule is $451,704.74 – the total amount of principal and interest to be paid on the loan - as is set forth in the TILDS..

28

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

| | | | | |
|---|---|---|---|---|
| 8 | 12 | $1,120.68 | 10/1/14 | $13,448.16 |
| 9 | 12 | $1,204.73 | 10/1/15 | $14,456.76 |
| 10 | 239 | $1,437.64 | 10/1/16 | $343,595.96 |
| | 1 | $1,434.42 | 9/1/36 | $1,434.42 |
| Totals | 360 | ///////// | ///////// | **$451,704.74** |

Plaintiff's conclusory, unsupported allegations that World did not disclose the initial interest rate was "discounted" are not sufficient to sustain a claim and should be dismissed.

### 4.    World Properly Disclosed the Annual Percentage Rate

Plaintiff alleges that World failed to disclose the composite APR which Plaintiff alleges was required because the loan featured an adjustable rate with an initial discount.  FAC ¶89. Plaintiff's allegation makes no sense, because the TILDS clearly identifies the APR at 6.853%.  As before, the exhibits Plaintiff attaches to her FAC contradicting her generic allegations govern. Thompson, 300 F.3d at 754.  The Complaint therefore fails to state a cause of action for violation of the TILA, and should be dismissed.

### D.    Plaintiff's Second, Third And Sixth Causes Of Action Fail Because HOLA Preempts The UCL As Plaintiff Seek To Apply It

Plaintiff attempts to state a claim under the UCL in three ways.  First, they claim that World's alleged violations of TILA give rise to a UCL claim.  Plaintiffs' First Amended Complaint ("FAC") ¶97.  Second, Plaintiff attempts to state a UCL claim based on World's allegedly "unfair" and "fraudulent" practices.  FAC ¶105.  Third, Plaintiff attempts to state a UCL claim by alleging World violated California Financial Code Section 22302.  FAC ¶167.  HOLA preempts all three of Plaintiff's UCL claims as they seek to apply them to World.

The paramount purpose of HOLA is to ensure the solvency of federal associations through a uniform scheme of regulation so that the public has access to means of home financing. See 12 C.F.R. §560.2; see also, Fidelity Federal Sav. & Loan Assn. v. De La Cuesta, 458 U.S. 141 (1982), 159-160.  In furtherance of its stated goal of ensuring uniformity, Section 560.2 states that "OTS hereby occupies the entire field of lending regulation for federal savings associations."  The regulation goes on to state that OTS intends to give associations "maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation" and that, except as

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

provided in paragraph (c), federal savings associations may extend credit as authorized by federal law "without regard to state laws purporting to regulate or otherwise affect their credit activities." Id.  "Thus, the federal regulation is intended to preempt all state laws purporting to regulate any aspect of the lending operations of a federally chartered savings association, whether or not OTS has adopted a regulation governing the precise subject of the state provision." Lopez v. World Savings and Loan Association, 105 Cal. App. 4th 729, 738 (2003).

HOLA provides a non-exhaustive list of the types of state laws that it intends to preempt.  The list specifically includes all state laws relating to "**[d]isclosures** and **advertising**, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants…" 12 C.F.R. §560.2(b)(9) (emphasis added); see also Rosenberg v. Washington Mutual Bank, F.A., 849 A.2d 566, 572 (N.J. Super. 2004).

Even broad state statutes face preemption when they are alleged to apply to the lending activities of a federally chartered financial institution operating under HOLA.  In Silvas v. E*Trade Mortgage, 421 F. Supp. 2d at 1317, putative class action plaintiffs obtained loans from the defendant bank, but elected to rescind the mortgage transaction within the three days allotted for cancellation by TILA.[10]  The bank did not refund fees that the plaintiffs had paid to "lock-in" their interest rate.  Id.  The plaintiffs sued under the UCL and California Business and Professions Code Section 17500, alleging that the bank's advertisements and disclosures failed to clearly, conspicuously and accurately disclose that lock-in fees were non-refundable.  Id.  In granting the bank's demurrer, the court stated "Plaintiff's UCL claims therefore attack Defendants' lending practices in two categories where OTS has explicitly indicated federal law occupies the field: (1) disclosure and advertising and (2) loan related fees."  Id. at 1319.  The court held that any an attempt to use a state statute to supplement a federal law that explicitly occupies an entire field is impermissible.  Id.

