1  Jack R. Nelson (SBN 111863)
   David S. Reidy (SBN 225904)
2  Keith D. Yandell (SBN 233146)
   REED SMITH LLP
3  Two Embarcadero Center, Suite 2000
   San Francisco, CA  94111-3922
4
   **Mailing Address:**
5  P.O. Box 7936
   San Francisco, CA  94120-7936
6
   Telephone:    +1 415 543 8700
7  Facsimile:    +1 415 391 8269

8  Attorneys for Defendants World Savings Inc.,
   World Savings Bank, FSB (now renamed
9  "Wachovia Mortgage FSB") and Wachovia
   Mortgage Corporation

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13

14  DOLORES MANDRIGUES, individually and on    Case No. C07 04497
    behalf of all others similarly situated,
15                                             **MEMORANDUM OF POINTS AND**
              Plaintiff,                        **AUTHORITIES IN SUPPORT OF**
16                                             **DEFENDANTS' MOTION TO DISMISS**
                                               **CORRECTED SECOND AMENDED**
         vs.                                   **COMPLAINT**
17
    WORLD SAVINGS, INC., WORLD SAVINGS         Date:           February 29, 2008
18  BANK, FSB, WACHOVIA MORTGAGE               Time:           9:00 a.m.
    CORPORATION, and DOES 1 through 10,        Place:          Courtroom 3, 5th Floor
19  inclusive,                                 Orig. Complaint:  August 30, 2007

20            Defendants.                      The Honorable Jeremy Fogel

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I . INTRODUCTION ...................................................................................................1

II . PLAINTIFFS' FACTUAL ALLEGATIONS ........................................................3

III . LEGAL ARGUMENT .............................................................................................4

    A.    Applicable Legal Standards For A Motion to Dismiss / Motion to Strike ...................4

    B.    Plaintiffs' First Claim For Relief, For Alleged Violation of TILA, Misinterprets the Requirements of TILA, Reg. Z and the Commentary Concerning Disclosure of Payment Schedules and Loan Terms ..................................5

        1.    TILA And Reg. Z Require That Lenders Give Borrowers A Loan Payment Schedule Based On Their Actual Contractual Obligations At The Time They Execute Their Note, And Plaintiffs' TILDSs All Complied With That Rule ...........................................6

            a.    World's Payment Schedules Were Accurate ........................6

            b.    Accurate Payment Schedules Do Not Violate TILA Simply Because Some Scheduled Payments Fail To Pay All Accrued Interest ......................................................................8

        2.    TILA Obligates Lenders To Disclose The *Possibility And Consequences* Of Negative Amortization, But Does Not Obligate Them To Advise Borrowers Of The Precise Likelihood That – Much Less When - Their Loan Will Experience Negative Amortization ...................................................................................10

        3.    World Clearly and Conspicuously Disclosed The Cost Of Credit .................13

        4.    Mandrigues', the Minyens' and Clausons' Causes Of Action Seeking Actual And Statutory Damages Under TILA Are Time-Barred ......................................................................................................14

    C.    Plaintiffs' Second, Third, Fourth and Fifth Claims for Relief Fail Because HOLA Preempts State Law Claims When A State Law Is Used To Regulate The Lending Activities Of A Federally Chartered Savings Bank ...............15

        1.    HOLA Preempts Plaintiffs' Claim Alleging Fraudulent Omissions in World's Loan Agreements And Disclosures .............................................17

        2.    Plaintiffs' Claim For Violation Of The California UCL Fails Because It Is Purports To Govern World's Lending Advertisements and Disclosures ....................................................................18

        3.    Plaintiffs' Claim For Breach Of Contract Is Preempted Because It Challenges  The Lending Agreements And Disclosures Of A Federally Savings Bank ..................................................................................20

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

**TABLE OF CONTENTS**
**(CONTINUED)**

**Page**

D.   Plaintiffs' Claim Of Fraudulent Omission Fails Because World Disclosed
All Allegedly Concealed Facts ..................................................................................20

E.   Plaintiffs' Breach Of Contract Claim Fails Because World's Alleged
Behavior Is Consistent With The Terms Of The Contract .........................................22

F.   Plaintiffs Fail To State A Claim For Relief For Breach Of The Implied
Covenant Of Good Faith And Fair Dealing Because California Law Does
Not Recognize Such A Cause Of Action Outside of the Insurance Context
And Because Plaintiff Seeks To Impose Duties Inconsistent With That Of
The Contract................................................................................................................22

IV .   CONCLUSION....................................................................................................................23

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No. C07 04497

DOCSSFO-12504139.4

Memorandum Of Points And Authorities In Support Of Motion To Dismiss Corrected Second Amended Complaint

# TABLE OF AUTHORITIES

## CASES

# TABLE OF AUTHORITIES

## CASES

America Bankers Association v. Lockyer,
239 F. Supp 2d 1000 (E.D. Cal. 2003) ................................................................16

Andrews v. Chevy Chase Bank, FSB,
240 F.R.D. 612 (D. Wisc. 2007).................................................................12, 13

Balisteri v. Pacifica Police Department,
901 F. 2d 696 (9th Cir. 1988) ................................................................4

Branch v. Tunnell,
14 F.3d 453-54................................................................12

Doe v. Luster,
145 Cal. App. 4th 139 (2006) ................................................................22

Darby v. City of Torrance,
810, F.Supp. 271, 272-273 (C.D. Cal. 1992)................................................................4

Fallat v. Central Bank,
1988 U.S. Dist. LEXIS 13041 (N.D. Cal. 1988................................................................13

Fidelity Federal Sav. & Loan Association v. De La Cuesta,
458 U.S. 141 (1982)................................................................15

Foley v. Interactive Data Corp.,
47 Cal. 3d 654 (1988)................................................................23

Freeman & Mills v. Belcher Oil Co.,
11 Cal. 4th 85 (1995)................................................................23

Griffin Industrial v. Irvin,
2007 U.S. App. LEXIS 19828 (11th Cir. August 21, 2007)................................................................4

Guz v. Bechtel National, Inc.,
24 Cal. 4th 317 (2000)................................................................22

In re Stac Electronics Securities Litigation,
89 F.3d 1399 (9th Cir. 1996) ................................................................4

In re Stac Electronics Securities Litigation,
89 F.3d 1405 ................................................................12

Johnson v. Banc One Acceptance Corp.,
278 F. Supp. 2d 450 (E.D. Pa. 2003) ................................................................8, 9

Kline v. Turner,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

iii

87 Cal. App. 4th 1369 (2001) ...........................................................................21

Kruser v. Bank of America,
230 Cal. App. 3d 741 (1991) ..........................................................................21

Lopez v. World Savings and Loan Association,
105 Cal. App. 4th 729 (2003) .............................................15, 17, 18, 19, 20

Lopez v. World Savings and Loan Association,
105 Cal. App. at 738 ......................................................................................16

Lovejoy v. AT&T Corp.,
119 Cal. App. 4th 151 (2004) ........................................................................20

Motor Credit Co. v. Milhollin,
444 U.S. 555 (1980).........................................................................................5

Ocwen Loan Servicing,
491 F.3d 638 (7th Cir. 2007) ..............................................16, 17, 18, 19, 20

Prince-Servance v. BankUnited, FSB,
2007 U.S. Dist. LEXIS 81774 (N.D. Ill. November 1, 2007) ..............16, 17, 18, 20

Pulphus v. Sullivan,
2003 U.S. Dist. LEXIS 7080 (D. Ill. 2003) ...................................................14

Rosenberg v. Washington Mutual Bank, F.A.,
849 A.2d 566 (N.J. Super. 2004) ...................................................................15

Santos-Rodriguez v. Doral Mortg. Corp.,
485 F. 3d 12 (1st Cir. (Puerto Rico), 2007),
citing Veale v. Citibank, 85 F. 3d 577 (11th Cir.1996) .................................5

Silvas v. ETrade Mortgage Corporation,
421 F. Supp. 2d 1315 (S.D. Cal. 2006).............................4, 15, 17, 18, 19

Smith v. Check-N-Go of Ill., Inc.,
200 F.3d 511 (7th Cir. 1999) .......................................................................4, 5

Thompson v. Illinois Department of Prof. Reg.,
300 F.3d 750 (7th Cir. 2002) ...........................................................................4

Tucker v. New Rogers Pontiac, Inc.,
2003 WL 22078297 (N.D.Ill., 2003),
citing Lifanda v. Elmhurst Dodge, Inc., 237 F.3d 803 (7th Cir. 2001) ..................4

Vermurlen v. Ameriquest Mortg. Co.,
2007 U.S. Dist. LEXIS 75070 (D. Mich. 2007),
citing, Dixey v. Idaho First National Bank, 677 F.2d 749 (9th Cir. 1982).............5

