1  David M. Arbogast (SBN 167571)
   David@SpiroMoss.com
2  Ira Spiro (SBN 67641)
   Ira@SpiroMoss.com
3  **SPIRO MOSS BARNESS LLP**
   11377 W. Olympic Boulevard, Fifth Floor
4  Los Angeles, CA 90064-1683
   Phone: (310) 235-2468; Fax: (310) 235-2456
5

6  Paul R. Kiesel, Esq. (SBN 119854)          Jonathan Shub (SBN 237708)
   kiesel@kbla.com                            jshub@seegerweiss.com
7  Patrick DeBlase, Esq. (SBN 167138)         **SEEGER WEISS LLP**
   deblase@kbla.com                           1515 Market Street, Suite 1380
8  Michael C. Eyerly, Esq. (SBN 178693)       Philadelphia, PA 19107
   eyerly@kbla.com                            Phone: (215) 564-2300; Fax (215) 851-8029
9  **KIESEL BOUCHER LARSON LLP**
   8648 Wilshire Boulevard                    Jeffrey K. Berns, Esq. (SBN 131351)
10 Beverly Hills, California 90211            jberns@jeffbernslaw.com
   Phone: (310) 854-4444; Fax: (310) 854-0812 **LAW OFFICES OF JEFFREY K. BERNS**
11                                            19510 Ventura Boulevard, Suite 200
                                              Tarzana, California 91356
12                                            Phone: (818) 961-2000; Fax: (818) 867-4820

   Attorneys for Plaintiff and all others Similarly Situated
13

14
                        **UNITED STATES DISTRICT COURT**
15
            **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**
16

17

18 DOLORES MANDRIGUES, JUANITA      )  **CASE NO. C-07-04497 - JF (RSx)**
   JONES, AL F. MINYEN and WILMA R. )
19 MINYEN, MARK CLAUSON and         )  CLASS ACTION
   CHRISTINA CLAUSON, individually and on )
20 behalf of all others similarly situated, )
                                    )  **PLAINTIFF'S OPPOSITION TO**
21               Plaintiffs,        )  **DEFENDANTS MOTION TO DISMISS**
                                    )
22         v.                       )  Hearing Date: February 29, 2008
                                    )  Time:          9:00 a.m.
23                                  )  Place:         Courtroom 3
   WORLD SAVINGS, INC., WORLD SAVINGS )  Judge:        Hon. Jeremy Fogel
24 BANK, FSB, WACHOVIA MORTGAGE     )
   CORPORATION, and DOES 1 through 10 )
25 inclusive,                       )
                                    )  Complaint Filed: August 29, 2007
26               Defendants.        )  Trial Date: Not set yet.
                                    )
27                                  )

28

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Legal Standards on a Motion to Dismiss / Motion to Strike . . . . . . . . . . . . . . . . . 3

    B.    Plaintiffs Have Properly Pled a Valid Cause of Action Under TILA . . . . . . . . . . . . . . . 4

        1.    Overview of the Truth in Lending Act ("TILA") . . . . . . . . . . . . . . . . . . . . . . . 4

        2.    Defendants' Failure to Disclose That the Payment Schedules Are Not
              Based on the Actual Interest Rate Charged on the Loans Violates TILA . . . . . . 5

        3.    Defendants' Failure to Disclose That Negative Amortization Was Absolutely
              Certain to Occur If Consumers Followed Defendants Payment Schedules
              Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        4.    Defendants' Failure to Disclose Plaintiffs True Legal Obligation in the
              TILDS Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        5.    Defendants' Failure to Disclose the Effect of the Payment Cap on the
              True Cost of the Loan Violates TILA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    D.    Plaintiffs Have Properly Pled a Valid Fraudulent Omissions Claim . . . . . . . . . . . . . . 12

        1.    Defendants' Duty to Disclose Material Facts . . . . . . . . . . . . . . . . . . . . . . . 12

        2.    Materiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        3.    Defendants' Knowledge of the Fraudulent Omissions - Scienter . . . . . . 15

        4.    Actual Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        5.    Justifiable Reliance - Presumed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    E.    Plaintiffs Have Properly Plead a Valid Breach of Contract Claim . . . . . . . . . . . . . . . . 17

    F.    Plaintiffs Have Properly Pled a Valid Claim for Tortuous Breach of the Covenant
          of Good Faith And Fair Dealing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    G.    HOLA Does Not Preempt Plaintiffs' Fraud, UCL and Breach of Contract Claims . . . 19

        1.    Overview of Preemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        2.    The OTS' Authority to Regulate and Preempt State Law . . . . . . . . . . . . . 20

        3.    Intent of OTS to Not Preempt All State Laws . . . . . . . . . . . . . . . . . . . . . . 20

    H.    Plaintiffs' Prayer for Punitive Damages Is Adequately Alleged . . . . . . . . . . . . . . . . . 25

1
IV.    CONCLUSION ........................................................ 25
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Opposition to Defendants' Motion to Strike - C-07-04497 - JF

1

## <u>TABLE OF AUTHORITIES</u>

2

**<u>Page(s)</u>**

3

**<u>FEDERAL CASES</u>**

4

<u>Affiliated Ute Citizens v. United States</u>,
    (1972) 406 U.S. 128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

5

6

<u>American Airlines, Inc. v. Wolens</u>,
    (1995) 513 U.S. 219 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

7

<u>Anderson Bros. Ford v. Valencia</u>,
    (1981) 452 U.S. 205, 219 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8

9

<u>Anderson v. Clow</u> ( In re Stac Elecs. Sec. Litig.),
    (9th Cir.1996) 89 F.3d 1399 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

10

<u>Balistreri v. Pacific Police Dep't</u>,
    (9th Cir. 1990) 901 F.2d 696 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11

12

<u>Bank of America v. City and County of San Francisco</u>,
    (9th Cir. 2002) 309 F.3d 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

13

14

<u>Barnes v. Fleet National Bank</u>,
    (1st Cir. 2004) 370 F. 3d 164 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15

<u>Binder v. Gillespie</u>,
    (9th Cir.1999) 184 F.3d 1059, 1064 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 17

16

<u>Binetti v. Washington Mutual Bank</u>,
    (S.D.N.Y. 2006) 446 F.Supp.2d 217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

17

18

<u>Bly-Magee v. California</u>,
    (9th Cir.2001) 236 F.3d 1014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

19

<u>Boursiquot v. Citibank</u> (D.Conn. 2004) 323 F.Supp.2d 350 . . . . . . . . . . . . . . . . . . . . . . . . . . 21

20

<u>Cemail v. Viking Dodge</u>,
    (N.D.Ill.1997) 982 F.Supp. 1296 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21

22

<u>Wiggins v. Avco Financial Services</u>,
    (D.D.C.1999) 62 F.Supp.2d 90 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

23

<u>Clark v. State Farm Mut. Auto. Ins. Co.</u>,
    (C.D.Cal.2005) 231 F.R.D. 405, 406-07 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

24

25

<u>Clegg v. Cult Awareness Network</u>,
    (9th Cir.1994) 18 F.3d 752 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26

<u>Conley v. Gibson</u>,
    (1957) 355 U.S. 41, 45-46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

27

28

<u>Eby v. Reb Realty, Inc.</u>,
    (9th Cir.1974) 495 F.2d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

iv

Fidelity Federal Sav. & Loan Ass'n v de la Cuesta,
    (1982) 458 U.S. 141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Finkel v. Docutel/Olivetti Corp.,
    (5th Cir.1987) 817 F.2d 356, 359  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

First National Bank of Council Bluffs, Iowa v. Office of the Comptroller of the Currency,
    (8th Cir. 1992) 956 F2d 1456 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Ford Motor Credit Co. v. Milhollin,
    (1980) 444 U.S. 555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Gilligan v. Jamco Dev. Corp.,
    (9th Cir.1997) 108 F.3d 246  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Household Credit Services, Inc. v. Pfennig,
    (2004) 541 U.S. 232 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

In re First Alliance Mortgage Co.,
    (Bankr. CD Cal. 2002) 280 B.R. 246 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

In re Ocwen Loan Servicing,
    (7th Cir. 2007) 491 F.3d 638 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In re Vylene Enterprises, Inc.,
    (9th Cir.1996) 90 F.3d 1472  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re: William M. Miller,
    (36 Bankr. Ct. 2000) 253 B.R. 455  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Ingersoll-Rand Co. v. McClendon,
    (1990) 498 U.S. 133 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Jackson v. Grant,
    (9th Cir.1989) 890 F.2d 118  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Jackson v. Marion County,
    (7th Cir. 1995) 66 F.3d 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

King v. California,
    (9th Cir.1986) 784 F.2d 910  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
    (1993) 507 U.S. 163 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Levine v. Diamanthuset, Inc.,
    (9th Cir.1991) 950 F.2d 1478  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lucas v. Dep't of Corr.,
    (9th Cir.1995) 66 F.3d 245  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Mourning v. Family Publications Serv., Inc.,
    (1973) 411 U.S. 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Parks Sch. of Bus., Inc. v. Symington,
    (9th Cir.1995) 51 F.3d 1480 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Poulos v. Caesars World, Inc.,
    (9th Cir.2004) 379 F.3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 17

Riggs v. Government Employees Fin. Corp.,
    (9th Cir.1980) 623 F.2d 68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Semar v. Platte Valley Fed. Sav. & Loan Ass'n,
    (9th Cir.1986) 791 F.2d 699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Silvas v. E*Trade Mortgage Corp.,
    (9th Cir. 2008) ---F3d---, 2008 WL 239422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

Silvas v. E*Trade Mortgage Corp.,
    (S.D.Cal. 2006) 421 F.Supp.2d 1315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20, 22

Smith v Chapman,
    (5th Cir. 1980) 614 F.2d 968 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Smith v. Cash Store Mgmt.,
    (7th Cir.1999) 195 F.3d 325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Stanley v. Univ. of S. Cal.,
    (9th Cir.1994) 13 F.3d 1313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc.,
    (D.Md. 2002) 190 F.Supp.2d 785 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Locke,
    (2000) 529 U.S. 89 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21