---

[10] For other cases exemplifying HOLA's vast preemptive effect see Am. Bankers Ass'n v. Lockyer, 239 F. Supp 2d 1000 (E.D. Cal. 2003) and Lopez v. World Savings and Loan Association, 105 Cal. App. at 738.

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1.    **Plaintiff's Second Cause Of Action Fails Because California's UCL May Not Be Used As A Means To Enforce TILA**

Plaintiff's Second Cause of Action alleges World violated TILA requirements and, in turn, violated UCL. As it is undisputed that World is a federally chartered bank, HOLA preempts Plaintiff's claim. See attached Request for Judicial Notice ¶1. Silvas controls the present case. As that Court held, misrepresentations in advertising and/or disclosure material constituting TILA violations cannot be the foundation for a valid UCL claim. Silvas, 421 F. Supp. 2d at 1319-20. To the contrary, the remedies for TILA violations outlined in the Act are necessarily exclusive and allowing a state to supplement those remedies is tantamount to state regulation. Id. at 1320. Such regulation of an area where federal law preempts the entire field is impermissible. Id. Therefore, Plaintiff's UCL cause of action premised on World's alleged TILA violations fails as to state a claim and should be stricken.

2.    **Plaintiff's Third Cause Of Action For Violation Of The UCL Fails Because It Is Grounded In World's Allegedly Deceptive Advertisements and Disclosures**

Plaintiff's Third Cause of Action for violation of the UCL is based on the same allegedly faulty advertisements and disclosures outlined above. See FAC ¶¶108-115, 118. Plaintiff cannot avoid HOLA preemption by generalizing the foundation for their claims. HOLA expressly preempts any state laws purporting to regulate the advertising of, or disclosures provided in connection with, home loans issued by federally chartered banks. Because World is a federally chartered bank and Plaintiff seeks injunctive relief regulating the content of World's advertisements and disclosures, HOLA preempts the UCL as Plaintiff seeks to apply it here.

Plaintiff seeks to apply UCL to obtain an injunction dictating how World may or may not market its loans and what information World must disclose to its borrowers. Indeed, every allegation used to support Plaintiff's Third Cause of Action involves World's advertising techniques or disclosures. Id. Plaintiff even points out allegedly inadequate disclosures regarding negative amortization as part of their UCL claim (FAC ¶108) despite the fact that earlier in the Complaint Plaintiff identifies the precise provision of TILA that would preempt such a claim. See FAC ¶70 (citing 12 C.F.R. 226.19 setting forth specific disclosure requirements regarding negative

amortization).  Applying <u>Silvas</u> to the current situation, it is again apparent that HOLA preempts the UCL as it would be applied here.  Once it is apparent that a state law regulates mortgage disclosures of a federally chartered bank, no further inquiry is required; preemption is appropriate.  <u>See Silvas</u>, 421 F. Supp. 2d at 1319; <u>see also</u>, <u>Lopez v. World Savings and Loan Association</u>, 105 Cal. App. 4th at 738.  Here, Plaintiff seeks to use the UCL to regulate the requisite content of mortgage disclosures and advertising material prepared by a federally chartered bank.  Because 12 C.F.R. Section 506.2(b)(9) specifically preempts any state law that attempts to regulate mortgage disclosures or advertising, the UCL is preempted here.  Thus, Plaintiff's Third Cause of Action should be stricken.

Moreover, the OTS confirms that HOLA preempts UCL as it applies to disclosures and advertisements of federally chartered banks. <u>See</u> Opinion Letter by Chief Counsel Carolyn J. Buck, at 1, 17-18 (Mar. 10 1999) ("Mar. 10 Opinion Letter") (attached to Request for Judicial Notice As Exhibit B).  Relying on 12 C.F.R. Section 560.2 and examples cited therein, the OTS concluded that HOLA preempts application of the broad provisions of UCL, including the use of the terms "unfair" and "fraudulent," in a manner that would apply to federally chartered loan associations' advertisements and disclosures.  <u>Id.</u>  Again, the UCL is preempted here and Plaintiff's Third Cause of Action should be stricken.