Wuxi Multimedia, Ltd. v. Koninklijke Phillips Electrics, N.V.,
2006 U.S. Dist. LEXIS 9160 (D. Cal. 2006) ................................................4

**STATUTES**

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

12 C.F.R. 226.17(a)(1) ........................................................................................................6, 18

12 C.F.R. 226.19(b)(2)(vii) .................................................................................11, 14, 18, 19

12 C.F.R. 226.24 ......................................................................................................................19

12 C.F.R. Section 226.18 ....................................................................6, 7, 10, 13, 14, 19

12 C.F.R. Section 560.2 ..................................................................4, 15, 16, 17, 19, 20

12 C.F.R. Section 506.2(b)(9) ...............................................................................................19

12 U.S.C. Section 1461, et seq. ..............................................................................................4

15 U.S.C. 1640(e) ....................................................................................................................14

Fed. R. Civ. P. 12(f) ..................................................................................................................4

## MISCELLANEOUS

Home Owners' Loan Act of 1933, 48 Stat. 129 ...................................................................4

Regulation Z, 12 C.F.R. Section 226 ("Reg. Z") .......................................................4, 5, 6, 10, 17

Truth in Lending Act, 15 U.S.C. Section 1601 et seq .........................................................4, 17

DOCSSFO-12504139.4

Memorandum Of Points And Authorities In Support Of Motion To Dismiss Corrected Second Amended Complaint

# I.    INTRODUCTION

Plaintiffs Dolores Mandrigues ("Mandrigues"), Juanita Jones ("Jones"), Al F. Minyen and Wilma R. Minyen ("the Minyens") and Mark and Christina Clauson ("the Clausons") (collectively, "Plaintiffs") all obtained adjustable rate mortgage ("ARM") loans from World Savings Bank FSB ("World") between May of 2005 and March of 2007. These loans are referred to by World as "Pick-A-Payment" loans (and are described by Plaintiffs as "Option ARMs") because the loan agreements allowed Plaintiffs to select the amount of the initial monthly payment that they would make from a range of possible payment amounts pre-approved by World. This self-selection feature gave each Plaintiff the flexibility to decide which initial monthly payment level best suited their individual life situation and financial needs.[1]

To obtain their loans, each of the Plaintiffs executed a promissory note (the "Notes")[2] that specifically alerted each Plaintiff that, *inter alia*, their self-selected initial payment amounts "may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance" of their loans[3] and further explained that whenever their payment was in fact "insufficient to pay the total amount of monthly interest that is due[,] … the amount of interest that is not paid each payment, called 'Deferred Interest,' will be added to my Principal."[4]

Plaintiffs argue that neither these provisions in the Notes, nor the multitude of other similar statements in their loan disclosures and documentation,[5] adequately disclosed to them that

---

[1] The "Pick-A-Payment" loan also derives its name from a feature that typically provides, in each monthly statement that the borrower receives, 3 or 4 amounts from which the borrower can select to make their next monthly payment. Depending on the status of the loan, these typically range from a "minimum" payment of partial accrued interest to a payment of all monthly accrued interest but no principal to yet a higher amount that represents combined principal and interest due as calculated on a 30-year, fully amortized level. These monthly options, however, are not the subject of the allegations and claims in the Corrected Second Amended Complaint ("CSAC"). Presently, Plaintiffs focus only on the formation of their loan agreements and their initial monthly payment selections and payment schedules.

[2] Plaintiffs' Notes are attached to the CSAC as Exs. 1 (Mandrigues), 2 (Jones), 3 (Minyen) and 4 (Clauson).

[3] CASC, Exs. 1 at 00002, ¶3(B), 2 at 00003, ¶3(B), 3 at 00002, ¶3(B) and 4 at 00002, ¶3(B).

[4] CSAC, Exs. 1 at 0003, ¶3(E), 2 at 0005, ¶3(E), 3 at 0003, ¶3(E) and 4 at 0003, ¶3(E).

[5] *See, e.g.,* CSAC, Ex. 3 ("Loan Program Disclosure Pick-A-Payment Equity Builder™ Loan") at 00010 ("the initial payment amount you select may not be sufficient enough to pay the full amount of interest due [and] [t]his will cause the loan amount to increase …"), p. 00011 (same) and p. 00012 (page bearing the Minyens' signatures).

Memorandum Of Points And Authorities In Support Of Motion To Dismiss Corrected Second Amended Complaint

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  they would incur so-called "negative amortization" when they elected to make only the minimum

2  permissible payment each month (or bi-weekly).  Thus, on behalf of themselves and a putative class

3  of all borrowers who obtained Option ARM loans from any of the Defendants[6] nationwide since

4  August 30, 2003, Plaintiffs have alleged both federal and state law claims for relief premised on

5  World's allegedly deficient disclosures and an alleged resulting loss of equity in Plaintiffs' homes.

6          The legal and factual foundations upon which Plaintiffs base their entire Corrected

7  Second Amended Complaint ("CSAC") demonstrate, as a matter of law, that Plaintiffs have not and

8  cannot state a claim for relief against World (much less against WSI or WMC) arising out of the

9  loans that they obtained from World.  Plaintiffs' case rests heavily on erroneous interpretations of

10 the Truth in Lending Act, 15 U.S.C. Section 1601 *et seq.* ("TILA"), its implementing Regulation Z,

11 12 C.F.R. Section 226 ("Reg. Z"), and the Federal Reserve Board of Governors' Official Staff

12 Commentary ("Commentary").  As will be shown, on their face the Notes and Reg. Z disclosures (a

13 so-called Truth In Lending Disclosure Statements, or "TILDS") that are attached to the CSAC for

14 each Plaintiff comply with the operative law and do not support any of the claims for relief in this

15 action.

16          Moreover, Plaintiffs state law claims are preempted by the Home Owners' Loan Act

17 of 1933, 48 Stat. 129, as amended, 12 U.S.C. Section 1461, *et seq.* ("HOLA"), and 12 C.F.R. Section

18 560.2, which give the Office of Thrift Supervision ("OTS") the <u>exclusive</u> authority to regulate the

19 operations of federal savings associations such as World.[7]  Under this comprehensive scheme, even

20 facially neutral state laws are preempted if, as here, the laws would have more than an incidental

21 effect in the field occupied by the OTS under the HOLA or if they would be contrary to the OTS's

22 stated purpose in occupying the field.  Because Plaintiffs state law claims are all grounded in

23

24 [6] Of the three named defendants, the CSAC makes plain that only World made loans to or dealt with the Plaintiffs.  In

25 fact, the CSAC established unequivocally that there is simply no relationship or connection of any kind – derivative or otherwise – between any of the Plaintiffs and either World Savings, Inc. ("WSI," a sister entity of World that does not

26 make loans, control World or interact with borrowers) or Wachovia Mortgage Corporation ("WMC," another, even more distant, affiliate of World – which does not interact with World and does not in any event make Option ARM loans).

27 [7] It is undisputed that World is a federally chartered savings bank.  <u>See</u> attached Request for Judicial Notice ¶1.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  World's allegedly deceptive disclosures and advertisements, HOLA preempts those claims as

2  Plaintiffs seek to apply them.[8]

3        Because Plaintiffs have not stated a claim for relief under federal or state law, this

4  action should be dismissed.  Further, given that this is Plaintiffs' second effort to amend, and follows

5  a voluntary amendment in the face of Defendants' original Motion to Dismiss, dismissal should be

6  granted without leave to amend.

7  **II.    PLAINTIFFS' FACTUAL ALLEGATIONS**

8        The CSAC, while long on citations, quoted statutes, legal argument and general

9  assertions and characterizations, is short on specific factual allegations regarding each Plaintiff:

10        **Mandrigues** alleges that she refinanced her Milpitas, California primary residence on

11  August 4, 2006 via an Option ARM agreement. CSAC, ¶ 2.  The Note that Mandrigues executed and

12  the final TILDS for her loan, are attached together to the CSAC as Exhibit 1.

13        **Jones** alleges that she refinanced her Los Angeles, California primary residence on

14  January 9, 2007 via an Option ARM agreement.  CSAC, ¶ 3.  The Note that Jones executed and the

15  final TILDS for her loan, are attached together to the CSAC as Exhibit 2.

16        **The Minyens** allege that they refinanced their San Pablo, California primary

17  residence on May 25, 2005 via an Option ARM agreement.  CSAC, ¶ 4.  The Note that the Minyens

18  executed, their Pick-A-Payment Loan Program Disclosure (a disclosure in fact given to all Plaintiffs,

19  but attached to the Complaint only with respect to the Minyens) and the final TILDS for their loan,

20  are attached collectively to the CSAC as Exhibit 3.