Washington v. Baezinger,
    (N.D.Cal.1987) 673 F.Supp. 1478 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATE CASES

Angelucci v. Century Supper Club,
    (2007) 41 Cal.4th 160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Applied Equipment Corp. v. Litton Saud Arabia Ltd.,
    (1994) 7 Cal.4th 503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Blankenheim v. E.F. Hutton & Co.,
    (1990) 217 Cal.App.3d 1463 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Branick v. Downey Savings & Loan Assoc.,
    (2005) 126 Cal.App.4th 828 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Vega v. Jones, Day, Reavis & Pogue,
    (2004) 121 Cal.App.4th 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Alliance Mortgage Co. v. Rothwell,
    (1995) 10 Cal.4th 1226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Engalla v. Permanente Medical Group, Inc.,
    (1997) 15 Cal.4th 951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fenning v. Glenfed, Inc.,
    (1995) 40 Cal.App.4th 1285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22, 23

Foley v. Interactive Data Corp.,
    (1988) 47 Cal. 3d 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Freeman & Mills, Inc. v. Belcher Oil Co.,
    (1995) 11 Cal.4th 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Garcia v. Superior Court,
    (1990) 50 Cal.3d 728 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gardner, Inc. v. National Union Fire Ins. Co.,
    (1998) 18 Cal.4th 857 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Gibson v. World Sav. & Loan Ass'n,
    (2002) 103 Cal.App.4th 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

Guz v. Bechtel Nat. Inc.,
    (2000) 24 Cal.4th 317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Harm v. Frasher,
    (1960) 181 Cal.App.2d 405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Heliotis v. Schuman,
    (1986) 181 Cal.App.3d 646 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hibernia Savings & Loan Soc. v. Lauffer,
    (1940) 41 Cal.App.2d 725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

International Billing Services, Inc. v. Emigh,
    (2000) 84 Cal.App.4th 1175 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Intrieri v. Superior Court,
    (2004) 117 Cal.App.4th 72 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Lazar v. Superior Court,
    (1996) 12 Cal.4th 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

LiMandri v. Judkins,
    (1997) 52 Cal.App.4th 326 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Lingsh v. Savage,
    (1963) 213 Cal.App.2d 729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Lopez v. World Savings & Loan Association,
    (2003) 105 Cal.App.4th 729 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

vii

Lovejoy v. AT & T Corp.,
(2001) 92 Cal.App.4th 85 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lovejoy v. AT & T Corp.,
(2004) 119 Cal.App.4th 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

McDonald v. John P. Scripps Newspaper,
(1989) 210 Cal.App.3d 100 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

McKell v. Washington Mutual, Inc,
(2006) 142 Cal.App.4th 1457 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Mirkin v. Wasserman,
(1993) 5 Cal.4th 1082 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

People ex. rel. Sepulveda v. Highland,
(1993) 14 Cal.App.4th 1692 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Small v. Fritz Companies, Inc.,
(2003) 30 Cal.4th 167 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Stamm Theatres, Inc. v. Hartford Casualty Ins. Co.,
(2001) 93 Cal.App.4th 531 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Stevens v. Superior Court,
(1986) 180 Cal.App.3d 605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wilhelm v. Pray, Price, Williams & Russell,
(1986) 186 Cal.App.3d 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wilkins v. National Broadcasting Co., Inc.,
(1999) 71 Cal.App.4th 1066 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL STATUTES**

12 U.SC. § 1464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

15 U.S.C. § 1601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

15 U.S.C. § 1604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1610 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

15 U.S.C. § 1635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 U.S.C. § 1640 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**STATE STATUTES**

Cal. Civ. Code § 1654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Civ. Code § 51.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Ins. Code, § 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Pub. Util. Code, § 2889.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL RULES**

Fed. R. Civ. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 25

**FEDERAL REGULATIONS**

12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 10, 11

12 C.F.R. § 226.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

12 C.F.R. § 226.23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12 C.F.R. § 226.28(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

12 C.F.R. § 560.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 24

Federal Reserve Board Official Staff Commentary to 12 C.F.R. 226.19(b) . . . . . . . . . . . . . . . . . . . . . . 8

Federal Reserve Board Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) . . . . . . . . . . . . . . . . . . 11

Regulation Z, 12 C.F.R. § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiffs and thousands of consumers are in imminent threat of losing their homes due to Defendants' misleading and deceptive Adjustable Rate Mortgages (hereafter "ARM loans.")  See Wachovia Mortgage letter, dated December 24, 2007, attached to the Declaration of David M. Arbogast ("Arbogast Decl."), as Ex. 1; see also Corrected Second Amended Complaint ("SAC"), ¶ 45.

This consumer fraud class action has been brought against Defendants World Savings, Inc., World Savings Bank, FSB and Wachovia Mortgage Corporation ("Defendants") for their deceptive and unfair practices in connection with the sale and servicing of Defendants adjustable rate mortgages or "ARM loans."  In particular, Plaintiffs' class claims seek to redress Defendants' failure to disclose important material facts concerning the ARM loans they sold to Plaintiffs.  As such, this consumer fraud class action is primarily based on Defendants' failures to disclose important material facts relating to the ARM loans Defendants sold to Plaintiffs and all others.  Poulos v. Caesars World, Inc. (9th Cir.2004) 379 F.3d 654, 667; Binder v. Gillespie (9th Cir.1999) 184 F.3d 1059, 1064.

Relying on Silvas v. E*Trade Mortgage Corporation (S.D.Cal. 2006) 421 F.Supp.2d 1315, aff'd 2008 WL 268981, Defendants argue that Plaintiffs consumer fraud and breach of contract claims are preempted under the Home Owner's Loan Act ("HOLA"), 12 U.SC. § 1464, et seq., "which [gave] the Office of Thrift Supervision ("OTS") the *exclusive* authority to regulate the operations of federal savings associations such as World."  Mtn. 2:16-19; 15:23-16:10.  However, Defendants overlook the fact that, the Silvas court stated:

> Here, Plaintiffs' UCL claims are premised on Defendants alleged TILA violations. Those violations included ***misrepresentations on Defendant's website*** and in its customer disclosures regarding the mortgage applicant's TILA recision rights and Defendant's refusal to refund Lock-in fees even when the applicant cancels within the three-day statutory window. Plaintiffs' UCL claims therefore attack Defendant's lending practices in two categories where OTS has explicitly indicated federal law occupies the field: (1) disclosure ***and advertising*** and (2) loan-related fees.

(Id. at 1319) (Italics and bold added).

Defendants also overlook that the Silvas court went on to explain that HOLA does not preempt UCL claims in which the "predicated acts were violations of the general legal duties with which ever

1  business must comply." Id. at 1320, citing Gibson v. World Sav. & Loan Ass'n (2002) 103 Cal.App.4th

2  1291 ("UCL claim was based on the thrift's alleged breaches of its written contracts with it customers");

3  Fenning v. Glenfed, Inc. (1995) 40 Cal.App.4th 1285 (fraud claim not preempted because the fraudulent

4  deception had nothing to do with the thrift's lending practices.)  Thus, only claims that are specific to a

5  defendant's lending activities, as distinguished from legal duties applicable to all businesses, are

6  preempted under HOLA.  Here, Plaintiffs claims are based on the "generally applicable duty of any

7  contracting party to disclose important material facts, and on the duty to refrain from unfair and

8  deceptive business practices."  SAC, ¶ 108 (p. 27).  Thus, Defendants have not met their burden, at the

9  pleading stage,  that Plaintiffs claims are preempted.

10      Defendants also argue that Plaintiffs, first, second, third, fourth and fifth causes of action are not

11  adequately alleged.[1]  As will be discussed in greater detail below, Plaintiffs have sufficiently pled valid

12  causes of action against Defendants for their violations of the Truth in Lending Act ("TILA"), 15 U.S.C.

13  § 1601, et seq.; fraudulent omissions; breach of contract; and for their tortious breach of the covenant

14  of good faith and fair Dealing.  Thus, based on Defendants' unlawful, fraudulent and unfair conduct, and

15  their tortious breach of contract, Plaintiffs seek damages, rescission, restitution, declaratory relief and

16  attorneys fees and costs.  (See SAC, Prayer, p. 36.)

17      Accordingly, Defendants' motion to dismiss and motion to strike should be denied.

18  **II.    STATEMENT OF FACTS**

19      Plaintiffs are consumers who applied for a primary residence mortgage through Defendants.

20  SAC, ¶ 2-5.  Defendants sold Plaintiffs Option Arm Loans.  SAC, ¶ 25.  In selling these loans,

21  Defendants' loan documents promised a low, fixed interest rate, and Plaintiffs relied upon that promise.

22  SAC, ¶ 27.  In reality, the interest rate increased almost immediately after signing.

23      Defendants' loan documents also promised that Plaintiffs' monthly payments would be applied

24  to "Principal and interest."  SAC, ¶ 71.  Defendants breached that agreement and never applied

25  Plaintiffs' payments to principal.  Id.  Defendants further informed Plaintiffs that if they made payments

26

27  [1]  Defendants do not address or dispute the validity of Plaintiffs third claim for violation of the UCL under the "unfair" and "fraudulent" prongs of § 17200.  Thus, Defendants apparently have conceded that Plaintiffs' UCL

28  claim is adequately alleged.

1    based on the promised low interest rate, no negative amortization would occur.  SAC, ¶ 73.  This,

2    however, was not true, because Plaintiffs experienced negative amortization.  SAC, ¶ 77.  Finally,

3    Plaintiffs could not escape from the loans, because of harsh exit penalties.  SAC, ¶ 25.  Plaintiffs have

4    brought this civil action seeking compensatory, consequential, statutory, and punitive damages.

5    **III.    ARGUMENT**

6    **A.    The Legal Standard on a Motion to Dismiss / Motion to Strike**

7    A complaint may be dismissed as a matter of law pursuant to Rule 12(b)(6) for one of two

8    reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory.