### 3.    Plaintiff's Sixth Cause Of Action Is Preempted Because Plaintiff Bases Her Claim Entirely On A State Law That Explicitly Targets Loans

Plaintiff again seeks to side-step HOLA's preemption by couching the same allegations under the guise that the Note was "unconscionable" pursuant to California Financial Code Section 22302[11] ("Section 22302") and, therefore, violated the UCL.  Cmplt. ¶160.  Section 22302 provides specifically that "[a] loan found to be unconscionable…shall be deemed to be in violation of this division and subject to the remedies specified in this division."

Because this UCL a claim is based on a section of the California Financial Code applicable only to consumer loans, it is preempted.  Indeed, "Any state law that purports to regulate

---

[11] At the outset, it is worth noting that California Financial Code Section 22302 could not be applied to World directly because World does not operate pursuant to a California license as required for the CFLL to apply.  <u>See</u> Cal. Fin. Code §22050, et seq.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  a federal savings and loans' lending activities…is expressly preempted." Silvas v. E*Trade Mort.

2  Corp., 421 F. Supp. 2d at 1319. Section 22302, like the laws at issue in Fidelity, 458 U.S. 141 and

3  Lopez, 105 Cal. App. 4th 729, applies specifically to lending institutions; thus, it is preempted.[12]

4  **E.    Plaintiff Fails To State A Cause Of Action For Breach Of Contract Because World's**

5  **Alleged Conduct Is Consistent With Its Contractual Obligations**

6          Plaintiff's Fourth Cause Of Action for Breach of Contract alleges that World

7  breached the loan agreement by failing to apply loan payments to both principal and interest and by

8  providing Plaintiff an interest rate other than that which was promised. FAC ¶¶128-130. Plaintiff's

9  generic allegations, however, are flatly contradicted by the terms of the Note and TILDS they attach

10  to the FAC. Thus, while Plaintiff alleges that the Note and TILDS describes the interest rate on the

11  loan, "typically between 1% and 3%" [FAC ¶128], this allegation is entirely fictitious because the

12  Note and TILDS attached to the Complaint correctly identify the initial interest rate and APR as

13  6.790% and 6.853%, respectively, and say nothing whatsoever about any different "teaser" rate. See

14  Exhibit 1 to FAC at 1, 7. Plaintiff also alleges that Defendants agreed that Plaintiff's monthly

15  payment obligations would be sufficient to pay both principal and interest owed on the loans. FAC

16  ¶130. But again, the Note and TILDS attached to the Complaint belie Plaintiff's contention. Section

17  3(B) of the Note states, "My initial monthly payment amount was selected by me from a range of

18  initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of

19  interest accruing on the unpaid Principal balance." Because this specific language trumps Plaintiff's

20  general allegations of duty and breach, Plaintiff has not and cannot state a cause of action for breach

21  of contract based on World's alleged failure to apply Plaintiff's loan payments to both principal and

22  interest.[13]

23  12 Plaintiff support her unconscionability argument by stating "Defendants further inserted into the subject ARM loan

24  contracts a draconian prepayment penalty…" FAC ¶165. Notably, 15 U.S.C. 1639(c) exclusively governs the field of prepayment penalties. Therefore, Plaintiff's assertion that the prepayment penalties in the Note render it "unconscionable" cannot salvage their Sixth Cause of Action under the UCL.

25

26  13 Any attempt by Plaintiff to rely on other language in the Note, taken out of context, should fail. It is a fundamental rule of construction that context is key to interpreting any writing. See, e.g., Rest. 2d Contracts §202(2); Doe v. Luster,

27  145 Cal. App. 4th 139, 146 (2006) ("words must be construed in context"). Further, to the extent Plaintiff predicates her Fourth and Fifth Causes of Action on parol evidence such as allegedly misleading disclosures and advertisements affecting the parties' duties, HOLA preempts these causes of action.