21        Finally, **the Clausons** allege that they refinanced their Santee, California primary

22  residence on June 24, 2005 via an Option ARM agreement.  CSAC, ¶5.  The Note that the Clausons

23  executed, and the final TILDS for their loan, are attached collectively to the CSAC as Exhibit 4.[9]

24  ---

[8] Plaintiffs' state law claims for breach of contract, breach of the implied covenant of good faith and fraudulent

25  concealment also fail because Plaintiff does not and cannot plead facts sufficient to state a claim for relief.

26  [9] Each Plaintiff also tries to allege that they "entered into [their] loan agreement with Defendants." CSAC, ¶¶2-5.  This

27  general (and unsupported) assertion, however, is belied by the specific provisions in each of the Notes (and TILDSs) at issue, which make abundantly clear that Plaintiffs' loans came from, and were agreements with, World and World alone. None of them mention or reference WSI or WMC at all.  Plaintiffs do claim that WSI and WMC are Option ARM

28  lenders [CSAC ¶¶7 and 9], but Plaintiffs' loans of course did not come from WSI or WMC.  CSAC, Exs. 1-4.  Indeed,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

### III.    LEGAL ARGUMENT

**A.    Applicable Legal Standards For A Motion to Dismiss / Motion to Strike**

Dismissal under Rule 12(b)(6) is proper when a complaint either exhibits a "lack of a cognizable legal theory or the absence of sufficient facts under a cognizable legal theory." Balisteri v. Pacifica Police Dept., 901 F. 2d 696, 699 (9th Cir. 1988); see also, Silvas v. E*Trade Mortgage Corporation, 421 F. Supp. 2d 1315, 1317 (S.D. Cal. 2006). For the purposes of ruling on a motion to dismiss, material facts alleged in a complaint are of course treated as true, [id.], but where a complaint contains inconsistent allegations, the Court need not accept those allegations. Wuxi Multimedia, Ltd. v. Koninklijke Phillips Elecs., N.V., 2006 U.S. Dist. Lexis 9160, 26-27 (D. Cal. 2006). Further, a court "need not ignore specific factual details of the pleading in favor of general or conclusory allegations." Griffin Indus. v. Irvin, 2007 U.S. App. LEXIS 19828 (11th Cir. August 21, 2007), see also Thompson v. Illinois Dept. of Prof. Reg., 300 F.3d 750, 754 (7th Cir. 2002) ("When a written instrument contradicts allegations in a complaint to which it is attached, *the exhibit trumps the allegations*.") (emphasis in original). Similarly, the Court may consider the entire content of a document only quoted in part. See In re Stac Electronics Securities Litig., 89 F.3d 1399, 1405, fn. 4 (9th Cir. 1996).

Separately, a motion to strike pursuant to Rule 12 is proper where a matter plead in a complaint is "redundant, immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). Among other things, this means that the Court may strike requests for remedies which are unavailable as a matter of law. See Darby v. City of Torrance, 810, F.Supp. 271, 272-273 (C.D. Cal. 1992), *rev'd on other grounds*.10

The standard for determining whether a disclosure is sufficient for purposes of TILA is an objective one. Smith v. Check-N-Go of Ill., Inc., 200 F.3d 511 (7th Cir. 1999). The adequacy of a defendant's TILA disclosures may thus be tested by a Rule 12 motion to dismiss. See Tucker v.

---

Plaintiffs do offer not one single specific <u>factual allegation</u> as to either WSI or WMC that could suggest or imply that there is any basis for hauling either of them into Court to address Plaintiffs' allegations about their loans with World.

10 This rule is significant relative to the scattergun requests for relief in Plaintiffs' Corrected Second Complaint.

1  New Rogers Pontiac, Inc., 2003 WL 22078297, *2 (N.D.Ill., 2003), citing Lifanda v. Elmhurst

2  Dodge, Inc., 237 F.3d 803, 805 (7th Cir. 2001).

3         Further, the Supreme Court has recognized that:

4         [T]he concept of 'meaningful disclosure' that animates TILA … cannot be applied in
          the abstract.  Meaningful disclosure does not mean *more* disclosure.  Rather, it

5         describes a balance between competing considerations of complete disclosure and the
          need to avoid informational overload.  [Ford Motor Credit Co. v. Milhollin, 444 U.S.

6         555, 568 (1980) (citations, quotations omitted)]

7         In determining whether  a particular disclosure satisfied TILA courts examine the

8  disclosures from the viewpoint of an objective reasonable person.  Vermurlen v. Ameriquest Mortg.

9  Co., 2007 U.S. Dist. LEXIS 75070, *7 (D. Mich. 2007), citing, Dixey v. Idaho First Nat'l Bank, 677

10  F.2d 749 (9th Cir. 1982); Smith, 200 F.3d at 514-15.[11]

11  **B.    Plaintiffs' First Claim For Relief, For Alleged Violation of TILA, Misinterprets the**
        **Requirements of TILA, Reg. Z and the Commentary Concerning Disclosure of**
12      **Payment Schedules and Loan Terms**

13        All of Plaintiffs' theories of liability in their First Claim for Relief, alleging that

14  World violated TILA with respect to each of the Plaintiffs, flow from their arguments that TILA,

15  Reg Z and the Commentary are violated when a mortgage lender makes an "Option ARM" loan that

16  offers a borrower the ability to make a periodic payment that is insufficient to cover all accruing

17  interest and the lender: (1) provides the borrower a TILDS at closing that does not set forth a

18  schedule showing the regular payment levels that would be necessary to fully amortize the loan each

19  month at the contractual interest rate; and/or (2) tells the borrower that negative amortization "may"

20  at times occur on their loan when the initial minimum monthly payment level selected by the

21  borrower means that negative amortization will occur.[12]  Both of these suppositions are wrong and,

23  [11] "Most courts have concluded that the TILA's clear and conspicuous standard is less demanding than a requirement of
       perfect notice."  Santos-Rodriguez v. Doral Mortg. Corp., 485 F. 3d 12, 16-17 (1st Cir. (Puerto Rico), 2007), citing
24     Veale v. Citibank, 85 F. 3d 577, 581 (11th Cir.1996).  Indeed, recent amendments to the TILA were intended by
       Congress to "provide higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure
25     obligations."  Id.

26  [12] As will be shown, Plaintiffs find apparently find it irrelevant that the lender *does* provide a payment schedule in the
       TILDS that accurately describes the schedule of payments that the borrower is contractually obligated to make to pay off
27     the loan over its lifetime when applying the interest rate set forth in the Note and all remaining terms of the Note – which
       is of course all that TILA requires, and which is what occurred here with respect to all of the Plaintiffs.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

in fact, contrary to TILA, Reg. Z and the Commentary.  No court has ever held that Plaintiffs'
theories give rise to a viable claim for relief.  Indeed, a court faced with a schedule of the type
apparently demanded by Plaintiffs would likely be compelled to find that such a schedule *violates*
TILA.

> **1.    TILA And Reg. Z Require That Lenders Give Borrowers A Loan Payment Schedule Based On Their Actual Contractual Obligations At The Time They Execute Their Note, And Plaintiffs' TILDSs All Complied With That Rule**

First, Plaintiffs allege that World violated TILA because (1) their TILDSs do not
identify monthly payment levels that would avoid negative amortization for the first 10 years of the
Plaintiffs' loans [CSAC at 8:22-25, ¶33], and (2) "payment amounts [in World's payment schedule]
are not based on the interest rate listed…"  CSAC ¶69.[13]  These allegations do not state a claim for
relief under TILA.

> **a.    World's Payment Schedules Were Accurate**

As a preliminary matter, it is important to understand why Plaintiffs do not and
cannot allege the payment schedules in World's TILDs were inaccurate on their face.  The purpose
of a TILDS is to describe to the borrower their actual contractual obligations at the time of
contracting.  The fatal flaw in Plaintiffs' complaints about their TILDSs is that World's disclosures
did precisely that.

Reg Z, at 12 C.F.R. Section 226.18, lists the specific disclosure items that must be
included in a "final" TILDS delivered at the closing of a loan, such as those attached to the CSAC by
each of the Plaintiffs here.[14]  Those disclosures must be "grouped together, shall be segregated from
everything else, and shall not contain any information not directly related to the disclosures required
under section 226.18."  12 C.F.R. 226.17(a)(1).  According to section 226.18, a lender must disclose

---

[13] Plaintiffs also make the novel, but ultimately empty, argument that World violated TILA by adhering to the 7.5%
Payment Change Caps in the Note when calculating the Plaintiffs' payment schedules in their TILDSs because, plaintiffs
assert, the "effect" of a payment cap must be disclosed in a TILDS and, in their view, the "effect" of the cap is to prevent
payments from rising sufficiently to prevent the elimination of negative amortization. CSAC, ¶¶89-98.  But the "effect"
of the payment cap, of course, is on the dollar amount of the payment adjustment and in each of Plaintiffs' TILDS their
first 10 annual Payment Changes are limited to the 7.5% mandated by the Payment Change Cap.  The "effect" of the
Payment Change Cap is thus self-evident in the payment schedules.