9    See Conley v. Gibson (1957) 355 U.S. 41, 45-46; Balistreri v. Pacific Police Dep't (9th Cir. 1990) 901

10   F.2d 696, 699.  For purposes of a motion to dismiss, all allegations of material fact in the complaint are

11   taken as true and construed in the light most favorable to the non-moving party.  Parks Sch. of Bus., Inc.

12   v. Symington (9th Cir.1995) 51 F.3d 1480, 1484; Clegg v. Cult Awareness Network (9th Cir.1994) 18

13   F.3d 752, 754.

14   "A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no

15   set of facts in support of his claim that would entitle him to relief."  Clegg, 18 F.3d at 754.  The court,

16   however, "is not required to accept legal conclusions cast in the form of factual allegations if those

17   conclusions cannot reasonably be drawn from the facts alleged."  Id. at 754-55.  A court's review is

18   limited to the face of the complaint, documents the complaint referenced, and matters of which the court

19   may take judicial notice.  Anderson v. Clow ( In re Stac Elecs. Sec. Litig.) (9th Cir.1996) 89 F.3d 1399,

20   1405 n. 4; Levine v. Diamanthuset, Inc. (9th Cir.1991) 950 F.2d 1478, 1483.

21   Motions to dismiss generally are viewed with disfavor under this liberal standard and are granted

22   rarely.  See Gilligan v. Jamco Dev. Corp. (9th Cir.1997) 108 F.3d 246, 249.  Leave to amend must be

23   granted unless it is clear that amendments cannot cure the complaint's deficiencies.  Lucas v. Dep't of

24   Corr. (9th Cir.1995) 66 F.3d 245, 248.

25   The requirement to liberally construe the complaint complements the "notice pleading" of the

26   Federal Rules.  See Fed. R. Civ. P. 8(a).  Under the notice pleading system, detailed evidentiary facts are

27   not required to be included in the complaint, and there is no distinction drawn between the pleading of

28   facts, ultimate facts, or even conclusions of law.  See Jackson v. Marion County (7th Cir. 1995) 66 F.3d

3

151, 153.  It thus falls upon "summary judgment and control of discovery to weed out unmeritorious claims ..." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit (1993) 507 U.S. 163, 168-69.

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California (9th Cir.2001) 236 F.3d 1014, 1019.  However, a fraud by omission claim does not need to meet the strict requirements of Rule 9(b).  In Washington v. Baezinger (N.D.Cal.1987) 673 F.Supp. 1478, 1482, the Court noted that in fraud by omission cases, "a plaintiff cannot plead either the specific time of the omission or the place, as he is not alleging an act, but a failure to act." See also Swedish Civ. Aviation Admin. v. Project Mgmt. Enters. Inc. (D.Md. 2002) 190 F.Supp.2d 785, 799.

To the extent the Court finds that Plaintiffs have not adequately raised *any* of the legal theories discussed herein, Plaintiffs respectfully request leave to amend to include those allegations and claims.

**B.    Plaintiffs Have Properly Pled A Valid Cause of Action Under TILA**

**1.    Overview of the Truth in Lending Act ("TILA")**

As a comprehensive consumer protection statute, TILA seeks to protect consumers by requiring certain disclosures to consumers for certain types of loans.  "Congress designed the law to apply to all consumers, who are inherently at a disadvantage in loan and credit transactions." Semar v. Platte Valley Fed. Sav. & Loan Ass'n (9th Cir.1986) 791 F.2d 699, 705.  "Congress through TILA sought to protect consumers' choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit." King v. California (9th Cir.1986) 784 F.2d 910, 915, citing Mourning v. Family Publications Serv., Inc. (1973) 411 U.S. 356, 363-64.

TILA is a remedial statute, to be interpreted liberally in favor of the consumer. Jackson v. Grant (9th Cir.1989) 890 F.2d 118, 120, citing Eby v. Reb Realty, Inc. (9th Cir.1974) 495 F.2d 646, 650; see also Riggs v. Government Employees Fin. Corp. (9th Cir.1980) 623 F.2d 68, 71 ("It is well established that [TILA] is to be liberally construed to effectuate its remedial purpose.") (citing cases).  Thus, "[e]ven technical or minor violations of the TILA impose liability on the creditor." Semar, 791 F.2d at 704.  "To insure that the consumer is protected ... [the TILA and accompanying regulations must] be

Plaintiffs' Opposition to Motion to Dismiss - C07-04497 JF (RSx)

1   absolutely complied with and strictly enforced." Jackson, 890 F.2d at 120, quoting Semar, 791 F.2d at

2   704) (brackets in original).

3         The remedies under TILA include civil liability and damages.  If any required disclosures are not

4   given, the borrower's right to rescind is extended from three days to three years after the date of

5   consummation of the transaction. 15 U.S.C. § 1635(a) & (f); 12 C.F.R. § 226.23(a)(3) (2006).[2]  Thus, "a

6   single violation of TILA, whether it be substantive or technical, extends a borrower's period for

7   rescission. [Citations.]" Wiggins v. Avco Financial Services (D.D.C.1999) 62 F.Supp.2d 90, 94; see

8   Semar v. Platte Valley Federal S & L Ass'n (9th Cir.1986) 791 F.2d 699, 704 [minor technical, as well

9   as major, violations of TILA or Regulation Z entitle the borrower to rescind].  Lenders who fail to notify

10  the borrower correctly of the right to rescind are also liable to the borrower for damages plus costs and

11  attorney fees.  15 U.S.C. § 1640(a)(1), (a)(2)(A) & (a)(3).  Lenders who omit the disclosures under

12  section 1639 are subject to liability in the amount equal to the sum of all finance charges and fees paid

13  by the consumer, unless the failure to comply with the statute is not material.  15 U.S.C. § 1640(a)(4).

14        The Federal Reserve Board of Governors implements TILA through Regulation Z (12 C.F.R. §

15  226) and its Official Staff Commentary.  15 U.S.C. 1604(a).  Compliance with Regulation Z became

16  mandatory on October 1, 1982.  Official Staff Commentary issued by the Federal Reserve Board is also

17  binding, and must be complied with, by all lenders.  First National Bank of Council Bluffs, Iowa v.

18  Office of the Comptroller of the Currency ("Council Bluffs") (8th Cir. 1992) 956 F2d 1456, 1460, citing

19  Ford Motor Credit Co. v. Milhollin (1980) 444 U.S. 555, 560; and Anderson Bros. Ford v. Valencia

20  (1981) 452 U.S. 205, 219.

21        **2.    Defendants' Failure to Disclose That the Payment Schedules Are Not Based**

22              **on the Actual Interest Rate Charged on the Loans Violates TILA**

23        Here, Plaintiffs have properly alleged that Defendants violated TILA, 12 C.F.R. § 226.17 and 12

24  C.F.R. § 226.19, "in that they have failed to clearly and conspicuously disclose the interest rate upon

25  which the payments listed in the TILDS are based."  SAC at ¶ 68.

26

27  [2]  Here, "Defendants did not provide Mr. and Mrs Minyen with a copy of their loan documents, ... including the
    notice of right to rescind ... [which] Defendants produced, through their counsel, on December 20, 2007."  SAC, ¶

28  4.  As such, the Minyen's right to rescind is extended three years from the date of the Note, May 26, 2005.  See
    SAC, Ex. 4, 00001.

1    Section 226.17 (a)(1) provides that each disclosure provided by the Defendant must not cause

2   another disclosure to be obscured or become less clear.  This section also requires disclosures to be:

3   "**Clear and conspicuous**.  This standard requires that disclosures be in a reasonably understandable

4   form.  For example, while the regulation requires no mathematical progression or format, the disclosures

5   must be **presented in a way that does not obscure the relationship of the terms to each other**."

6    Section 226.19 (b)(2)(vii) provides that in a variable rate transaction (adjustable rate mortgage)

7   the lender must disclose "[a]ny rules relating to changes in the index, interest rate, payment amount, and

8   outstanding loan balance including, for example, an explanation of interest rate or payment limitations,

9   negative amortization, and interest rate carryover."

10    The Truth in Lending Disclosure Statements ("TILDS") provided by Defendants disclose an

11   interest rate that is wholly unrelated to the payments listed in the schedule.  For example, the TILDS

12   Defendants provided to the Mandrigues lists an interest rate of 6.853% and the payment amounts, for the

13   first year of the loan, are identified as $628.36.  SAC, Ex. 1, 00007 (Mandriques).   However, when the

14   disclosed interest rate, 6.853%, is applied using a "sophisticated mortgage calculation device,"

15   Plaintiffs' payments, should have been approximately $1,099.29.  Id. at ¶ 32.  In truth, the disclosed

16   payment amounts of $628.36 were instead based upon an undisclosed interest rate of approximately 2%,

17   and not the 6.853% listed by Defendants.  Id.  The same result is true for the other named Plaintiffs.  See

18   SAC, Ex. 2, 00011 (Jones); Ex. 3, 00008 (Minyen); and Ex. 4, 00007 (Clauson).  This practice therefore

19   is, and was, misleading and deceptive.  Id. at 32-34.

20    For each of the named Plaintiffs, Defendants violated 12 CFR 226.17 (a)(1) and 12 C.F.R. §

21   226.19 in that they failed to disclose that the payment amounts listed in the TILDS were not based upon

22   the disclosed interest rate, but instead, were based upon an undisclosed, much lower interest rate, and

23   were certain to result in negative amortization.

24    Moreover, Defendants violated 12 CFR 226.17 (a)(1) and 12 C.F.R. § 226.19 by listing an

25   interest rate(s) and payment rate(s) which bore no relationship to one another, and thus were not "clear

26   and conspicuous," and in fact, obscured the relationship (or lack thereof) of the interest rate and

27   payment amounts stated in the TILDS.  SAC, ¶ 88.

28   / / /

1  Section 226.17(c)(1) provides, in relevant part:

> If the lower rate is not reflected in the credit contract between the
> consumer and the bank and the consumer is legally bound to the 15% rate
> from the outset, the disclosures given by the bank must not reflect the
> seller buydown[3] in any way.  For example, the annual percentage rate and
> payment schedule would not take into account the reduction in the interest
> rate and payment level for the first 2 years resulting from the buydown.