28

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The
Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

**F.    Plaintiff Fails To State A Cause Of Action For Breach Of The Implied Covenant Of**

2

**Good Faith And Fair Dealing Because California Law Does Not Recognize Such A**

3

**Cause Of Action Outside of the Insurance Context And Because Plaintiff Seeks To**

4

**Impose Duties Inconsistent With That Of The Contract**

5

Plaintiff's Fifth Cause of Action for Breach of Implied Covenant of Good Faith and

6

Fair Dealing similarly fails.  The implied covenant of good faith and fair dealing exists merely to

7

prevent one contracting party from unfairly frustrating the other party's right to receive the benefits

8

of the agreement actually made.  Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 349-50 (2000).  It

9

cannot impose substantive duties that are inconsistent with the terms of the contract.  Id.  Further,

10

California does not allow tort recovery (including punitive damages) for the breach of the implied

11

covenant of good faith and fair dealing outside the context insurance contracts.  See Foley v.

12

Interactive Data Corp., 47 Cal. 3d 654, 700 (1988); Freeman & Mills v. Belcher Oil Co., 11 Cal. 4th

13

85 (1995).  Because the breach of implied covenant cannot be used to enforce duties separate from

14

those set forth in, much less implied obligations inconsistent with, the contract, Plaintiff's cause of

15

action for breach of the implied covenant is superfluous and should be dismissed.

16

In any event, Plaintiff does not and cannot allege World prevented Plaintiff from

17

receiving the benefit of her bargain.  As outlined above, the Note clearly indicates that Plaintiff's

18

payment amount "will change."  Exh. 1 to FAC at 2.  In addition, World's Truth in Lending

19

Disclosure indicates that payment will increase each year.  World's alleged behavior is entirely

20

consistent with their contractual duties.  Thus, Plaintiff has not and cannot state a cause of action for

21

breach of the implied covenant of good faith and fair dealing.

22

**G.    Plaintiff's Prayer For Punitive Damages Should Be Stricken**

23

Plaintiff seeks punitive damages.  FAC 36:28.  California Civil Code section 3294

24

requires a plaintiff to show malice, fraud or oppression in order to recover punitive damages. Cal.

25

Civ. Code §§ 3294(a) & (c).

26

Plaintiff's FAC fails to state facts sufficient to warrant an award of punitive damages.

27

It is well settled that a plaintiff is not entitled to punitive damages based on mere conclusory

28

averments of "malicious," "oppressive" and "fraudulent" conduct by a defendant.  Rather, the

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The
Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    plaintiff must plead specific facts supporting such a finding.  See Brousseau v. Jarrett, 73 Cal. App.

2    3d 864, 872 (1977) (holding conclusory allegations that a defendant's conduct was "intentional,

3    willful, and fraudulent is a patently insufficient statement" to entitle plaintiff to punitive damages);

4    G.D. Searle & Co. v. Superior Court (1975) 49 Cal. App. 3d 22, 28-29 (same).

5        Here, Plaintiff's claim for punitive damages is wholly unsupported by their factual

6    allegations.  At the threshold, there is no allegation that World acted with any malice or oppression.

7    Rather, Plaintiff's request for punitive damages against World is based solely on their boilerplate

8    allegation of breach of the implied covenant of good faith and fair dealing.  See, e.g., FAC ¶¶150-

9    151.  As outlined above, tort remedies are not available for such a claim.  See Foley, 47 Cal. 3d 654;

10    Freeman, 11 Cal. 4th 85.  Further, such conclusory allegations devoid of factual support in the FAC,

11    are insufficient to support a prayer for punitive damages.  Hence, Plaintiff's request for punitive

12    damages fails as a matter of law and should be stricken from the FAC.  E.g., Brousseau, 73 Cal.

13    App. 3d at 872.[14]

14    **H.    Plaintiff Fails To Allege Facts Sufficient To State Any Claim Against WMC**

15        As summarized in footnote 1 above, all Plaintiff's causes of action against WMC

16    must fail because Plaintiff fails to allege any contact or privity of contract with WMC.  Plaintiff

17    attempts to lump WMC in with World, but never alleges any facts supporting this generic allegation.

18    To the contrary, Plaintiff concedes that World and WMC constitute two separate entities conducting

19    separate lending businesses.  See FAC ¶¶4-6.  Further, the exhibits Plaintiff attaches to her FAC

20    confirm that her only interaction was with World.  See FAC, Exh. 1.  Any of Plaintiff's generic

21    allegations that are inconsistent with the documents attached to her FAC need not be accepted as

22    true.  Wuxi Multimedia, 2006 U.S. Dist. Lexis 9160, *26-27.