[14] CSAC, Ex. 1 at 00007 (Mandrigues), Ex. 2 at 00011 (Jones), Ex. 3 at 0008 (Minyen) and Ex. 4 at 00007 (Clauson).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

the identity of the creditor, amount financed, and annual percentage rate.  12 C.F.R. §226.18(a), (b),

(e).  Further, a lender must disclose a "payment schedule" describing the "number, amounts, and

timing of payments *scheduled* to repay the obligation."  12 C.F.R. 226.18(g) (emph. added).  When

(as was the case with all of Plaintiffs' loans) the initial rate on a loan is not discounted, but is based

on the contract index plus margin, the Commentary explains that the creditor is to base various

numerical disclosures in the TILDS <u>only</u> on the loan contract terms as they exist at the time the Note

is executed.  <u>See</u> Comment 226.17(a)(1)-8.  Among the disclosures that must be based only on the

initial contract rate of interest (sometimes called the "note rate") are the Annual Percentage Rate

("APR") on the loan[15] and the schedule of payments necessary over the term of the loan to pay off

its principal balance and all interest that will accrue over the full life of the loan.  <u>Id.</u>  Thus, for

example, the lender must use the initial rate of interest stated in the note and may not assume that the

rate will increase – even if it is certain to increase in the near term. <u>See id.</u>

        The loan payment schedule in a TILDS must also reflect any other pertinent contract

obligations affecting the payments required on the loan, such as any limits (caps) on payment

changes.  <u>Id.</u>  In other words, TILA precludes a lender from using a schedule on a final TILDS that

reflects any payment schedule other than that dictated by the terms of the Note at the time it is

executed, and those include not just the rate of interest stated in the Note, but also (in the case of

Plaintiffs' loans) the borrower's payment level selection as provided in the Note as well as all

"Payment Change" provisions, such as timing and caps.  In the end, the payment schedule in the

TILDS must accurately disclose to the borrower *an entire payment schedule* that shows the

borrower a projection of the payments that *the borrower will have to make over the life of the loan*

to pay off the principal balance and that total interest expected to ultimately accrue over time on the

---

[15] An APR in a TILDS will almost always be slightly higher than the contract rate of interest called for in a promissory note because the APR takes into account certain fees paid by the borrower. *See* CASC, Ex. 1 at 00001 (Note, ¶2(A)- interest rate is 6.790%) and 00007 (TILDS - APR is 6.853%); Ex. 2 at 00001 (Note, ¶2(A) - interest rate is 7.681%) and 00011 (TILDS - APR is 7.877%); Ex. 3 at 00001 (Note, ¶2(A) - interest rate is 5.190%), 00008 (TILDS - APR is 5.331%) and 00010 (Loan Program disclosure initial interest rate is "based on the index plus the margin"); and Ex. 4 at 00001 (Note, ¶2(A) - interest rate is 5.320%) and 00007 (TILDS - APR is 5.469%). It is the contract interest rate in the Note, however, which is used to determine the interest that will accrue on the principal balance of the loan (assuming that, in the case of an adjustable rate mortgage, the initial rate does not change.  In most ARMs, of course, the rate will fluctuate up and/or down over the life of the loan, based on the movement of the index identified in the promissory note.)

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No. C07 04497                                                                                    DOCSSFO-12504139.4

Memorandum Of Points And Authorities In Support Of Motion To Dismiss Corrected Second Amended Complaint

1    full loan balance – without assuming anything changes in the future, such as an interest rate

2    adjustment, a prepayment of principal, etc. See, e.g., Johnson v. Banc One Acceptance Corp., 278 F.

3    Supp. 2d 450, 456 (E.D. Pa. 2003) (granting defendants' motion to dismiss TILA claim because its

4    payment schedule consisting of 79 low payments and 1 large payment satisfied TILA requirements

5    since the payment schedule accurately reflected plaintiffs' obligation to payoff their loan).

6        World's TILDSs for Plaintiffs do exactly that. For example, over the full term of

7    Mandrigues' loan, her schedule of actual payments, taken together, fully amortize her loan at the

8    stated initial interest rate. In other words, they add up to the "Total of Payments" stated on the

9    TILDS, which in turn equals the sum of the "Amount Financed" and the "FINANCE CHARGE"

10   stated on the TILDS.[16]

11       **b.    Accurate Payment Schedules Do Not Violate TILA Simply Because
         Some Scheduled Payments Fail To Pay All Accrued Interest**

13       When Plaintiffs argue that the initial payment that each Plaintiff selected is not "based

14   on the interest rate listed" in the TILDS, they misunderstand the terms of the Note as well as the

15   purpose of a TILDS and the requirements of TILA. The Note specifically permitted Plaintiffs to

16   pick a payment level that World was willing to accept and that was not derived from the contract rate

17   of interest (which does not govern individual payments, but rather sets the rate at which interest will

18   accrue on the entire outstanding loan balance). The Note in fact specifically tells Plaintiffs that the

19   initial payment that they might pick may not be sufficient to pay all interest as it accrues. The Note

20   also tells Plaintiffs that their payments will change (increase) over time if unpaid interest does accrue

21   and that, if necessary, no later than on the Note's 10th anniversary their payments will be

22   recalculated and set at an amount estimated at that time as necessary to pay off the principal balance

23   of the Note and all accrued interest by the end of the loan's term. None of this mandates that the

---

[16] See Mandrigues' TILDS attached to the CSAC. Due to Mandrigues' selection – set forth in her Note - of a bare minimum payment level of $626.36 that World was willing to accept [CSAC, Ex. 1 at 00002 ¶3(B)], and the timing of and contractual caps on her Payment Changes [CSAC, Ex. 1 at 0002, ¶2(C), (D) and (G) (payment changes annually on September 15th, but cannot increase more than 7.5% at each change except on the 10th Payment Change Date and every 5th Change Date thereafter)], Mandrigues' loan payments – using her Note's contract rate of interest and assuming (as TILA requires) no future changes in her Note's Index rate – show as increasing 7.5% annually and then stepping up on the loan's 10th Payment Change Date to an amount sufficient to fully amortize the loan.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Memorandum Of Points And Authorities In Support Of Motion To Dismiss Corrected Second Amended Complaint

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   initial payment selected by a borrower be "based on" the Note's interest rate.  In fact, it contemplates

2   (indeed specifically advises) that the initial payment a borrower selects is likely (although it

3   ultimately is up to the borrower) to *not* be sufficient to keep negative amortization from accruing.

4          The TILDS, of course, takes all of this into account and merely maps out for the

5   borrower what they will have to pay to comply with the terms of the Note.  Nothing obligates World

6   to require, or the TILDS to contain, an initial monthly payment level derived directly from the

7   Note's interest rate.[17]

8          An alternative theory that Plaintiffs appear to be suggesting is that the only payment

9   amount that can be set forth in a TILDS is one that is sufficient to pay all accrued amortized interest

10  on the loan in a given month (or, perhaps, one sufficient to make a full monthly payment of all

11  accrued amortized principal and interest).  But again, nothing in TILA institutes such a requirement.

12  Indeed, to interpret TILA as commanding such a result, keeping in mind that TILA requires

13  disclosure of *only* actual payment obligations, would be to say that TILA's disclosure rules forbid

14  loans that can negatively amortize.  That is not the law.