The above example instructs lenders that when a consumer is sold a home loan, and they agree to lower the interest rate or payments amounts for the first few years of the loan, the payment schedule *must* reflect the true interest rate, and not the temporarily reduced interest rate.

Here, although the ARM loans at issue do not include a buydown feature, the result is the same. Defendants based their payment disclosure on a 2% interest rate that they offered for only the first thirty days, rather than the true interest rate being charged. Defendants did not disclose payment amounts sufficient to pay both "Principal and interest," but instead, disclosed payments that bear no relation, whatsoever, to the interest rate Defendants listed in the Note(s) and TILDS. See SAC, Exs. 1-4, ¶ 3(A) ["I will pay *Principal and interest* by making payments every month"]; see also ¶ 3(D) ["... the amount by which my payment can be increased will not be more than 7-1/2% of the *then existing Principal and interest payment*."] (Italics added.)

In fact, here, Defendants completely failed to state in the Note(s) and TILDS that the payment amounts were based upon an undisclosed, and much lower, interest rate, and that the payments were completely insufficient to pay both principal and interest.  SAC, ¶ 71.  Thus, as alleged, this practice is, and was, misleading and deceptive.  SAC, ¶¶ 67-77.

Moreover, because Defendants failed to clearly and consciously disclose the true cost of the loan, and therefore obscured the relationship between the actual interest rate they charged on the loan, and the interest rate upon which the payment schedules were based, Defendants violated § 226.17(c)(1). SAC at ¶¶ 71-73.

Plaintiffs have therefore adequately alleged a TILA claim based on Defendants' misleading and

---

[3]  "A buydown is a mortgage financing technique where the buyer attempts to obtain a lower interest rate for at least the first few years of the mortgage.  The seller of the property usually provides payments to the mortgage lending institution, which, in turn, lowers the buyer's monthly interest rate and therefore monthly payment."  (See http://en.wikipedia.org/wiki/Buydown.)

deceptive practice of failing to disclose that the payment amounts were not based on the disclosed interest rate in violation of § 226.17 and § 226.19.

### 3. Defendants' Failure to Disclose That Negative Amortization Was Absolutely Certain to Occur If Consumers Followed Defendants' Payment Schedules Violates TILA

Plaintiffs have properly alleged that Defendants violated TILA, 12 C.F.R. § 226.17 and 12 C.F.R. § 226.19, in that they failed to clearly and conspicuously disclose that negative amortization was certain to occur if Plaintiffs followed the payment schedules provided by Defendants. See SAC, ¶¶ 82-85.

The ARM loans sold to Plaintiffs contained a cap on monthly payment increases. SAC, Ex. 1, ¶ 3(D). For example, the Mandriguez's loan documents state, at ¶ 3(D) that: "... the amount by which my monthly payment can be increased will not be more than 7-1/2 percent of the then existing principal and interest payment. This 7-1/2 % limitation is called the 'Payment Cap.'" See also SAC, Ex. 2, ¶ 3(D) (Jones); Ex. 3, ¶ 3(D) (Minyen); and Ex. 4, ¶ 3(D) (Clauson).

In 1995, the Federal Reserve issued binding commentary that added a requirement of a more definitive statement for variable rate loans with payment caps, such as the ARM loan at issue in this case. In particular, Official Staff Commentary provides, in relevant part: "For the program that gives the borrower an option to cap monthly payments, the creditor must fully disclose the rules relating to the payment cap option, including the effects of exercising it (**such as negative amortization occurs and that the principal balance will increase**)..." See Federal Reserve Board ("FRB") Official Staff Commentary to 12 C.F.R. 226.19(b), dated April 3, 1995, pp. 10, 21 (Arbogast Decl. Ex. 2.)

Throughout the FRB's Official Staff Commentary, it uses passive terms such as "should" or "may" for many of the disclosures, however, for negative amortization concerning loans such as the loans sold to Plaintiffs and the Class members, TILA requires an explicit statement that "**negative amortization occurs and that the principal balance will increase**." Id. Thus, when the FRB uses terms such as "must" or "should," "a fair reading of the Commentary is that the FRB intended the disclosure of a composite APR to be *mandatory*." See Council Bluffs, 956 F2d at 1461 [discussing FRB's use of the terms "must" and "should" in the Commentary to 12 C.F.R. § 226.18(f).]

1    Here, Defendants' Note(s) state that negative amortization is only a mere possibility: "***From***

2  ***time to time*** my monthly payments ***may be insufficient*** to pay the total amount of the monthly interest

3  that is due.  ***If this occurs*** the amount of interest that is not paid each month, called deferred interest,

4  will be added to my principal and will incur interest at the same rate as the principal."  SAC ¶ 84, Ex. 1-

5  4, ¶ 3(D) (italics and bold added.)

6    The sufficiency of TILA disclosures are "to be viewed from the standpoint of an ordinary

7  consumer, not the perspective of a Federal Reserve Board member, federal judge, or English professor."

8  Smith v. Cash Store Mgmt. (7th Cir.1999) 195 F.3d 325, 328, quoting  Cemail v. Viking Dodge

9  (N.D.Ill.1997) 982 F.Supp. 1296, 1302.

10    As noted above, § 226.17 and § 226.19 require lenders to make disclosures in a clear and

11  conspicuous manner.  And, a misleading disclosure is as much a violation of TILA as a failure to

12  disclose at all.  Barnes v. Fleet National Bank (1st Cir. 2004) 370 F. 3d 164, 174, quoting Smith v

13  Chapman (5th Cir. 1980) 614 F.2d 968, 977.

14    Here, Defendants violated § 226.17, § 226.19 and Official Staff Commentary to § 226.19 (b) in

15  that they failed to clearly and conspicuously disclose that the "loan was designed in such a way as to

16  guarantee negative amortization" SAC, ¶ 85.  Instead, Defendants suggested to borrowers that negative

17  amortization was only a mere possibility, misleadingly stating that negative amortization might occur

18  "from time to time," when in reality negative amortization was absolutely certain to occur.  SAC, ¶ 84.

19    In addition, § 226.19 required Defendants to disclose any rules relating to changes in the index,

20  interest rate, payment amount, and outstanding loan balance, which includes an explanation of any

21  interest rate or payment limitations, negative amortization, and interest rate carryover.  And, for loans

22  that provide more than one way to trigger negative amortization, such as the ARM loans at issue here,

23  § 226.19 (b)(2)(vii) requires separate disclosures to alert borrowers that negative amortization "***will***"

24  occur.  SAC, ¶ 83.

25    The ARM loans at issue have monthly interest rate changes and annual payment changes.  SAC,

26  ¶ 25.  These loans also include a payment cap which places a limit on the amount that the monthly

27  payments can increase.  Id.  As such, negative amortization was certain to occur when Defendants raised

28  the interest rate in the second month of the Note as the payment amount was remained the same.

9

In addition, the amount of negative amortization increased when the payment cap prevented an increase in the payment amount in year number two.  SAC, ¶ 95.  And, negative amortization also increased each month because Defendants capitalized the unpaid interest, as they charged Plaintiffs interest on the unpaid interest, causing negative amortization to occur in ever increasing amounts. SAC, ¶ 148 [*sic*] 158 (p. 34).

Accordingly, the ARM loans at issue contained multiple hidden features that caused negative amortization to occur on these loans, and under TILA, a separate clear and conspicuous disclosure warning the borrowers about each such feature was required.  12 CFR § 226.19(b)(2)(vii).

### 4.    Defendants' Failure to Disclose Plaintiffs' True Legal Obligation in the TILDS Violates TILA

15 U.S.C. 1601, § 226.17 and § 226.18 require that the payment amount in the TILDS has to reflect the *legal obligation*.  In addition, Official Staff Commentary to § 226.17(c) provides: "1.  **The disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the transaction**[;] [¶][and] 2. ...  **The legal obligation normally is presumed to be contained in the note or contract that evidences the agreement**."

Here, Plaintiffs have adequately alleged that Defendants violated TILA, 12 C.F.R. § 226.17 by failing to disclose Plaintiffs' legal obligation in the TILDS.  SAC, ¶¶ 32, 93.  For example, the Mandrigues' Note and TILDS list an interest rate of 6.853% with a beginning principal balance of $167,713.28.  The monthly amount to pay that loan off over the thirty year term is $1,099.29.  However, the payment schedule shows a payment obligation, in the first year of the loan, of only $628.36, thereby creating a shortfall of $470.93 each month, which is the negative amortization Defendants purposefully built into these loans.  SAC, ¶ 29.  And, the results are the same for the other named Plaintiffs.  See also SAC, Ex. 1, 00001 (Mandrigues); Ex. 2, 00011 (Jones); Ex. 3, 00008 (Minyen); and Ex. 4, 00007 (Clauson).

Listing payment amounts in the TILDS that are completely insufficient to fully repay Plaintiffs monthly legal obligation violates TILA, in that it fails to clearly and conspicuously disclose the true legal obligation owed on the Note(s).  In particular, ***TILA requires lenders to disclosure the legal obligation, not the payment obligation***.  See 15 U.S.C. 1601, § 226.17 and § 226.18.

---

1    Moreover, a misleading disclosure is as much a violation of TILA as no disclosure at all.  Smith

2    v. Chapman (5th Cir. 1980) 614 F. 2d 968, 977.   Here, the manner in which Defendants purposefully

3    stated an interest rate and payment amount which were completely unrelated to each other, and which

4    concealed the fact that negative amortization was absolutely certain to occur, was misleading and failed

5    to clearly and conspicuously disclose the true legal obligation of the loan.  See SAC, ¶¶ 90-91.

6    **5.    Defendants' Failure to Disclose the Effect of the Payment Cap on the True**

7    **Cost of the Loan Violates TILA**

8    Plaintiffs have properly alleged that Defendants violated TILA, 12 C.F.R. § 226.17 by failing to

9    clearly and conspicuously disclose the effect the payment cap would have on the loan.  SAC, ¶ 97.