23        "Only parties in privity of contract have standing to sue under a contract."  Grant v.

24    State Farm Life Ins. Co., 2007 U.S. Dist. LEXIS 78501, *12-13 (E.D. Cal. 2007).  Because, as

25    outlined above, Plaintiff's only contractual relationship was with World, her contract claims against

26    _____

27    [14] Under Fed. R. Civ. Proc. 12(f), a court may strike prayers for relief that seek remedies which are unavailable as a matter of law, on the grounds that such remedies are immaterial.  See Darby v. City of Torrance, 810, F. Supp. 271, 272-73 (C.D. Cal. 1992), rev'd on other grounds.

28

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

WMC fail.  Similarly, Plaintiff's UCL and TILA causes of action fail as to WMC because Plaintiff does not and cannot allege that WMC was involved in the underlying transaction.  Thus, the Court should dismiss WMC from the instant action.

### IV.     CONCLUSION

The TILDS attached to Plaintiff's FAC clearly and conspicuously discloses all information required by the TILA.  Indeed, for all its hyperbole, Plaintiff's FAC is contradicted by the terms of the Note and TILDS attached to the pleading, and ultimately fails to state a cognizable claim under the TILA.  Moreover, Plaintiff's state law causes of action, by which she attempts otherwise to plead around the TILA, are expressly preempted.  World and WMC therefore respectfully submit that the FAC should be dismissed in its entirety.


DATED:  November 6, 2007

REED SMITH LLP


By    /s/ Keith D. Yandell
        Jack R. Nelson (SBN 111863)
        David S. Reidy (SBN 225904)
        Keith D. Yandell (SBN 233146)
        Attorneys for Defendants World Saving Bank, FSB
        and Wachovia Mortgage Corporation

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Defendant World and WMC 's Memorandum Of Points And Authorities In Support Of Motion To Dismiss Or, In The Alternative, Motion to Strike Portions Of Plaintiffs' First Amended Complaint

**EXHIBIT A TO MPA**

JUL-31-06   01 06PM   FROM-WORLD SVNGS L825 TELEFI TEAM B Tisha H   825          T-743  P 005/016  F-054

0043651850

# LOAN PROGRAM DISCLOSURE
# PICK-A-PAYMENT<sup>sm</sup> LOAN

### ADJUSTABLE RATE MORTGAGE
### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX (COSI)

This disclosure describes in a question-and-answer format important features of the Pick-a-Payment<sup>sm</sup> Loan Program you are considering Federal Reserve Regulation Z and the rules and regulations of the federal Office of Thrift Supervision require that World give this disclosure to you This disclosure is accurate as of the date of printing However, World reserves the right to make subsequent changes to it at any time regarding any matter it covers Such changes may occur because of changes in policy, law or regulation or for any other reason Some terms of loans on non-owner occupied properties may be different from those described in this disclosure If you are considering a loan on a non-owner occupied property, please ask a Loan Representative about the differences

**CAN THE INTEREST RATE AND PAYMENT AMOUNT CHANGE?**
Yes Movement of an index causes the interest rate and payment amount to change An index is an independent measure of interest rate activity

**WHAT IS THE INDEX?**
The index for this loan is the weighted average of the rates of interest on the deposit accounts (sometimes called **cost of savings**) of the federally insured depository institution subsidiaries of Golden West Financial Corporation ("COSI" or "Index") Golden West Financial Corporation is a holding company listed on the New York Stock Exchange under the trading symbol "GDW" All of the depository institution subsidiaries of GDW currently operate under the name World Savings

The COSI consists of the weighted annualized rate of interest in effect on deposit accounts, adjusted for the effects of financial instruments related to deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts It does not include accounts owned by GDW or its subsidiaries

GDW computes the COSI as of the last day of each calendar month and announces it on or near the last business day prior to the fifteenth day of the following calendar month For example, GDW announces the February COSI on or near the last business day prior to the fifteenth of March It is in effect until the announcement of the March COSI in April

**WHERE CAN I GET INFORMATION ABOUT THE INDEX?**
You can get information about the COSI by

– writing to World Savings
   P O Box 659558
   San Antonio, Texas 78265-9558
   Attn Customer Service Department, or