15         Second, TILA's requirements relate to "<u>payment schedules</u>," not individual payments.

16  So long as the payment schedule as a whole accurately shows the borrower how much they will have

17  to pay and when in order to retire the loan over its term at the contract rate of interest and according

18  to their obligations under their Note, it will comply with TILA.  <u>See, e.g.</u>, <u>Johnson</u>, 278 F. Supp. 2d

19  456.  The schedules that are in each Plaintiffs' TILDSs here display these exact (total) payment

20  requirements, per the terms of the Notes, and were completely accurate.  Plaintiffs simply complain

21  that the schedules do not show the monthly amounts that Plaintiffs would have had to pay from the

22  outset of their loans in order to retire the Notes without ever incurring negative amortization.  But

23  ───────────────

[17] Ironically, in Plaintiff Mandrigues' original and First Amended Complaints, she alleged that the initial payment that
24  she selected as set forth in her Note *was* based on the rate called for in the Note and TILDS, claiming that this was a
    violation of TILA because the Note rate – she alleged – was a "low teaser rate" that changed almost immediately after
25  the Note was signed.  World pointed out in its initial Rule 12(b)(6) motion addressing the First Amended Complaint that
    this was simply not true and that World never used a "teaser rate" in the Note or TILDS.  On amending (rather than
26  opposing the motion), Plaintiffs simply reversed course to make their current opposite argument - that TILA has been
    violated because the initial payment was not based on the rate set out in the Note.  Plaintiffs thus started this case by
27  trying to fit a square peg in a round hole.  Now they have tossed the square peg and found a triangular one.  But no
    matter how hard they pound, their peg still won't fit.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   that schedule is not what Plaintiffs bargained for or were obligated to follow.  Presenting such a

2   payment schedule in their final TILDSs, whether as supplements to the schedules they were given or

3   as substitutes, would certainly have been confusing to the borrowers.  Worse, placing such a

4   payment schedule in the TILDSs would without question have violated TILA and Reg. Z because

5   such a schedule would not have been based on the actual terms of Plaintiffs' Notes.

6   **2.    TILA Obligates Lenders To Disclose The *Possibility And Consequences* Of Negative Amortization, But Does Not Obligate Them To Advise Borrowers Of The Precise Likelihood That – Much Less When - Their Loan Will Experience Negative Amortization**

9   Plaintiffs next allege that "Defendants failed to include any reference on the TILDS

10  or the Note that there was negative amortization."  CSAC, at ¶ 82.  Plaintiffs concede in the next

11  paragraph of the CSAC that the Note outlines the possibility of negative amortization, but then argue

12  the disclosures were misleading because negative amortization was a certainty, rather than a mere

13  possibility.  Id. at ¶ 83.  Because TILA only requires that lenders advise borrowers of the rules and

14  effect of negative amortization, not the likelihood that it will occur, Plaintiffs again fail to state a

15  claim for relief under TILA.

16  Plaintiffs concede that the Notes and TILDSs they received from World disclose that

17  negative amortization is a possibility under the Pick-A-Pay loan agreement, depending on the

18  payment level that a borrower selects, and that if it occurs their principal balances on their loans will

19  increase *and* the increased principal will accrue interest at the contract rate.  See CSAC, ¶94; see

20  also Plaintiffs' Notes, ¶¶2(B) and 2(E).  Indeed, Plaintiffs' Notes and their Loan Program

21  Disclosures[18] are replete with such advisories.  This is fatal to their complaint under TILA.

22  12 C.F.R. 226.18(f)(2)(i)-(ii) requires a lender to disclose in a final TILDS only: (1)

23  the fact that the transaction contains a variable-rate feature, and (2) that variable-rate disclosures

24  (*i.e.*, World's Loan Program Disclosure, such as the one signed by the Minyens) have been provided

25  earlier.  No other disclosures relating to the adjustable rate or potential for negative amortization is

26

27  _____
    [18]  The Minyens' Pick-A-Pay Loan Program Disclosure from World is attached to the CSAC as part of Exhibit 3 (at 00010-00012).

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  required, whether under section 226.17 or 226.18.  The Commentary to 226.18 provides that "a brief

2  reference to negative amortization" *may* be included in a final TILDS along with the other

3  disclosures required by section 226.18, but such a reference is not required.  See Comment

4  226.17(a)(1)-5viii.  The Commentary goes on to provide an example of an acceptable disclosure

5  regarding negative amortization should a lender choose to include such a statement- "For example,

6  in the variable-rate disclosure, the creditor *may* include a short statement such as "Unpaid interest

7  will be added to principal."  Id. (emph. added).  This example demonstrates two things: (1)

8  disclosures regarding negative amortization are never required to be included in the final TILDS

9  and, (2) if a lender chooses to make a disclosure, the lender need not disclose that negative

10  amortization is a certainty; it is entirely sufficient to say that negative amortization is possible.

11      Regulation Z section 226.19(b)(2) lists specific disclosure items that must be included

12  by a lender in their Loan Program Disclosure. One of those items is as follows: "Any rules relating

13  to changes in the index, interest rate, payment amount, and outstanding loan balance including, for

14  example, an explanation of interest-rate or payment limitations, negative amortization, and interest-

15  rate carryover."  12 C.F.R. 226.19(b)(2)(vii).  With regard to the disclosure of negative amortization

16  under this provision, the Commentary states as follows:

17      A creditor must disclose, where applicable, ***the possibility of*** negative amortization.
       For example, the disclosure might state, "If any of your payments is not sufficient to
18      cover the interest due, the difference will be added to your loan amount."…If a
       consumer is given the option to cap monthly payments that may result in negative
19      amortization, the creditor ***must fully disclose the rules relating to the option***,
       including the effects of exercising the option (such as negative amortization will
20      occur and the principal balance will increase)…"  Comment 226.19(b)(2)(vii)-2
       (emph added).
21

22      This language shows that required disclosures regarding negative amortization are

23  disclosures regarding the *effect* of negative amortization, and not a disclosure as to whether negative

24  amortization will occur.  Plaintiffs' CSAC, however, sets out the argument that World was obligated

25  under TILA to disclose to Plaintiffs, in either their Notes or their final TILDS, and *after* they

26  selected their initial payment levels, that negative amortization was certain to occur in the early years

27  of their loans – *if* they kept making only the minimum payment.  As shown, this argument fails.  All

28  that is required is an advisory regarding the circumstances under which negative amortization may

- 11 -

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   occur and its effect – and World provided that advisory, both in Plaintiffs' Notes and in their ARM

2   Loan Program Disclosures.

3            Indeed, the Court in <u>Andrews v. Chevy Chase Bank, FSB</u>, 240 F.R.D. 612 (D. Wisc.

4   2007), applied the above Comment in finding the following statement contained in defendant's

5   supplemental adjustable rate mortgage disclosure (not its TILDS) satisfied TILA requirements

6   because it informed "borrowers as to what would occur if they made only the minimum monthly

7   payments:"

8        Interest Rate changes and your ability to make less than a Fully Amortizing Payment
         each month, or a combination of the two, may result in the accumulation of accrued
9        but unpaid interest ('Deferred Interest Balance').

10       Each month that the payment option you choose is less than the entire interest
         portion, we will add the Deferred Interest Balance to your unpaid principal. We will
11       also add interest on the Deferred Interest Balance to your unpaid principal each
         month. The interest rate on the Deferred Interest Balance will be the Fully Indexed
12       Rate.

13       <u>Andrews</u>, 240 F.R.D. at 620.

14           World provided Plaintiffs similar, <u>but stronger</u>, language in its Note and in the Loan

15   Program Disclosures that it provided to each of Plaintiffs.[19]   Plaintiffs acknowledge in the Note,

16   "My initial monthly payment amount was selected by me from a range of initial payment amounts

17   approved by Lender and *may not be sufficient to pay the entire amount of the Interest accruing on*

18   *the unpaid Principal balance*." Note ¶3(B) (emphasis added). Next, under the bolded heading,

19   "**Deferred Interest; Additions to My Unpaid Principal**," the Note states, "From time to time, my

20   monthly payments *may be insufficient to pay the total amount of monthly Interest that is due. If this*

21   *occurs, the amount of interest that is not paid each month, called "Deferred Interest," **will** be added*

22   *to my Principal and will accrue interest* at the same rate as the Principal." Note ¶3(E) (emphasis

23   added).  This language is nearly identical to that approved in the Commentary to 226.19 and

24   _____

25   [19] Each of Plaintiffs' TILDSs incorporates by reference the Loan Program Disclosure, although only the Program
     Disclosure executed by the Minyens is attached to the CSAC.  <u>See</u> CSAC, Exh. 3 at 00010-00012.  As outlined above,
26   however, for the purposes of a 12(b) or 12(c) motion, the Court may consider documents referenced in, but not attached
     to the complaint.  <u>See In re Stac Electronics Securities Litig.</u>, 89 F.3d 1405, fn. 4; <u>Branch v. Tunnell</u>, 14 F.3d  453-54.
27   Further, it is proper for the Court to consider the Program Disclosures for all Plaintiffs because, in determining whether a
     disclosure is clear as required by TILA, courts may examine all of the information in defendant's disclosures.  <u>Andrews</u>,
28   240 F.R.D. 616.

- 12 -

1   Andrews, 240 F.R.D. at 620.  Thus, Plaintiff's allegation that World failed to provide meaningful

2   disclosure regarding negative amortization fails.