10    The FRB's Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan

11    contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first

12    adjustment,

13    from changing to the rate determined by the index or formula at consummation, ***the effect of that rate***

14    ***or payment cap should be reflected in the disclosures***." (Arbogast Dec. Ex. 3).

15    Defendants' Payment Cap limited the amount that the monthly payments could be increased

16    annually.  Here, each of the Note(s) state "the amount my payment can be increased will not be more

17    than 7-1/2% of the then existing *Principal and interest payment*.  This 7-1/2% limitation is called the

18    "Payment Cap." SAC, Exs. 1-4 at ¶ 3(D). (italics added.)  Thus, if the loan had a monthly payment

19    amount of $1,000 for the first year of the note, the Payment Cap would limit the increase in payments to

20    a maximum of $75 for a total payment of $1,075 per month in the second year of the loan.

21    By enacting TILA, Congress intended for lenders to provide consumers with meaningful

22    disclosures so that they could make informed decisions about credit.  Household Credit Services, Inc. v.

23    Pfennig (2004) 541 U.S. 232, 235, citing 15 U.S.C. 1601(a).  And for loans containing a Payment Cap,

24    FRB's Official Staff Commentary to 12 C.F.R 226.17 (c)(1) requires lenders to inform the borrower of

25    *the effect* the Payment Cap will have on the loan.  See Commentary (Arbogast Dec. Ex. 3.)

26    Thus, under the terms of the Note(s), when the increase in the interest rate exceeded the increase

27    in the payment amounts, which were kept at or below the Payment Cap, the deficiency resulted in

28    further negative amortization being added to principal.

---
11

1    Here, Defendants completely failed to disclose, let alone clearly and conspicuously disclose, the

2    effect that the Payment Cap would have on Plaintiffs' loans.  SAC, ¶¶ 95-98.  Moreover, Defendants'

3    statement in Section 3(D) of the Note(s) that "the amount my payment can be increased will not be more

4    than 7-1/2% *of the then existing Principal and interest payment*," was yet another layer of Defendants'

5    deception.  Thus, not only did Defendants fail to disclose the effect that the Payment Cap would have on

6    Plaintiffs' loans, they did so in a manner to mislead borrowers into believing that each of their

7    payments, would, in fact, be applied to "Principal and interest."

8    Nevertheless, Defendants argue that they complied with TILA by only disclosing that the

9    Payment Cap limited the extent to which the payment amounts could increase.  See Defs. Mtn., p. 6, fn.

10    13.  However, disclosing the increase in the payment amount is not a disclosure of the *effect* of the

11    Payment Cap.  Rather, the effect of the Payment Cap is that it "would cause [hundreds if not] thousands

12    of dollars, each month, to be secretly added to principal."  SAC, ¶ 97.

13    Plaintiffs have adequately alleged that Defendants failed to disclose the effect the Payment Cap

14    had on these loans, the effect of which is the negative amortization that occurred on these loans.

### D.    Plaintiffs' Have Properly Plead a Valid Fraudulent Omissions Claim

16    The elements of a fraudulent omission claim under California law are: (1) an omission of

17    material fact, (2) knowledge of falsity (scienter), (3) intent to defraud, (4) justifiable reliance and (5)

18    resulting damages.  Lazar v. Superior Court (1996) 12 Cal.4th 631, 638; see also Small v. Fritz

19    Companies, Inc. (2003) 30 Cal.4th 167, 173.

### 1.    Defendants' Duty to Disclose Material Facts

21    To establish fraud through nondisclosure of facts, a plaintiff must plead that the defendant "was

22    under a legal obligation to disclose them."  Lingsh v. Savage (1963) 213 Cal.App.2d 729, 753.

23    Generally, there are four circumstances in which nondisclosure may constitute actionable fraud:

24    (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had

25    exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

26    conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but

27    also suppresses some material facts.  LiMandri v. Judkins ("Judkins") (1997) 52 Cal.App.4th 326, 336,

28    quoting Heliotis v. Schuman (1986) 181 Cal.App.3d 646, 651.  And where, as here, there is no fiduciary

1    relationship, the duty to disclose generally presupposes a relationship grounded in "some sort of

2    transaction between the parties. [Citations.]  Thus, a duty to disclose may arise from the relationship

3    between seller and buyer, ... or parties entering into any kind of contractual agreement. [Citation.]"

4    Judkins 52 Cal.App.4th at 337.  "All of these relationships are created by transactions between parties

5    from which a duty to disclose facts material to the transaction arises under certain circumstances."

6    Wilkins v. National Broadcasting Co., Inc. (1999) 71 Cal.App.4th 1066, 1082, citing Judkins, 52

7    Cal.App.4th at 336-337.

8           Under the second Judkins factor, Plaintiffs have alleged that:

9           "Defendants had exclusive knowledge of material facts, including but not
            limited to, (i) the payment amounts listed in the TILDS were not based on
10          the actual interest rate charged on the Note(s); (ii) that negative
            amortization was absolutely certain to occur, and (iii) that the payment
11          amounts listed in the Note and TILDS are insufficient to pay both
            principal and interest.
12

13   SAC, ¶ 97 [*sic*] 107 (at p. 25).

14          Plaintiffs have also alleged that "[t]he concealed and omitted information was not known to

15   Plaintiffs and the Class members ..."  Id.  Thus, Plaintiffs have adequately alleged that Defendants had a

16   duty to disclose material facts to Plaintiffs under the second Judkins factor.  Judkins, 52 Cal.App.4th at

17   336.

18          Under the third Judkins factor, Plaintiffs have adequately alleged that Defendants "actively

19   conceal[ed] material facts from Plaintiffs."  SAC, ¶ 97 [*sic*] 107 (at p. 25).  "[I]ntentional concealment of

20   a material fact is an alternative form of fraud and deceit equivalent to direct affirmative

21   misrepresentation."  Lovejoy v. AT & T Corp. (2001) 92 Cal.App.4th 85, 97, quoting Stevens v.

22   Superior Court (1986) 180 Cal.App.3d 605, 608.

23          Here, Plaintiffs have adequately alleged that Defendants actively concealed material information

24   concerning the ARM loans at issue.  SAC, ¶¶ 42, 49, 95 [*sic*] 105, and 97 [*sic*] 107 (at. p. 25).

25          Additionally, under the fourth Judkins factor, Plaintiffs have adequately alleged that Defendants

26   made partial representations and suppressed other material facts concerning the ARM loans at issue.  Id.

27          Under California law, "[e]ven where no duty to disclose would otherwise exist, 'where one does

28   speak he must speak the whole truth to the end that he does not conceal any facts which materially

---

1    qualify those stated. [Citation.]  One who is asked for or volunteers information must be truthful, and the

2    telling of a half-truth calculated to deceive is fraud.' [Citations .]" ( Vega v. Jones, Day, Reavis & Pogue

3    (2004) 121 Cal.App.4th 282, 292;  Intrieri v. Superior Court (2004) 117 Cal.App.4th 72, 86.)

4         Here, while the payment amounts listed in the TILDS are, on some level, true (e.g. they are the

5    payment obligations Plaintiffs were required to make), Defendants failed to disclose that those payment

6    amounts were not based on the interest rate listed and were, in fact, insufficient to pay both "Principal

7    and interest."  SAC, ¶ 93 [*sic*] 103 (p. 24); <u>see</u> also SAC, Exs. 1-4, ¶¶ 3(A) and 3(D).

8         In addition, as discussed above, Defendants stated in the Note(s) that the "payments ***may be***

9    ***insufficient*** to pay the total amount of the monthly interest that is due.  ***If this occurs*** the amount of

10   interest ... will be added to my principal and will incur interest at the same rate as the principal."  This

11   was a cleverly contrived half-truth, which failed to disclose that the payments were, in fact, insufficient

12   to pay both "Principal and interest."  SAC ¶ 94 [*sic*] 104 (pg. 25); <u>see</u> <u>also</u> Exs. 1-4, ¶ 3(D) (italics and

13   bold added.)

14        Accordingly, Plaintiffs have adequately alleged that Defendants had a duty to disclose under the

15   fourth <u>Judkins</u> factor, by making "partial representations but also suppresses some material facts."

16   <u>Judkins</u>, 52 Cal.App.4th at 336.

17        Moreover, in addition to the <u>Judkins</u> factors, discussed above, a duty to disclose may also be

18   imposed by statute.  ( <u>Pastoria v. Nationwide Ins.</u> (2003) 112 Cal.App.4th 1490, 1499 [Cal.Ins. Code, §

19   330]; <u>Lovejoy v. AT & T Corp.</u> (2004) 119 Cal.App.4th 151, 158-159 [Cal. Pub.Util.Code, § 2889.5];

20   <u>see also</u> Angelucci v. Century Supper Club (2007) 41 Cal.4th 160, 167 at fn. 6 [Cal.Civ.Code § 51.6,

21   subd. (f)].)

22        Here, and as discussed above in § III (B), TILA imposed a duty on Defendants to make certain

23   disclosures to Plaintiffs and the Class members.  Thus, in addition to the <u>Judkins</u> factors, discussed

24   above, TILA created a separate and independent basis by which the Court may find that Defendants

25   owed a duty to disclose material facts concerning the ARM loans at issue.  <u>See</u>, <u>e.g.</u>, SAC ¶¶ 91 [*sic*]

26   101 and 92 [*sic*] 102 (at p. 24).

27        Plaintiffs have therefore adequately alleged at least four (4) separate grounds upon which the

28   Court may find that Defendants owed a duty to disclose material facts concerning Plaintiffs' loans.

1    ## 2. **Materiality**

2       In order to sufficiently allege materiality, Plaintiffs must allege that "had the omitted information

3    been disclosed, [they] would have been aware of it and behaved differently." <u>Mirkin v. Wasserman</u>

4    (1993) 5 Cal.4th 1082, 1093.  Here, Plaintiffs have adequately alleged materiality "in that Plaintiffs and

5    others similarly situated would not have purchased these loans but for Defendants' ... fraudulent

6    [omissions]."  SAC, ¶ 49.