– telephoning (800) 642-0257

**HOW DOES WORLD DETERMINE INTEREST RATE CHANGES?**
World determines interest rate changes by adding an amount (margin) that is fixed for the life of the loan to the current index The current index is the most recently announced COSI value available on the date of each interest rate change Please ask for World's current margin and interest rate

**HOW DOES WORLD DETERMINE PAYMENT CHANGES?**
Subject to the payment change limits described below, World determines payment changes by calculating payments that amortize the loan Amortize means to pay off the loan at its then current interest rate over its remaining term in equal payments

**IS THE INITIAL INTEREST RATE BASED ON THE INDEX PLUS THE MARGIN?**
Yes

**HOW IS THE INITIAL PAYMENT AMOUNT ESTABLISHED?**
You select an initial payment amount from a range of payment amounts provided by World The range includes a minimum and a maximum initial payment amount The maximum initial payment will not fully amortize the loan at the initial interest rate The initial payment amount you select may not be sufficient to pay the full amount of interest due at the initial interest rate This will cause the loan amount to increase as described below in the section "How Does The Principal Balance Change?" Please ask for the range of initial payments for the loan you are considering

**HOW OFTEN CAN THE INTEREST RATE CHANGE?**
Monthly, beginning on the due date of the first regularly scheduled payment

**HOW OFTEN CAN THE PAYMENT CHANGE?**
Annually The payment can change every 12 payments beginning with the 13th payment Each date on which the payment may change is a "Payment Change Date "

**ARE THERE ANY LIMITS TO THE AMOUNT THE INTEREST RATE MAY CHANGE?**
Yes The maximum interest rate limit ("Lifetime Rate Cap") is between 2 000 and 7 000 percentage points over the initial Index value plus margin Please ask for World's current Lifetime Rate Cap

**ARE THERE ANY LIMITS TO THE AMOUNT THAT PAYMENTS MAY CHANGE?**
Yes The monthly payment cannot increase ("Payment Cap") more than 7-1/2% each year
However,

– the Payment Cap does not apply on the 10th, 15th, 20th, 25th or final Payment Change Dates,

– the Payment Cap does not apply if the principal balance reaches the limits described in the answer to the next question

**HOW DOES THE PRINCIPAL BALANCE CHANGE?**
The principal balance (loan amount) can change monthly

When the monthly payment is more than sufficient to pay the full amount of interest due, World subtracts the amount that exceeds the interest due from the principal balance, resulting in a principal reduction.

At various times during the life of your loan the monthly payment may not be sufficient to pay the full amount of interest due This can occur if the initial payment amount that you select is less than the full amount of interest due This can also result from increases in the interest rate prior to the Payment Change Date or from a monthly payment that did not increase sufficiently to pay the full amount of interest due, because of the 7-1/2% Payment Cap



LENDER'S USE ONLY

JUL-31-06   01 07PM   FROM-WORLD SVNGS L825 TELEFI TEAM B Tisha H   825   T-743   P 006/016   F-054

0043651850

If the monthly payment is not sufficient to pay the full amount of interest due, World adds this accrued but unpaid interest, called Deferred Interest, to the unpaid principal balance of the loan. Until repaid, Deferred Interest bears interest at the interest rate of the loan.

The principal balance may never exceed

- 125% of the original principal balance amount for a loan that had an original loan amount of 85% or less of the property's appraised value or sales price (whichever is less), or

- 115% of the original principal balance amount for a loan that had an original loan amount that is greater than 85% and less than or equal to 90% of the property's appraised value or sales price (whichever is less), or

- 110% of the original principal balance amount for a loan that had an original loan amount greater than 90% of the property's appraised value or sales price (whichever is less)

If Deferred Interest caused the principal balance to reach these limits, World would immediately increase the payment without regard to the Payment Cap. The increased payment would pay off the loan at the then current interest rate and remaining term

**WHAT ARE THE INITIAL AND MAXIMUM INTEREST RATES AND PAYMENTS FOR A $10,000 LOAN ORIGINATED IN SEPTEMBER OF 2005?**

| | Initial payment selected * | Maximum payment and year in which maximum payment occurs ** |
|---|---|---|
| **5 YEAR TERM** | | |
| Minimum initial payment | $175 06 | $398 87   5th year |
| Maximum initial payment | $192 12 | $294 25   5th year |
| **15 YEAR TERM** | | |
| Minimum initial payment | $64 13 | $182 49   5th year |
| Maximum initial payment | $82 98 | $206 51   11th year |
| **30 YEAR TERM** | | |
| Minimum initial payment | $36 72 | $136 60   3rd year |
| Maximum initial payment | $58.29 | $137 81   5th year |