3           The Program Disclosures further outline each loan's potential for negative

4   amortization, under the bolded heading, "**HOW DOES THE PRINCIPAL BALANCE**

5   **CHANGE?**"  See CSAC, Ex. 3 at 00011.  It states, "At various times during the life of your loan the

6   monthly payment may not be sufficient to pay the full amount of interest due.  This can occur if the

7   initial payment amount that you select is less than the full amount of interest due."  Id.  This

8   language, again tracking that approved by the Court in Andrews and by the OTS in the Commentary

9   to 226.19, underscores World's indisputable compliance with disclosure requirements regarding

10  negative amortization.  In at least two different documents, World explicitly informs borrowers of

11  the consequences of making a payment insufficient to cover principal and interest- "negative

12  amortization will occur."  This is what TILA requires.  Therefore, World satisfied the TILA and

13  Plaintiffs' TILA claim fails as a matter of law.

14          **3.     World Clearly and Conspicuously Disclosed The Cost Of Credit**

15          Plaintiffs next contend that World violated TILA by failing to clearly and

16  conspicuously disclosing the "interest rate" upon which its payment schedule was based.  CSAC

17  ¶88.[20]

18          World's cost of credit disclosures, on their face, satisfy TILA requirements.  In its

19  TILDS for each Plaintiff, World placed the annual percentage rate for each loan in a separate box at

20  the top of the TILDS under the bolded heading, "**ANNUAL PERCENTAGE RATE**."  Courts and

21  the commentary to Regulation Z uniformly hold that such a means of disclosure satisfies TILA

22  requirements.  See Commentary to Regulation Z §17(a) (specifically stating that placing the annual

23  percentage rate at the top of the in a box with a bold heading satisfies TILA's clear and conspicuous

24

25

26  [20] In their CSAC, Plaintiffs consistently attack World's "interest rate" disclosure.  CASAC ¶68, 86-88.  Plaintiffs again
    misunderstand TILA's requirements.  TILA requires that lenders disclose the cost of credit as a yearly rate expressed as
27  an "annual percentage rate," not "interest rate."  See 12 C.F.R. 226.18(e)&(f).  Presumably Plaintiffs intend to challenge
    World's APR disclosure.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    requirement); see also Fallat v. Central Bank, 1988 U.S. Dist. LEXIS 13041 (N.D. Cal. 1988) at *24

2    (same).

3            Plaintiffs try to salvage their inherently deficient TILA claim by contending that

4    World's indisputably accurate APR disclosure is somehow rendered "unclear and inconspicuous"

5    when read in connection with its payment schedule disclosure.  CSAC ¶ 88.  This is akin to yet

6    another complete reversal of position, however, because it is as though Plaintiffs are saying: "If you

7    don't buy my theory that World is liable under TILA because each individual payment on the

8    schedule isn't a direct function of the interest rate, how about if we just argue that World is liable

9    because the interest rate doesn't match each of the individual payments on the schedule?"  The point

10   is as absurd as it sounds.

11           As shown above, Plaintiffs simply cannot allege successfully that World's disclosure

12   schedule violates any of the TILA regulations that governing such payment schedules.  See 12

13   C.F.R. 226.18(g).

14      **4.    Mandrigues', the Minyens' and Clausons' Causes Of Action Seeking Actual And
                Statutory Damages Under TILA Are Time-Barred**

15

16           Under TILA, any claim for actual or statutory damages must be brought within a year

17   of the closing of the loan or the date the allegedly defective disclosures were provided, whichever is

18   later.  15 U.S.C. 1640(e).  Further, defective disclosures regarding negative amortization do not

19   extend the period in which a borrower may rescind.  See Pulphus v. Sullivan, 2003 U.S. Dist. LEXIS

20   7080 (D. Ill. 2003) at *42-44.  Here, the Minyens' loan closed on or about May 25, 2005.  CSAC ¶ 4.

21   Ms. Mandrigues' loan closed on or about August 4, 2006.  CSAC ¶ 2.  The Clausons closed on or

22   about June 24, 2005.  CSAC ¶ 5.  Plaintiffs received relevant disclosures on or before the closing.

23   See Exhibits 1, 3 and 4 to CSAC.  Plaintiffs did not file the instant action until August 30, 2007.

24   Thus, the statute of limitations has plainly run on any claim the Minyens, Clausons or Mandrigues

25   wish to assert for actual and statutory damages under TILA, including any claim that World's

26   disclosures regarding negative amortization were inadequate.[21]

27

28   [21] For example, these Plaintiffs have no viable claim under 12 C.F.R. 226.19 because the statute of limitations has run

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

**C.    Plaintiffs' Second, Third, Fourth and Fifth Claims for Relief Fail Because HOLA Preempts State Law Claims When A State Law Is Used To Regulate The Lending Activities Of A Federally Chartered Savings Bank**

2

3    The paramount purpose of HOLA is to ensure the solvency of federal associations

4    through a uniform scheme of regulation so that the public has access to means of home financing.

5    See 12 C.F.R. §560.2; see also, Fidelity Federal Sav. & Loan Assn. v. De La Cuesta, 458 U.S. 141

6    (1982), 159-160.  In furtherance of its stated goal of ensuring uniformity, Section 560.2 states that

7    "OTS hereby occupies the entire field of lending regulation for federal savings associations."  The

8    regulation goes on to state that OTS intends to give associations "maximum flexibility to exercise

9    their lending powers in accordance with a uniform federal scheme of regulation" and that, except as

10    provided in paragraph (c), federal savings associations may extend credit as authorized by federal

11    law "without regard to state laws purporting to regulate or otherwise affect their credit activities."

12    Id.  "Thus, the federal regulation is intended to preempt all state laws purporting to regulate any

13    aspect of the lending operations of a federally chartered savings association, whether or not OTS has

14    adopted a regulation governing the precise subject of the state provision."  Lopez v. World Savings

15    and Loan Association, 105 Cal. App. 4th 729, 738 (2003).

16    HOLA provides a non-exhaustive list of the types of state laws that it intends to

17    preempt.  The list specifically includes all state laws relating to "**[d]isclosures** and **advertising**,

18    including laws requiring specific statements, information, or other content to be included in credit

19    application forms, credit solicitations, billing statements, credit contracts, or other credit-related

20    documents and laws requiring creditors to supply copies of credit reports to borrowers or

21    applicants…" 12 C.F.R. §560.2(b)(9) (emphasis added); see also Rosenberg v. Washington Mutual

22    Bank, F.A., 849 A.2d 566, 572 (N.J. Super. 2004).

23    Even broad state statutes face preemption when they are alleged to apply to the

24    lending activities of a federally chartered financial institution operating under HOLA.  In Silvas v.

25    E*Trade Mortgage, 421 F. Supp. 2d at 1317, putative class action plaintiffs obtained loans from the

26

27    on their actual damages claims, and a defective disclosure regarding negative amortization does not extend the right to rescind.  See n.12 infra.

28

1   defendant bank, but elected to rescind the mortgage transaction within the three days allotted for

2   cancellation by TILA.[22]  The bank did not refund fees that the plaintiffs had paid to "lock-in" their

3   interest rate.  Id.  The plaintiffs sued under the UCL and California Business and Professions Code

4   Section 17500, alleging that the bank's advertisements and disclosures failed to clearly,

5   conspicuously and accurately disclose that lock-in fees were non-refundable.  Id.  In granting the

6   bank's demurrer, the court stated "Plaintiff's UCL claims therefore attack Defendants' lending

7   practices in two categories where OTS has explicitly indicated federal law occupies the field: (1)

8   disclosure and advertising and (2) loan related fees."  Id. at 1319.  The court held that any an attempt

9   to use a state statute to supplement a federal law that explicitly occupies an entire field is

10  impermissible.  Id.

11          Similarly, the Seventh Circuit recently confirmed that HOLA preempts common law

12  causes of action to the extent those causes of action attempt to regulate disclosures of federally

13  chartered banks.  Ocwen Loan Servicing, 491 F.3d 638, 649 (7th Cir. 2007).  Noting the importance

14  of construing 12 C.F.R. 560.2(c) narrowly, the Court in Ocwen provided the following guidance to

15  those analyzing preemption:

16          "The list in subsection (c) is long and the categories it covers – contract and
            commercial law, tort law, and so forth – are very broad.  It would not do to let the
17          broad standards characteristics of such fields morph into a scheme of state regulation
            of federal S&Ls.  Hence the statement in subsection (c) that state laws escape
18          preemption only 'to the extent that they only incidentally affect the lending operations
            of Federal savings associations or are otherwise consistent with the purposes of
19          paragraph (a) of this section.'"

20          Id. at 643.

21  In remanding, the Seventh Circuit explicitly recognized that plaintiffs' UCL claim was likely

22  preempted because the activity Plaintiff sought to regulate could interfere with federal regulation of

23  "disclosure, fees, and credit terms."  Id. at 646.