7    ## 3. **Defendants' Knowledge of the Fraudulent Omissions - Scienter**

8       "[K]nowledge of falsity" or scienter is an element of fraud.  5 Witkin, Summary of Cal. Law

9    (10th ed. 2005) Torts, § 800, p. 1157; <u>see also</u> <u>Lazar v. Superior Court</u>, 12 Cal.4th at 638.)[4]

10      Here, Plaintiffs have alleged that "[f]rom the inception of the Option ARM loan scheme, until

11   present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts." SAC, ¶

12   98 [*sic*] 108 (p. 25).  Plaintiffs have further alleged that Defendants knew from the inception of the

13   "ARM loan scheme" that (i) the payments schedules did not reflect payment amounts sufficient to pay

14   both "Principal and interest," (ii) an ambiguity existed in the TILDS in that the interest rate listed was

15   not used to calculate the schedule of payments, and (iii) Plaintiffs were absolutely certain to suffer

16   negative amortization if they followed the disclosed payment schedules.  SAC, ¶ 99 [*sic*] 109 (p. 26).

17      Further, Plaintiffs have alleged that Defendants "purposefully and intentionally devised this

18   Option ARM loan scheme to defraud and/or mislead consumers into believing ... that if [Plaintiffs] made

19   their payments according to the payment schedule provided by Defendants that it would be sufficient to

20   pay both principal and interest."  SAC, ¶ 100 [*sic*] 110 (p. 26).

21      Plaintiffs have therefore adequately alleged Defendants' knowledge or scienter of the

22   complained of fraudulent omissions.

23   ## 4. **Actual Reliance**

24      A plaintiff asserting a fraudulent omission claim is obliged to plead and prove actual reliance,

25   that is, to "'establish a complete causal relationship' between the alleged [fraudulent omission] and the

26

27   ---
     [4] "[T]he state of mind-or scienter-of the Defendants may be alleged generally." <u>See</u> <u>Odom v. Microsoft Corp.</u> (9th Cir. 2007) 486 F.3d 541, 554, citing <u>In re GlenFed, Inc. Sec. Litig.</u> (9th Cir.1994) (en banc) 42 F.3d 1541, 1547

28   ["We conclude that plaintiffs may aver scienter generally, just as the rule states-that is, simply by saying that scienter existed."].)

1   harm claimed to have resulted therefrom." <u>Mirkin v. Wasserman</u> (1993) 5 Cal.4th 1082, 1092-93,

2   quoting <u>Garcia v. Superior Court</u> (1990) 50 Cal.3d 728, 737.  However, "'[i]t is not ... necessary that [a

3   plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the

4   predominant or decisive factor in influencing his conduct.... It is enough that the representation has

5   played a substantial part, and so has been a substantial factor, in influencing his decision.'"

6   <u>Engalla v. Permanente Medical Group, Inc.</u> (1997) 15 Cal.4th 951, 976-977.  And, for fraudulent

7   omissions claims, the plaintiff may establish this element by showing that "had the omitted information

8   been disclosed, [he or she] would have been aware of it and behaved differently."  <u>Mirkin v.</u>

9   <u>Wasserman</u>, 5 Cal.4th at 1093.)

10      Here, Plaintiffs have alleged that "[t]he omitted information, as alleged herein, was material to

11   Plaintiffs and each Class member in that had the information been disclosed, Plaintiffs and each Class

12   member would not have entered into the loans." SAC, 101 [*sic*] 111 (p. 26).

### 5.    Justifiable Reliance - Presumed

14      "Besides actual reliance, [a] plaintiff must also show 'justifiable' reliance, i.e., circumstances

15   were such to make it reasonable for [the] plaintiff to accept [the] defendant's statements without an

16   independent inquiry or investigation."  <u>Wilhelm v. Pray, Price, Williams & Russell</u> (1986) 186

17   Cal.App.3d 1324, 1332.  However, "'[e]xcept in the rare case where the undisputed facts leave no room

18   for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a

19   question of fact.' [Citations.]"  <u>Alliance Mortgage Co. v. Rothwell</u> (1995) 10 Cal.4th 1226, 1239,

20   quoting <u>Blankenheim v. E.F. Hutton & Co.</u> (1990) 217 Cal.App.3d 1463, 1475.

21      Moreover, as is relevant here, justifiable reliance may be presumed when "the case can be

22   characterized as one that primarily alleges omissions."  <u>Poulos v. Caesars World, Inc.</u> (9th Cir.2004) 379

23   F.3d 654, 667; <u>Binder v. Gillespie</u> (9th Cir.1999) 184 F.3d 1059, 1064;  <u>Affiliated Ute Citizens v.</u>

24   <u>United States</u> (1972) 406 U.S. 128, 153-54.

25      To determine whether the presumption should apply, the Court must "analytically characterize

26   [the] action as either primarily a nondisclosure case, or a positive misrepresentation case."  <u>Binder</u>, 184

27   F.3d at 1064, citing <u>Finkel v. Docutel/Olivetti Corp.</u> (5th Cir.1987) 817 F.2d 356, 359.  And, while the

28   law does not limit this presumption to cases that allege only omissions, the presumption does not apply

in "mixed claim" cases where misstatements and omissions are pled equally. Poulos, 379 F.3d at 667;
see also Binder, 184 F.3d at 1064.

This case unquestionably primarily involves Defendants' failures to disclose and omissions of
material fact.

### E.    Plaintiffs Have Properly Plead a Valid Breach of Contract Claim

The elements of a claim for breach of contract are: "(1) The contract; (2) Plaintiff's performance;
(3) Defendant's breach; (4) Damage to plaintiff." McDonald v. John P. Scripps Newspaper (1989) 210
Cal.App.3d 100, 104, quoting Witkin, California Procedure, Pleading, § 464 (3rd Ed.1985).

Here, Plaintiffs have properly pled the existence of the contractual ARM loans at issue. See
SAC, ¶ 130 [sic] 140 (p. 31), Exs. 1-4. Plaintiffs have also properly pled the contractual provision
which they allege Defendants breached. See SAC, ¶ 132 ["that Plaintiffs and the Class members "will
pay Principal and interest by making payments each month.")[5] And, Plaintiffs have properly pled
performance. Id.

Similarly, Plaintiffs have properly alleged that Defendants breached the contract "by failing to
apply any portion of Plaintiffs' and the Class members' monthly payments towards their principle loan
balances." See SAC, ¶ 138 [sic] 148 (at p. 32).  And, Plaintiffs have properly alleged that they have
suffered damages as a result of Defendants' breach of these contract provisions. SAC, ¶ 140 [sic] 150.

Nevertheless, despite having adequately alleged each element for their breach of contract claim,
Defendants argue that the contractual provision that "*I will pay Principle and interest by making
payments each month*" means something other than the clear meaning of these words, and would not be
applied to both "Principal and interest." However, Defendants' argument is completely contrary to the
plain meaning of the language *Defendants* inserted into loan contracts. In particular, and as discussed
above, ¶ 3(D) of the Note(s) states that "the amount by which my payment may be increased will not
be more then 7-1/2% *of the then existing Principal and interest payment*," which, can have no other

---

[5] If necessary, Plaintiffs can also allege, as an additional provision supporting Plaintiffs' breach of contract claim
that Defendants promised in ¶ 3(D) that states "the amount my payment can be increased will not be more than
7-1/2% *of the then existing Principal and interest payment*."  Because this statement also represents that each of
"then existing payments, would be applied to "Principal and interest," Defendants breached this provision by not
applying any of the payments towards the loans' principal balances. See SAC, Exs. 1-4 at ¶ 3(D).)  (Italics and
bold added.)

Plaintiffs' Opposition to Motion to Dismiss - C07-04497 JF (RSx)

1  meaning than that each payment would be (or should have been) applied to both "Principal and

2  interest."

3       Defendants bald assertion, that this provision was only meant to promise Plaintiffs that if they

4  made payments "over the life of the loan" (Mtn. at p. 22, ln. 11), their payments would, someday in the

5  future, be applied to both "Principal and interest," is nonsense.  The notion is directly contrary to the

6  clear and explicit language, "Principal and interest," which they used in the context of the Note(s).

7       "'The fundamental goal of contractual interpretation is to give effect to the mutual intention of

8  the parties.' [Citation.] 'Such intent is to be inferred, if possible, solely from the written provisions of

9  the contract.' [Citation.] 'If contractual language is clear and explicit, it governs.' [Citation.]" Foster-

10 Gardner, Inc. v. National Union Fire Ins. Co. (1998) 18 Cal.4th 857, 868.)  And, under California law,

11 courts are to interpret the terms in context by considering the contract as a whole and giving effect to

12 every part of the agreement, with "each clause helping to interpret the other."  Stamm Theatres, Inc. v.

13 Hartford Casualty Ins. Co. (2001) 93 Cal.App.4th 531, 538; Cal. Civ.Code, § 1642.

14       If, however, the language is ambiguous or uncertain, courts are to interpret the contract **against**

15 **the party who caused the uncertainty**.  See Cal. Civ.Code, § 1654; International Billing Services, Inc. v.

16 Emigh (2000) 84 Cal.App.4th 1175, 1184; In re: William M. Miller (36 Bankr. Ct. 2000) 253 B.R. 455,

17 459; see also Cal. Civ. Code §1654 (" . . . the language of a contract should be interpreted most strongly

18 against the party who caused uncertainty to exist.")  And, specifically, "[i]f there is any uncertainty as to

19 meaning of mortgage drawn by mortgagee, it must be construed most strongly against mortgagee.

20 Hibernia Savings & Loan Soc. v. Lauffer (1940) 41 Cal.App.2d 725, 731, citing Cal. Civ. Code § 1654.

21       Here, Plaintiffs have adequately alleged that "Defendants [the mortgagee] caused the uncertainty

22 and ambiguity ... by purposefully stating in the Note that Plaintiffs 'will pay Principal and interest by

23 making payments every month" and then providing Plaintiffs with a payment schedule which is

24 inconsistent with, and not based on the interest rate listed in the Note."  SAC, ¶ 134 (p. 31).  Moreover,

25 Defendants fail to point to any language or provision in the loan contracts to support their argument that,

26 despite the clear and explicit language in the contracts, each of Plaintiffs' payments would not be

27 applied to "Principal and interest."