* The initial interest rate in the examples is 5 740%, which reflects an Index value of 2 890% plus a margin of 2 850% Your initial interest rate may be different

** The maximum interest rate in these examples is 12 740%, which reflects a Lifetime Rate Cap of 7.000% over the initial Index value plus margin Your Lifetime Rate Cap may be different

Your monthly payment can increase or decrease substantially based on changes in the interest rate

**HOW CAN I CALCULATE THE INITIAL PAYMENT FOR THE AMOUNT I PLAN TO BORROW?**
To see what the initial payments would be

step 1   divide the amount you plan to borrow by $10,000, and then

step 2   multiply the resulting amount by the monthly payment shown under the "initial payment selected" column of the immediately previous question

For example,

for a **5 year term**, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $175 06 = **$2,100.72** (minimum initial payment)
or
12 X $192 12 = **$2,305.44** (maximum initial payment)

for a **15 year term**, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $64 13 = **$769.56** (minimum initial payment)
or
12 X $82 98 = **$995.76** (maximum initial payment)

for a **30 year term**, the monthly payment for a loan amount of $120,000 would be

step 1   $120,000 ÷ $10,000 = 12

step 2   12 X $36 72 = **$440.64** (minimum initial payment)
or
12 X $58 28 = **$699 48** (maximum initial payment)

**WHEN WILL I RECEIVE NOTICES OF CHANGES TO THE LOAN? WHAT INFORMATION WILL THEY INCLUDE?**
World sends a written notice at least 25 days before each Payment Change Date The notice includes information about the payment amount, interest rate and loan balance changes

**DOES THIS LOAN HAVE AN ASSUMPTION/DUE-ON-SALE PROVISION?**
If at origination your loan is not secured by additional non-real estate collateral, World will give written approval for a transfer (assumption) and the buyer (transferee) may assume your loan at its current interest rate provided

1)   the buyer meets World's then current credit standards;

2)   the buyer makes a cash downpayment sufficient to meet World's then current underwriting standards,

3)   World receives an assumption fee,

4)   no previous transfer of the property has occurred since the original date of the loan, and

5)   you and the buyer sign all required assumption documents

The buyer might not receive the same Lifetime Rate Cap that you originally did The buyer could receive a higher Lifetime Rate Cap based on then current market conditions

If the loan program you are considering requires additional non-real estate collateral at the time of origination, the loan will not be assumable You will receive additional information that will explain the loan program in greater detail

Under certain circumstances, World could declare the entire outstanding loan amount immediately due and payable Failure to pay could then result in the forced sale of the property securing the loan This could occur

- if there is more than one sale or transfer of the property, or

- if you sell or transfer the property to anyone without obtaining World's prior written consent

**DOES THIS LOAN HAVE A PREPAYMENT CHARGE PROVISION?**
Some loan programs have a provision that requires that you pay a fee (a prepayment charge) if you make certain payments of principal before they are due (prepayments) Be sure to ask whether the loan program you are considering has a prepayment charge provision

If the loan program you are considering does have a prepayment charge provision, you will receive several documents during the processing of your loan that explain the prepayment charge in detail.

**HOW CAN I GET INFORMATION ABOUT WORLD'S OTHER LOAN PROGRAMS?**
A Loan Representative will be happy to answer any questions you have and provide you with disclosures for other adjustable rate loan programs

**IMPORTANT - SIGNATURE**
I have received a copy of this disclosure describing the Pick-a-Payment Loan Program I understand that this disclosure is neither a commitment to make a loan nor a binding contract The complete contractual terms and conditions of the loan are in the Note, Security Instrument, Modification(s) and Rider(s), if any

_Dolores Manriques_
Print Name

_Dilan Manriquez_
Signature

_524 Cesaric Dr._
Property Address   _Milpitas CA 95035_

_7/26/06_
Date

Please return a signed copy of this disclosure to World and retain a copy for your records.