24          Relying on Ocwen, another federal district court, in Prince-Servance v. BankUnited,

25  FSB, 2007 U.S. Dist. LEXIS 81774 (N.D. Ill. November 1, 2007), again confirmed this point.

26

27  _____
    22 For other cases exemplifying HOLA's vast preemptive effect see Am. Bankers Ass'n v. Lockyer, 239 F. Supp 2d
    1000 (E.D. Cal. 2003) and Lopez v. World Savings and Loan Association, 105 Cal. App. at 738.

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    There, the plaintiff sued her broker and lender for, among other things, breach of fiduciary duty and

2    violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA").  Id. at *7.  In

3    response to defendant bank's motion to dismiss, plaintiff claimed that HOLA did not preempt laws

4    of general applicability.  Id. at *12.  In rejecting this argument as a misstatement of the law, the court

5    stated, "It is clear from the language of the regulation and subsequent case law that *to the extent* a

6    generally applicable law interferes with a federal savings association's lending activity it is

7    preempted."  Id. (emphasis added.)  Further, the court confirmed that if a state law regulates any of

8    the activity outlined in 560.2(b), "it is preempted and no further analysis is needed."  Id. at *11.  In

9    cases where further examination is required, the court emphasized that, when examining a state law

10   to see if it fits into 12 CFR 560.2(c)'s narrow exceptions, "any doubt should be resolved in favor of

11   preemption."  Id. at *12.  Moreover, after noting that loan-related disclosures are exclusively within

12   the purview of TILA, the court held that HOLA preempted plaintiff's claims for breach of fiduciary

13   duty and violation of the state's consumer protection statute.  Id. at *14.

14        **1.    HOLA Preempts Plaintiffs' Claim Alleging Fraudulent Omissions in World's**
                 **Loan Agreements And Disclosures**
15

16        In a thinly veiled effort to employ a common law cause of action to side-step TILA's

17   one year statute of limitations and impermissibly supplement TILA's exclusive remedies for failing

18   to provide adequate disclosures, Plaintiffs attempt to state a cause of action for fraudulent

19   concealment.  Plaintiffs cannot avoid HOLA preemption by generalizing the foundation for their

20   claims.  HOLA expressly preempts any state laws purporting to regulate the advertising of, or

21   disclosures provided in connection with, home loans issued by federally chartered banks.  Lopez v.

22   World Savings and Loan Association, 105 Cal. App. 4th 729, 738 (2003); Silvas v. E*Trade

23   Mortgage, 421 F. Supp. 2d at 1319; Ocwen Loan Servicing, 491 F.3d at 649; Prince, 2007 U.S. Dist.

24   LEXIS 81774 at *11-12, citing 61 Fed. Reg. 50951, 50965-67 (1996).

25        Plaintiffs' allegations here are ***identical*** to those they made in support of their TILA

26   cause of action.  See SAC ¶¶ 68, 85, 88, 91-97.  Moreover, Plaintiffs' allegations identify the precise

27   provisions of the TILA that exclusively govern World's alleged malfeasance:

28        As alleged herein, pursuant to TILA, **15 U.S.C. §1601,** *et seq.***, Regulation Z (12**

- 17 -

1

2

3

4

**C.F.R. §226) and the Federal Reserve Board's Official Staff Commentary**, Defendants had a duty to disclose to Plaintiff, and each Class member, (i) the actual interest rate on which the payment amounts listed in the TILDS are based (**12 C.F.R. § 226.17(c)**); (ii) that making the payments according to the payment schedule listed in the TILDS will result in negative amortization and that the principal balance will increase (**12 C.F.R. § 226.19**); and (iii) that the payment amounts listed on the TILDS are insufficient to pay both principle and interest. CSAC ¶ 91. (emph. added).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

As the above language illustrates, Plaintiffs' CSAC bases World's alleged duty to disclose is based entirely on the TILA. Given the foregoing, Plaintiffs' fraudulent omissions cause of action, on its face, challenges the adequacy of World's TILA disclosures. In turn, as numerous courts have recognized, no further analysis necessary - Plaintiffs' cause of action is preempted. See Lopez v. World Savings and Loan Association, 105 Cal. App. 4th 729, 738 (2003); Ocwen Loan Servicing, 491 F.3d at 649; Prince, 2007 U.S. Dist. LEXIS 81774 at *11-12, citing 61 Fed. Reg. 50951, 50965-67 (1996). Plaintiffs' attempt to couch its TILA claim as a common law cause of action cannot salvage their fraud claim; it is still preempted. Ocwen Loan Servicing, 491 F.3d at 649; Prince, 2007 U.S. Dist. LEXIS 81774 at *11-12, citing 61 Fed. Reg. 50951, 50965-67 (1996). In any event, as the Court in Silvas held, Plaintiffs' cause of action is preempted because it seeks to use a state law to regulate the lending activity of a federally chartered bank by supplementing the remedies available under TILA and avoiding TILA's one-year statute of limitations. Silvas v. E*Trade Mortgage, 421 F. Supp. 2d at 1319. Plaintiffs' effort to resurrect its time-barred TILA claims under the guise of a state common law cause of action should fail.

19

20

    **2.**    **Plaintiffs' Claim For Violation Of The California UCL Fails Because It Is Purports To Govern World's Lending Advertisements and Disclosures**

21

22

23

24

25

26

27

Plaintiffs restate the same allegations of incomplete disclosures outlined above in an attempt to state a UCL claim. CSAC ¶¶ 112-113. The only novel assertion in Plaintiffs' UCL cause of action is their contention that World's loans contained "an extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from these loans." Id. at 110. Because Plaintiffs' UCL claims are based entirely on World's allegedly deficient disclosures and imposition of a prepayment penalty, HOLA preempts Plaintiffs' UCL claims as they seek to apply them to World.

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    The preemption analysis under the UCL is essentially the same as outlined in the

2    above discussion regarding Plaintiffs' fraudulent omissions cause of action.  However, the case for

3    preemption regarding Plaintiffs' UCL claim for relief is even stronger because Plaintiffs seek

4    injunctive relief regulating the content of World's advertisements and disclosures.  Specifically,

5    Plaintiffs seek to apply the UCL to obtain an injunction dictating how World may or may not market

6    its loans and what information World must disclose to its borrowers.  Indeed, every allegation used

7    to support Plaintiff's Third Cause of Action involves World's advertising techniques or disclosures.

8    See CSAC ¶¶ 109-115.  Plaintiffs specifically point to the following alleged inadequacies in World's

9    disclosures, which are exclusively governed by TILA: a) World failed to adequately disclose

10   negative amortization [CSAC ¶¶ 109, governed by 12 C.F.R. 226.19], b) World's loans were

11   impermissibly designed to contain "onerous prepayment penalties" [CSAC ¶¶ 110 governed by 12

12   C.F.R. 226.18(k)], c) "Defendants failed to disclose…that the low payments listed in the Note and

13   TILDS were completely insufficient to pay both principal and interest…" [CSAC ¶ 112, governed

14   by 12 C.F.R. 226.18(g)], and d) World deceptively advertised its loans [CSAC ¶ 117, governed by

15   12 C.F.R. 226.24].

16   Applying Silvas and Ocwen to the current situation, it is apparent that HOLA

17   preempts the UCL as it would be applied here.  Once it is apparent that a state law regulates

18   mortgage disclosures of a federally chartered bank, no further inquiry is required; preemption is

19   appropriate.  See Silvas, 421 F. Supp. 2d at 1319; Ocwen, 491 F.3d at 646 see also, Lopez v. World

20   Savings and Loan Association, 105 Cal. App. 4th at 738.  Here, Plaintiff seeks to use the UCL to

21   regulate the requisite content of mortgage disclosures and advertising material prepared by a

22   federally chartered bank.  Indeed, Plaintiffs even seek injunctive relief dictating what World must

23   include and must omit from its disclosures, advertising materials, and even the terms of its loans.

24   Because 12 C.F.R. Section 506.2(b)(9) specifically preempts any state law that attempts to regulate

25   mortgage disclosures or advertising, the UCL is preempted here.  Thus, Plaintiff's Third Cause of

26   Action should be stricken.

27   Moreover, the OTS confirms that HOLA preempts UCL as it applies to disclosures

28   and advertisements of federally chartered banks. See Opinion Letter by Chief Counsel Carolyn J.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  Buck, at 1, 17-18 (Mar. 10 1999) ("Mar. 10 Opinion Letter") (attached to Request for Judicial Notice

2  As Exhibit B).  Relying on 12 C.F.R. Section 560.2 and examples cited therein, the OTS concluded

3  that HOLA preempts application of the broad provisions of UCL, including the use of the terms

4  "unfair" and "fraudulent," in a manner that would apply to federally chartered loan associations'

5  advertisements and disclosures.  Id.  Again, the UCL is preempted here and Plaintiff's Third Cause

6  of Action should be stricken.