28       Plaintiffs have adequately alleged a valid breach of contract claim.

F.    **Plaintiffs Have Properly Pled a Valid Tortiuous Breach of the Covenant of Good Faith And Fair Dealing Cause of Action**

"[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." In re Vylene Enterprises, Inc. (9th Cir.1996) 90 F.3d 1472, 1477, citing Harm v. Frasher (1960) 181 Cal.App.2d 405, 417.   The covenant "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." Guz v. Bechtel Nat. Inc. (2000) 24 Cal.4th 317, 349.)

Defendants move to dismiss Plaintiffs' fifth cause of action on the ground that, essentially, it is nothing more than a contract claim.  Relying on Foley v. Interactive Data Corp. (1988) 47 Cal. 3d 654, 700, and Freeman & Mills, Inc. v. Belcher Oil Co. (1995) 11 Cal.4th 85, Defendants argue that tort liability may not attach for breach of the covenant of good faith and fair dealing outside the context of insurance contracts.  See Mtn. at p. 23.   However, Defendants overlook the principle that tort recovery for breach of contract is permissible where there is a violation of "an independent duty arising from principles of tort law."  Id. at 102, quoting Applied Equipment Corp. v. Litton Saud Arabia Ltd. (1994) 7 Cal.4th 503, 515.

Here, Plaintiffs have adequately alleged that Defendants' breach was tortiuous thus establishing violations of an independent legal duty, the legal duty owed to Plaintiffs to disclose important material facts relating to the ARM loans, e.g. fraudulent omissions discussed above in § III (D).

G.    **HOLA Does Not Preempt Plaintiffs' Fraud, UCL and Breach of Contract Claims**

Defendants seek to have this court find that they are immune from prosecution under state contract and tort laws, and that Defendants can breach its loan contracts and commit fraud and deception with impunity.   This case is not about Defendants "advertising" or the "disclosures" it made during its marketing efforts.  Rather, this case is about Defendants fraudulent omissions directly related to the loan contracts at issue and their tortiuous breaches which have placed Plaintiffs in peril of losing their homes.

1.    **Overview of Preemption**

Generally, preemption analysis begins with a presumption against preemption.  However, when a state seeks to regulate an area of law "that has had a significant federal presence, the presumption is not triggered." Silvas v. E*Trade Corp. (9th Cir. 2008) ---F3d---, 2008 WL 239422, citing United States v.

1   <u>Locke</u> (2000) 529 U.S. 89, 108.  For example, a presumption of preemption arises when a state law

2   specifically seeks to regulate the banking industry.  <u>See</u> <u>id.</u>, <u>see</u> <u>also</u> <u>Rose v. Chase Bank USA</u> (9th Cir.

3   2008) N.A. --- F.3d ----, 2008 WL 185491 (involving Cal. Civ. Code § 1748.9 which specifically sought

4   to regulate banking activity and therefore was preempted.)  In this case, where a regulation promulgated

5   by a federal agency is argued to preempt state law in the area of banking, resolution depends on: (1)

6   whether the agency had the authority to preempt state law; and (2) whether the agency intended to

7   preempt the state law.  <u>Fidelity Federal Sav. & Loan Ass'n v de la Cuesta</u> (1982) 458 U.S. 141, 154.

8   **2    The OTS' Authority to Regulate and Preempt State Law**

9       In enacting HOLA, Congress gave the Office of Thrift Supervision ("OTS") plenary authority to

10  issue regulations governing federal savings and loan. 12 U.S.C. § 1464.  In 1996, OTS issued 12

11  C.F.R. § 560.2 ("Section" 560.2"), which expressly provides for federal preemption of state law

12  "purporting to regulate" federal savings associations.  Thus, any state law that purports to *specifically*

13  regulate a federal savings and loans' activities in the way described by the OTS is expressly preempted.

14  <u>Silvas v. E*Trade Mortg. Corp.</u>  (2006) 421 F.Supp.2d 1315, 1319, *aff'd,* ---F.3d---, 2008 WL 239422

15  (Jan. 30, 2008).

16  **3.    Intent of OTS to Not Preempt All State Laws**

17      Section 560.2(b) provides examples of specific types of states laws that the OTS intended to

18  preempt.  It lists these laws in categories, including "[l]oan-related fees," "[e]scrow accounts,"

19  "[d]isbursements and repayments," and "disclosure and advertising."

20      Section 560.2(c) then describes state laws that are not preempted.  These include contract and

21  commercial law and tort law "to the extent that they only incidentally affect the lending operations of

22  Federal savings associations."

23      Section 560.2 has been analyzed in many federal and state preemption cases.  The resulting body

24  of law is complicated, but reveals certain guiding principles.  First, when plaintiffs rely upon state laws

25  *of specific application to savings and loans activity*, their claims are preempted.  <u>See</u> <u>Fidelity</u>, 458 U.S.

26  141 [holding that HOLA preempted a California law prohibiting due-on-sale clauses]; <u>Bank of America</u>

27  <u>v. City and County of San Francisco</u> (9th Cir. 2002) 309 F.3d 551 (holding that HOLA preempted a San

28  Francisco ordinance prohibiting banks from charging ATM fees to non-depositors]; <u>Lopez v. World</u>

1  Savings & Loan Association (2003) 105 Cal.App.4th 729 [holding that HOLA preempted UCL when

2  applied to enforce a state law concerning fax fees charged by beneficiaries of mortgages]; see also OTS

3  Opinion Ltr., January 30, 2003 (Arbogast Decl. Ex. 4) (holding that HOLA preempted a New York law

4  "mandating a disclosure at application concerning financial counseling, a pre-closing disclosure which,

5  among other things, warns about possible foreclosure and home loss in the event of default," and other

6  highly specific requirements.)

7       Second, when plaintiffs rely on laws of general application, their claims are preempted if the

8  states laws, as applied to the federal savings and loans, require *affirmative action* by the federal savings

9  and loan association or other behavior *specific* to savings and loans activity.  The important question in

10  this analysis is how the state law of general application is used.  For example, in Boursiquot v. Citibank

11  (D.Conn. 2004) 323 F.Supp.2d 350, the court held that HOLA preempted application of Connecticut's

12  version of the UCL to the facts before it.  In that case, the plaintiffs complained that Citibank withheld

13  excess interest and funds from their escrow account and charged undisclosed fees.   In other words,

14  plaintiffs hoped to use Connecticut's UCL as a law prohibiting federal savings and loan associations

15  from withholding excess interest and *requiring affirmative disclosure* of all finance charges."  Id. at

16  352-53.  Connecticut's UCL, as applied to that situation, would have both required *affirmative action* by

17  the savings and loan association and would have regulated behavior *specifically* deemed preempted

18  under § 560.2(a).  Thus, in that situation, federal law preempted the application of Connecticut's UCL.

19       Here, Defendants rely on Silvas v. E*Trade Mortgage Corporation (S.D.Cal. 2006) 421

20  F.Supp.2d 1315, aff'd 2008 WL 268981 in alleged support of their argument that Plaintiffs tort and

21  contract claims are preempted.  However, Silvas is factually distinguishable.

22       In Silvas, the plaintiffs filed a class action alleging that a federal savings and loan association's

23  policy not to refund lock-in fees after applicants cancelled the transactions, within the three-day window

24  under TILA, violated the UCL.  Silvas, 421 F.Supp.2d at 1317.  In particular, the plaintiffs alleged that

25  "Defendant's representations, on its website and in its customer disclosures, to mortgage applicants that

26  Lock-in Fees are non-refundable violate [the UCL] which prohibits *false advertising*."  Id.  In addition,

27  plaintiffs alleged "that Defendant's practice of misrepresenting consumers' legal rights in

28  advertisements and disclosures amounts to an unlawful practice in violation of [the UCL]."  Id.

1    Because the plaintiffs claims were based on "requirements regarding loan related fees or disclosure and

2    advertising," the <u>Silvas</u> court found those UCL claims preempted under 12 C.F.R. § 560.2(b) and the

3    analysis ended there because the "type of law in question is listed in paragraph (b)." <u>Silvas v. E*Trade</u>,

4    ---F.3d---, 2008 WL 239422, at *3.

5        Here, Plaintiffs claims do not involve advertizing and marketing disclosures and therefore <u>Silvas</u>

6    is distinguishable because the court in <u>Silvas</u> found the plaintiffs advertising claims preempted, and

7    therefore did not proceed to the next step in the analysis, the applicability of § 560.2(c). Moreover,

8    while the <u>Silvas</u> court did not find it necessary to analyze § 560.2(c), because it found the claims

9    *specifically* related to savings and loan activities listed in § 560.2(b), the court went on to recognize that

10   HOLA does not preempt UCL claims in which the "predicated acts were violations of the general legal

11   duties with which every business must comply." <u>Silvas</u>, 421 F.Supp.2d at 1320, citing <u>Gibson v. World</u>

12   <u>Sav. & Loan Ass'n</u> (2002) 103 Cal.App.4th 1291 ("UCL claim was based on the thrift's alleged

13   breaches of its written contracts with it customers"); <u>Fenning v. Glenfed, Inc.</u> (1995) 40 Cal.App.4th

14   1285 (fraud claim not preempted because the fraudulent deception had nothing to do with the thrift's

15   lending practices.) Thus, only claims that are specific to a defendant's lending activities, as

16   distinguished from legal duties applicable to all businesses, are preempted under HOLA. Here,

17   Plaintiffs claims are based on the "generally applicable duty of any contracting party to disclose

18   important material facts, and on the duty to refrain from unfair and deceptive business practices." SAC,

19   ¶ 108 (p. 27).