7      **3.     Plaintiffs' Claim For Breach Of Contract Is Preempted Because It Challenges
            The Lending Agreements And Disclosures Of A Federally Savings Bank**

8

9          Plaintiffs again seek to resurrect their inadequate TILA claims discussed above by

10  claiming that World breached the Note by charging "more interest than was included in the

11  payments listed in the TILDS."  CSAC ¶ 137.  Thus the gravamen of Plaintiffs' breach of contract

12  claim is the same as their TILA claims above.  Plaintiffs contend that World failed to adequately

13  disclose the loans potential to negatively amortize.  Plaintiffs attempt to side-step preemption by

14  framing the allegedly deficient disclosure regarding negative amortization as an affirmative duty

15  under the contract.  This thinly veiled attempt to avoid preemption should fail as it is well settled that

16  all state laws, including common law causes of action, are preempted when they attempt to regulate

17  lending disclosures of a federally chartered bank.  See Lopez v. World Savings and Loan

18  Association, 105 Cal. App. 4th 729, 738 (2003); Ocwen Loan Servicing, 491 F.3d at 649; Prince,

19  2007 U.S. Dist. LEXIS 81774 at *11-12, citing 61 Fed. Reg. 50951, 50965-67 (1996).

20  **D.     Plaintiffs' Claim Of Fraudulent Omission Fails Because World Disclosed All Allegedly
        Concealed Facts**

21

22          Even if HOLA did not preempt it, Plaintiffs' Second Claim for Relief fails on its face.

23  The elements of an action for fraud and deceit based on concealment (omission) are: 1) the

24  defendant must have concealed or suppressed a material fact; 2) the defendant must have been under

25  a duty to disclose; 3) the defendant must have acted with the intent to defraud plaintiff; 4) plaintiff

26  must have been unaware of the fact and would not have acted as she did if she had known of the

27  concealed or suppressed fact, and 5) as a result of the concealment or suppression of the fact, the

28  plaintiff must have sustained damages.  Lovejoy v. AT&T Corp., 119 Cal. App. 4th 151, 157-158

- 20 -

1  (2004).  Plaintiffs do not and cannot adequately plead the above requirements.

2          Plaintiffs allege that World fraudulently concealed the actual interest rate of their

3  loans and the "fact" that negative interest and amortization would occur.  See CSAC ¶ 94.  However,

4  the exhibits to Plaintiffs' Complaint demonstrate that World disclosed the allegedly concealed facts

5  as a matter of law.  See discussion re Plaintiffs' TILA Causes of Action above, pp. 6-14.  Plaintiffs

6  confirm their knowledge of the concealed facts in the Note, which reads "My initial monthly

7  payment amount was selected by me from a range of initial payment amounts approved by Lender

8  and *may not be sufficient to pay the entire amount of the Interest accruing on the unpaid Principal*

9  *balance*."  Note ¶3(B) (emphasis added).  Next, under the bolded heading, "**Deferred Interest;**

10  **Additions to My Unpaid Principal**," the Note states, "From time to time, my monthly payments

11  *may be insufficient to pay the total amount of monthly Interest that is due.  If this occurs, the amount*

12  *of interest that is not paid each month, called 'Deferred Interest,'* **will** *be added to my Principal and*

13  *will accrue interest* at the same rate as the Principal."  Note ¶3(E) (emphasis added).

14          The Program Disclosure further outlines the loan's potential for negative amortization

15  under the bolded heading, "**HOW DOES THE PRINCIPAL BALANCE CHANGE?**"  See

16  Exhibit A attached hereto.  It states, "At various times during the life of your loan the monthly

17  payment may not be sufficient to pay the full amount of interest due.  This can occur if the initial

18  payment amount that you select is less than the full amount of interest due."  Id.  Thus, on its face,

19  Plaintiffs' CSAC shows that Plaintiffs had knowledge of the allegedly concealed facts as a matter of

20  law.  See Kline v. Turner, 87 Cal. App. 4th 1369, 1374 (2001) (holding "constructive and presumed

21  notice or knowledge are equivalent to knowledge"); Kruser v. Bank of America, 230 Cal. App. 3d

22  741, 750 (1991) (holding that bank customers are charged with knowledge of the content of

23  documents they receive from the bank).[23]

24

25

26  23 Plaintiffs' TILDSs also all disclose that Plaintiffs were, with certainty, going to incur negative amortization in the
    first year of their loan.  Their payment schedules, which did not (and could not) presume any increase in their interest
27  rate that year, showed their payments increasing by 7.5% in year two.  All else being equal – as the TILDS, by law,
    assumes -  that could not happen without negative amortization accruing in year one.

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- 21 -

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1

**E.    Plaintiffs' Breach Of Contract Claim Fails Because World's Alleged Behavior Is Consistent With The Terms Of The Contract**

2

3          The Notes attached to the CSAC belie Plaintiffs' contention that World promised that

4    that each month's individual payment would go towards both principal and interest.[24]  Section 3(B)

5    of the Note states, "My initial monthly payment amount was selected by me from a range of initial

6    payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest

7    accruing on the unpaid Principal balance."  The Notes also state that "I will pay principal and

8    interest by making payment**s** every month." (emph. added).  This latter sentence, even taken in

9    isolation (which is not proper under the rules of contract interpretation[25]), does not say what

10   Plaintiffs argue – that each payment will retire some principal as well as pay interest.  Rather, it says

11   exactly what each Plaintiff's TILDS shows – that over the life of the loan, the borrower makes

12   "payment**s** every month," and those payment**s** will "pay principal and interest."

13          Plaintiff cannot state a cause of action for breach of contract based on World's alleged

14   failure to apply Plaintiff's loan payments to both principal and interest.

15

**F.    Plaintiffs Fail To State A Claim For Relief For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Because California Law Does Not Recognize Such A Cause Of Action Outside of the Insurance Context And Because Plaintiff Seeks To Impose Duties Inconsistent With That Of The Contract**

16

17

18          The implied covenant of good faith and fair dealing exists merely to prevent one

19   contracting party from unfairly frustrating the other party's right to receive the benefits of the

20   agreement actually made.  Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 349-50 (2000).  It cannot

21   impose substantive duties that are inconsistent with the terms of the contract.  Id.  Further, California

---

22   [24] Apparently a remnant of Plaintiffs' First Amended Complaint where Plaintiffs erroneously alleged that World
23   imposed a low initial "teaser rate," Plaintiffs' Fourth Cause Of Action for Breach of Contract alleges that World
     breached the loan agreement because "Defendants knew that the payment schedule [in the TILDS] was not based on the
24   interest rate listed, but instead, was based on a much lower rate which caused the loan contracts to be uncertain and
     ambiguous as to the amount borrowers would have to pay in order to avoid negative amortization."  CSAC ¶ 134.
25   Plaintiffs abandoned their allegations of a low "teaser rate" elsewhere in the SAC because World imposed no such rate.
     As Plaintiffs rely heavily on this illusory fact throughout their breach of contract claim, the claim should be dismissed for
26   this reason as well.

27   [25] It is a fundamental rule of contract interpretation that context is key to interpreting any writing.  See, e.g., Rest. 2d
     Contracts §202(2); Doe v. Luster, 145 Cal. App. 4th 139, 146 (2006) ("words must be construed in context").

28

1   does not allow tort recovery (including punitive damages) for the breach of the implied covenant of

2   good faith and fair dealing outside the context insurance contracts.  See Foley v. Interactive Data

3   Corp., 47 Cal. 3d 654, 700 (1988); Freeman & Mills v. Belcher Oil Co., 11 Cal. 4th 85 (1995).

4   Because the breach of implied covenant cannot be used to enforce duties separate from those set

5   forth in, much less implied obligations inconsistent with, the contract, Plaintiff's cause of action for

6   breach of the implied covenant is superfluous and should be dismissed.

### IV.     CONCLUSION

8           Plaintiffs' loan documentation clearly and conspicuously discloses all information

9   required by the TILA.  Plaintiffs fail to state a cognizable claim under TILA.  Moreover, Plaintiff's

10  state law causes of action, by which they attempt otherwise to plead around the TILA, are expressly

11  preempted and fail in any event.  Defendants respectfully submit that the CSAC be dismissed.

14      DATED:  January 22, 2008

15                          REED SMITH LLP

17                          By    /s/ Keith D. Yandell
                                  Keith D. Yandell
18                                Attorneys for Defendants

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

- 23 -