20       However, when plaintiffs rely on a state law of general application, the state law is not

21   preempted. <u>See</u> <u>e.g.</u> <u>McKell v. Washington Mutual, Inc</u> (2006) 142 Cal.App.4th 1457 (implied

22   misrepresentation as to reasonableness of loan related fees); <u>Branick v. Downey Savings & Loan</u>

23   <u>Assoc.</u> (2005) 126 Cal.App.4th 828, superseded on other grounds, (2006) 39 Cal.4th 235

24   (misrepresentations as to disclosed loan financing fees); <u>Gibson v. World Savings & Loan Assn.</u> (2002)

25   103 Cal.App.4th 1291 (misrepresentations related to disclosure of loan costs and fees); <u>Fenning v.</u>

26   <u>Glenfeld, Inc.</u> (1995) 40 Cal.App.4th 1285; <u>People ex. rel. Sepulveda v. Highland</u> (1993) 14

27   Cal.App.4th 1692; <u>see</u> <u>also</u> <u>Binetti v. Washington Mutual Bank</u> (S.D.N.Y. 2006) 446 F.Supp.2d 217.

28       For example, in <u>Gibson</u>, the California Court of Appeal held that HOLA did not preempt a UCL

claim.  In that case, the plaintiff sought to use the UCL to enforce the "duties of a contracting party to

comply with its contractual obligations."  Id. at 1301.  Just as the law against battery will not be

preempted merely because the batterer works for a federal savings and loan association, so a law against

breach of contract will not be preempted just because the contract relates to loan activity.  Similarly, in

Binetti, the court held that New York's consumer fraud statute was not in conflict with the federal

objectives identified in § 560.2, and that "*the New York Consumer Fraud Statute is precisely the type*

*of general commercial law designed to establish the basic norms that undergird commercial*

*transactions that the OTS has indicated it does not intend to preempt*."  Id. at 220 (citation and

quotations omitted).

This rubric is based on the plain language of § 560.2.  While § 560.2 expresses its intent to

"occup[y] the entire field of lending regulation for federal savings associations," it limits this language

with examples of the types of laws to be preempted.  See § 560.2(a)-(b).  For example, under the

category of advertising, federal law preempts "laws requiring specific statements, information, or other

content to be included in credit application forms, credit solicitations, billing statements, credit

contracts, or other credit-related documents and laws requiring creditors to supply copies of credit

reports to borrowers or applicants."  Section 560.2(b)(9).  These examples are very specific laws,

narrowly tailored to the lending industry.  Additionally, each law listed requires the *affirmative action*

by the lender of including specific content in its documents.[6]

The OTS' own interpretation of § 560.2 agrees, and recognizes that HOLA preserves the rights

of states to regulate, for the protection of consumers and others, the regular "contract and commercial"

practices of lenders.  See OTS Opinion Ltr., December 24, 1996 (Arbogast Decl. Ex. 5).  The OTS "has

indicated . . . that it does not intend to preempt state laws that establish the basic norms that undergird

commercial transactions" and that application of consumer protection laws may very well "affect

---

[6]  "A prohibitory injunction preserves the status quo." Stanley v. Univ. of S. Cal. (9th Cir.1994) 13 F.3d 1313, 1320.  In contrast, "[a] mandatory injunction [requiring affirmative action] goes well beyond simply maintaining the *status quo pendente lite* and is particularly disfavored. " Id. (internal quotation marks and citations omitted). Here, Plaintiffs do not seek for Defendants to take any affirmative action, rather, to the extent permitted, Plaintiffs seek declaratory and injunctive relief that: (i) Defendants violated the law, and (ii) that should be prohibited from violating the law in the future.

1  lending relationships" yet still be used alongside lending regulations to condemn deceptive acts by

2  lenders.  Id. at p. 5-6  Indeed, in cases like Plaintiffs' preemption does not exist because, as the OTS

3  noted "federal thrifts are presumed to interact with their borrowers in a truthful manner. [A] general

4  prohibition on deception should have no measurable impact on their lending operations.  Accordingly,

5  we conclude that [such prohibition] is not preempted by federal law."  Id. at p. 6.  This is true even if a

6  patchwork of state laws may apply the practices of any one lender.  Id.

7       The significance of the 1999 Opinion Letter cited by Defendants is far narrower than what

8  Defendants argue.  In particular, the Letter states: "[w]e emphasize that our conclusion as to undue

9  impact [on lending activities] applies only with respect to the three areas of the Associations' lending

10  operations described herein."  OTS Opinion Ltr., March 10, 1999, at p. 14, n. 64 (Arbogast Ex. 6).   In

11  fact, the very same opinion letter concluded that "[w]e [the OTS] do not preempt the entire UCA or its

12  general application to federal savings associations in a manner that only incidentally affects lending and

13  is consistent with the objective of allowing federal savings associations to operate in accordance with

14  uniform standards." Id. at p. 9-10.   The OTS noted in this letter that the claims discussed in its 1996

15  letter "did not attempt to regulate the content of federal savings association's advertising . . . but rather

16  *sought only to protect the integrity of such representations . . . once made.*"  Id. at 14, n. 63 (emphasis

17  added); see also Binetti, 446 F.Supp.2d at 219 (contrasting the qualified reach of the 1999 Opinion

18  Letter with the more generally controlling 1996 Opinion Letter).  The OTS has never retreated from the

19  long-established understanding that some regulated conduct may be legitimately implicated in legitimate

20  actions to protect consumers, whether through consumer protection laws, actions for breach of contract

21  or for fraud.

22       Moreover, TILA's enforcement scheme does "not annul, alter, or affect the laws of any State

23  relating to the disclosure of information in connection with credit transactions, except to the extent that

24  those laws are inconsistent with the provisions of this subchapter and only then to the extent of the

25  inconsistency.  See 15 U.S.C. § 1610(a)(1).  "A State law is inconsistent [with TILA] if it requires a

26  creditor to make disclosures or take actions that contradict the requirements of Federal law."  12 C.F.R.

27  § 226.28(a)(1).  Moreover, "[a]dditional penalties are not inconsistent with TILA, but merely provide

28  greater protection to consumers."  In re First Alliance Mortgage Co. (Bankr. CD Cal. 2002) 280 B.R.

246, 251.

As discussed above, 12 C.F.R. 560.2 (c) specifically prevents the OTS from preempting State laws that seek to vindicate important policies associated with the States' historic police powers, including protection of citizens from predatory and abusive lending practices as long as the law is one of general application, that "only incidentally affect[s] the lending operations of Federal savings associations."   Thus, the OTS' limited "authority does not deprive persons harmed by the wrongful acts of [Defendants] of their basic state common-law-type remedies."  In re Ocwen Loan Servicing (7th Cir. 2007) 491 F.3d 638, 643.  Ocwen goes on to state:

> It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract. Or if the mortgagee (or a servicer like Ocwen) fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, **it would be surprising for a federal regulation to bar a suit for fraud**. Some federal laws do create such bars, notably ERISA, see 29 U.S.C. §§ 1132(a), (e), but this is recognized as exceptional. American Airlines, Inc. v. Wolens, 513 U.S. 219, 232, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995); Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142-43, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). **Enforcement of state law in either of the mortgage-servicing examples above would complement rather than substitute for the federal regulatory scheme**.

Accordingly, Plaintiffs tort and contract claims are not preempted under HOLA.

**H.    Plaintiffs Prayer for Punitive Damages Is Adequately Alleged**

The Federal Rules of Civil Procedure govern punitive damages claims procedurally with respect to the adequacy of pleadings.  Clark v. State Farm Mut. Auto. Ins. Co. (C.D.Cal.2005) 231 F.R.D. 405, 406-07.  Rule 9(b) provides that "malice, intent, knowledge, and other conditions of mind of a person may be averred generally."  Fed.R.Civ.P. 9(b).  Where, as here, the case does not involve securities fraud, "plaintiffs may aver scienter generally, just as the rule states-that is, simply by saying that scienter existed."  In re GlenFed, Inc. Sec. Litig. (9th Cir.1994) (en banc) 42 F.3d 1541, 1547, quoted in, Odom v. Microsoft Corp. (9th Cir.2007) (en banc) 486 F.3d 541, 553.  Thus, it is enough that Plaintiffs complaint alleges that Defendants "acted with oppression, malice, and fraud."  See SAC ¶¶ 51, 155.

**IV.    CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss and motion to strike should be denied.

/ / /

Plaintiffs' Opposition to Motion to Dismiss - C07-04497 JF (RSx)

1    DATED: February 8, 2008                **SPIRO MOSS BARNESS LLP**

2

3                                           By:  _____/S/_____
                                                 David M. Arbogast, Esq.
4                                                11377 W. Olympic Boulevard, Fifth Floor
                                                 Los Angeles, CA 90064-1683
5                                                Phone: (310) 235-2468; Fax: (310) 235-2456

6                                                Jonathan Shub, Esq.
                                                 **SEEGER WEISS LLP**
7                                                1515 Market Street, Suite 1380
                                                 Philadelphia, PA 19107
8                                                Phone: (215) 564-2300; Fax (215) 851-8029

9                                                Paul R. Kiesel, Esq.
                                                 Patrick Deblase, Esq.
10                                               Michael C. Eyerly, Esq.
                                                 **KIESEL BOUCHER LARSON LLP**
11                                               8648 Wilshire Boulevard
                                                 Beverly Hills, California 90210
12                                               Phone: (310) 854-4444; Fax: (310) 854-0812

13                                               Jeffrey K. Berns, Esq.
                                                 **LAW OFFICES OF JEFFREY K. BERNS**
14                                               19510 Ventura Blvd, Suite 200
                                                 Tarzana, California 91356
15                                               Phone: (818) 961-2000; Fax:  (818) 867-4820

16                                               Attorneys for Plaintiffs, DOLORES
                                                 MANDRIGUES, JUANITA JONES, AL F.
17                                               MINYEN and WILMA R. MINYEN, MARK
                                                 CLAUSON and CHRISTINA CLAUSON, and all
18                                               others Similarly Situated.

19

20

21

22

23

24

25

26

27

28

26