1  David M. Arbogast - State Bar No. 167571
   darbogast@law111.com
2  Jeffrey K. Berns - State Bar No. 131351
   jberns@law111.com
3  **ARBOGAST & BERNS LLP**
   19510 Ventura Boulevard, Suite 200
4  Tarzana, California 91356
   Phone: (818) 961-2000; Fax: (818) 867-4820
5
   Paul R. Kiesel, Esq. (SBN 119854)
6  kiesel@kbla.com
   Patrick DeBlase, Esq. (SBN 167138)
7  deblase@kbla.com
   Michael C. Eyerly, Esq. (SBN 178693)
8  eyerly@kbla.com
   **KIESEL BOUCHER LARSON LLP**
9  8648 Wilshire Boulevard
   Beverly Hills, California 90211
10 Phone:  (310) 854-4444; Fax:  (310) 854-0812

11 [*Additional counsel listed on signature page*]
   Attorneys for Plaintiffs and all others Similarly
12

13

14                **UNITED STATES DISTRICT COURT**

15     **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

16 DOLORES MANDRIGUES, JUANITA      )  **CASE NO. C-07-04497 - JF**
   JONES, AL F. MINYEN and WILMA R. )
17 MINYEN, MARK CLAUSON and         )  [*Assigned to the Hon. Jeremy Fogel*]
   CHRISTINA CLAUSON, individually and on )
18 behalf of all others similarly situated, )  <u>CLASS ACTION</u>
                                    )
19              Plaintiffs,         )
                                    )
20                                  )  **PLAINTIFFS' REPLY MEMORANDUM OF**
        v.                          )  **POINTS AND AUTHORITIES IN SUPPORT**
21                                  )  **OF MOTION TO COMPEL NAMES,**
                                    )  **ADDRESSES AND TELEPHONE NUMBERS**
22 WORLD SAVINGS, INC., WORLD SAVINGS )  **OF THE PUTATIVE CLASS MEMBERS**
   BANK, FSB, WACHOVIA MORTGAGE     )
23 CORPORATION, and DOES 1 through 10 )  Hearing Date: June 18, 2008
   inclusive,                       )  Time:          9:30 a.m.
24                                  )  Place:         Courtroom 4
              Defendants.           )  Judge:         Hon. Richard Seeborg
25                                  )
                                    )
26 ─────────────────────────────── )

27                                     Complaint Filed: August 30, 2007
                                       Trial Date: Not set yet.
28

1

## TABLE OF CONTENTS

2

**Page**

3   I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4   II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5         A.   The Interrogatory Seeks Probative, Relevant Information . . . . . . . . . . . . . . . . . . . . . . 2

6         B.   Less Burdensome Avenues Were Attempted but Thwarted by World . . . . . . . . . . . . . . 5

7         C.   The Minimal Information Plaintiffs Request is Contemplated Under Rule 26 . . . . . . . . 6

8         D.   The Resulting Public Relations Nightmare Has Already Fallen in World's Lap . . . . . . . 7

9         E.   Plaintiffs' Request for the Putative Class Members' Contact Information is Genuine . . . 8

10        F.   World Has Not Yet Produced The Documents It Has Agreed to Produce . . . . . . . . . . . 8

11  IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

## **CASES**

4

Avila v. Stearns Lending, Inc.,
    (CD Cal. April 7, 2008) 2008 WL 1378231, at *2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5

6

Babbitt v. Albertson's. Inc.,
    (N.D.Cal. Nov. 30, 1992) 1992 WL 605652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

7

Hinesley v. Oakshade Town Center,
    (2005) 135 Cal.App.4th 289  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8

9

In re HP Inkjet Printer Litigation,
    U.S.D.C. (N.D. Cal. April 30, 2008), C 05-3580  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10

In re Mego Financial Corporation Securities Litigation,
    (9th Cir. 2000) 213 F.3d 454 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

11

12

Jordan v. Paul Financial, LLC,
    U.S.D.C. (N.D. Cal. June 2, 2008) Case No. C 07-04496 SI  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

13

Oppenheimer Fund, Inc. v. Sanders,
    (1978) 437 U.S. 340 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

14

15

Palmer v. Stassinos,
    (N.D. Cal.) 2005 WL 3868803  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

16

Pioneer Electronics (USA), Inc. v. Superior Court,
    (2007) 40 Cal.4th 360  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

17

18

Reyes v. Downey Savings and Loan Assn., F.A., et al.,
    U.S.D.C. (C.D. Cal. April 30, 2008) Case No. SACV07-0615 AG (CTx) . . . . . . . . . . . . . . . . . 4

19

Salazar v. Avis Budget Group, Inc.,
    (S.D. Cal. Oct. 10, 2007) 2007 WL 2990281 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20

21

## **STATUTES**

22

Federal Rules of Civil Procedure,
    Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

23

    Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

24

12 C.F.R. § 226.17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

The sole issue before the Court is whether Defendant World Savings Bank, FSB, now Wachovia Mortgage FSB ("Defendant" or "World"), should be required to disclose the names, addresses and contact information of the putative Class members which Defendant has estimated at nearly 600,000.

Plaintiffs have no intention of calling all "575,000 +" Class members and prefer to contact only those borrowers who wish to speak with putative Class counsel.  The Class members are those who have complained to World about the onerous prepayment penalties, negative amortization (deferred interest), the payment schedules, and the loan terms.  They also include putative Class  members who have lost their homes through foreclosure or are being foreclosed upon by World.  Defendant refused Plaintiffs' invitation to entertain any such reasonable limitations on the request.

In its opposition, Defendant argues that the Supreme Court has "held that the production of class members' names *was* not 'within the scope of legitimate discovery.'"  Defs Op., 6:25-26.  However, World fails to acknowledge the Supreme Court, in that same opinion, also stated that "[w]e do not hold that class members' names and addresses never can be obtained under the discovery rules." Oppenheimer Fund, Inc. v. Sanders (1978) 437 U.S. 340, 354, fn. 20.

In order to certify a class under Rule 23 of the Federal Rules of Civil Procedure, a plaintiff must set forth facts that support four requirements: (1)  numerosity; (2)  common questions of law or fact; (3) typicality of the claims or defenses; and (4) adequacy of the representation. Fed.R.Civ.P. 23(a), see also In re Mego Financial Corporation Securities Litigation (9th Cir.2000) 213 F.3d 454, 462.  The question here is whether the contact information of some or all of the nearly 600,000 borrowers is needed by Plaintiff to present their certification motion.  While Plaintiffs recognize that courts throughout the country have come out on both sides of this issue, Plaintiffs believe, on balance, the Court should permit the discovery for at least those putative class members who have complained to World, or those who have been either foreclosed or in the process of being foreclosed upon by World.  See, e.g., Babbitt v. Albertson's. Inc.  (N.D.Cal. Nov. 30, 1992) 1992 WL 605652, *5-6 (court ordered production at pre-certification stage of names, addresses, telephone numbers and social security numbers of current and past employees, commenting that "[d]efendant has access to this information, and plaintiff should

1  have the same access. Furthermore, the information could lead to the discovery of admissible evidence

2  relevant to the class certification issue."); see also Pioneer Electronics (USA), Inc. v. Superior Court

3  (2007) 40 Cal.4th 360.  Plaintiffs recognize that other courts analyzing facts similar to the facts alleged

4  in this case have reached a contrary holding.  See Order Re: Discovery, Jordan v. Paul Financial, LLC,

5  et al., U.S.D.C. (N.D. Cal.) Case No. C 07-04496 SI (June 2, 2008) (Hon. Susan Illston presiding)

6  ("Class certification raises structural questions about the nature of plaintiff's claim and the number of

7  potential parties affected; information about individual class members will not help in this regard."), a

8  true and exact copy of which is attached to the Declaration of David M. Arbogast ("Arbogast Decl.") as

9  Exh. 1.

10       This case primarily involves whether Defendant failed to disclose and omitted material

11  information to Plaintiffs, and others, prior to entering into Defendant's loans.  For the reasons stated

12  below, Plaintiffs believe the facts in this case warrant at least a limited disclosure of those putative Class

13  members who have complained to World or who have lost, or are in the process of losing their homes

14  through foreclosure.

15

16  **II.    ARGUMENT**

17      **A.    The Interrogatory Seeks Probative, Relevant Information**

18       As alleged, and as has been the subject of recent news reports, Defendant failed to disclose

19  important material information to borrowers about Defendant's Option ARM loan product, World's

20  "Pick-A-Payment Loan."  Defendant's failures to disclose important material facts has placed two of the

21  six named Plaintiffs and thousands of other consumers in imminent threat of losing their homes.  See

22  Corrected Second Amended Complaint ("CSAC"), ¶¶ 23 and 42; http://cbs5.com/investigates "Bank

23  Faces Questions Over Bay Area Home Lending" (May 20, 2008).

24       CBS5's investigative report exposed several segments from Defendant's training videos.  These

25  videos instruct World's agents and brokers to avoid direct questions about the negative amortization

26  purposefully built into Defendant's loans.  The training videos went so far as to target specific consumer

27  types.  For example, a training video entitled the "Blue Collar Borrower" scenario, instructs agents on

28  how to avoid direct questions about negative amortization from a "blue collar" borrower:

2

Plts. Reply Mem. P&A's I.S.O. Motion to Compel - C-07-04497 - JF (RSx)

| | | |
|---|---|---|
| Borrower: | If I am paying that minimum payment, I am not actually putting a dent in my principal though, right? My principal and interest they're just gonna keep climbing up, right? | |
| World: | It's optional. | |

In another segment, World instructs mortgage brokers how to induce consumers into loans by using a euphemistic name for the common industry term "negative amortization:"

| | |
|---|---|
| Broker: | Why would I offer a loan with neg. am? |
| World: | As far as negative amortization goes, I know most brokers do refer to it as "neg am," we try to use the words, a little more user friendly, "deferred interest." |

The CBS5 news segment also contains an interview from a retired homeowner who says that he will likely lose his home because of the World "Pick-A-Payment" loan he entered into with Defendants. See http://cbs5.com/investigates "Bank Faces Questions Over Bay Area Home Lending" (May 20, 2008).

Defendant's Opposition fails to address the central issue in this case. The issue is whether Defendant failed to make proper material disclosures *prior to* Plaintiffs entering into Defendant's loans. Instead, Defendant focuses on borrowers' conduct after formation. Defs Op., p. 5, fn. 4; Beens Declaration, ¶¶ 2-7. This case revolves around World's deceptive lending scheme which fraudulently induced borrowers to enter into "Pick-A-Payment" loans. The subsequent conduct of borrowers is irrelevant. Under 12 CFR § 226.17 (b), "Time of disclosures. ***The creditor shall make disclosures before consummation of the transaction***." Whether Defendant violated TILA depends upon the sufficiency of World's disclosures, or lack thereof, made ***before*** Plaintiffs entered into the loans. Similarly, Plaintiffs' Fraudulent Omissions claim is primarily based upon Defendant's failures to disclose and their omission of material facts ***prior to*** Plaintiffs, and others, entering into World's loans. See CSAC, ¶¶ 38-45, 90-104; see also Hinesley v. Oakshade Town Center (2005) 135 Cal.App.4th 289, 301 ("Fraud in the inducement renders the entire contract voidable.")

/ / /

3

Plts. Reply Mem. P&A's I.S.O. Motion to Compel - C-07-04497 - JF (RSx)

1    Moreover, World's attack on its customers payment habits deflects from Defendant's own

2  culpability.  World contributed to its own difficulties by consciously engaging in predatory lending

3  practices.  As one former mortgage broker for Homefield Financial testified:

4    Q:    Who had the loosest guidelines, generally speaking, while you were there?

5    A:    Generally speaking, **World Savings had the loosest guidelines**.

6          . . .

7    Q:    What made World – the criteria for an Option ARM loan through World, what made that

8          the looser or easier for borrowers?

9    A:    **World Savings did not have the credit score requirement**.  They were a portfolio

10          lender.  So if it made sense, they would still do it.  Even though they may not meet a

11          credit score requirement, if there was, you know, a lot of equity in the property, person

12          has been on their job for a long time, they would look at that and still grant the loan verus

13          many other lenders that had a rigid box of guidelines for that day.  If it didn't fit, they

14          probably could not go there.

15          . . .

16    Q:    **All the other lenders that you sold option loan products for, they all had credit score**

17          **criteria except for World?**

18    A:    **Correct**.

19  See True and correct copies of excerpts of the deposition of Jon Finley, Reyes v. Downey Savings and

20  Loan Assn., F.A., et al. U.S.D.C., Central District, Case No. SACV07-0615 AG (CTx) (April 30, 2008),

21  57:22-25; 85:3-15; 86:13-16, Arbogast Decl. Exh. 2.

22    In its opposition, Defendant also argues that "Plaintiffs' claims are not based on any uniformity

23  in the documentation or written materials given by World to borrowers, but instead are dependent on

24  specific individualized financial situations and decisions."  Defs Op., 1:23-25.  Allowing Plaintiffs an

25  opportunity to have an open a channel of communication with persons, like Plaintiffs, who have been

26  duped into purchasing World's "Pick-A-Payment" loans will provide evidence to rebut Defendant's

27  arguments and will greatly "improve [Plaintiffs'] chances of marshalling a successful class action

28  against" Defendant.  Pioneer, 40 Cal.4th at 374.

4

1    Giving distressed borrowers, who have or are about to lose their homes through foreclosure,

2    notice of this action and the means to contact Plaintiffs' counsel will likely lead to discovery of

3    admissible evidence at certification.  This is because it will likely reveal that named Plaintiffs'

4    experiences with World exhibit significant similarities, and that named Plaintiffs' claims are typical of

5    other proposed Class members' claims.  Plts MPA, 5:12-15.   Also, allowing Plaintiffs' counsel to have

6    access to borrowers who have complained to World about negative amortization will undoubtedly reveal

7    numerous other victims of World's unlawful practices.  The existence of other potential victims, who

8    may file individual actions provides a basis for the Court to conclude that class treatment is superior to

9    individual action.  Plts MPA, 5:16-17.

10    Plaintiffs also intend to move for a preliminary injunction preventing Defendant from

11    foreclosing on these borrowers at the same time they move for class certification.  Communication with

12    these borrowers will reveal the magnitude of the problems facing these homeowners.  Also, it will likely

13    disclose how quickly Plaintiffs' counsel will need to act to prevent the wave of foreclosures widely

14    reported by the news media.  Particularly, in a case concerning an Option ARM loan product that is

15    substantially similar to the loans at issue here, one trial court has already issued a preliminary injunction

16    preventing the defendant from foreclosing on the plaintiff, without requiring a bond, based upon

17    "*Plaintiffs strong showing of their likelihood of success on the merits*."  See Avila v. Stearns Lending,

18    Inc. 2008 WL 1378231, at *2 (CD Cal. April 7, 2008) (Not Reported in F.Supp.2d.)

19    Thus, providing a mechanism whereby putative Class members can communicate with putative

20    Class counsel is probative and is likely to result in the discovery of admissible evidence at certification.

21

22    **B.    Less Burdensome Avenues Were Attempted but Thwarted by World**

23    During the meet and confer process, Plaintiffs offered to limit the request's size and breadth to:

24    (i) borrowers who have, or are in the process of being foreclosed upon by World; and (ii) those putative

25    class members who have complained to World about the negative amortization (deferred interest) that

26    was accruing on their loans.  In response to these approaches, Defendant stonewalled and refused to

27    discuss other possible solutions of this issue.

28    / / /

1    For example, one such possibility is that before providing the borrowers contact information,

2    Defendant could send out a privacy notice to borrowers who have complained to World about negative

3    amortization, or who have been, or are in the process of being foreclosed upon World.  See Further

4    Order Re Plaintiffs' Motion to Compel Discovery Responses, In re HP Inkjet Printer Litigation,

5    U.S.D.C. (N.D. Cal.) C 05-3580 (Hon. Patricia V. Trumball presiding), Arbogast Decl. Exh. 3.

6    Another possibility is for Defendant to include in their monthly statements to the putative Class

7    members a neutral letter that merely advises borrowers of this lawsuit, and provides them with

8    Plaintiffs' counsel's contact information.  This approach would minimize Defendant's expense and

9    burden while providing borrowers an avenue to contact Plaintiffs' counsel.  This proposal is neither

10    intrusive nor treads on the putative Class members' privacy interests.

11    Defendant flatly rebuffed these and other potential solutions by refusing to give Plaintiffs'

12    counsel a means of communications with these borrowers, who likely want to contact Plaintiffs' counsel

13    and assist in the prosecution of this litigation.

14

15    **C.    The Minimal Information Plaintiffs Request is Contemplated Under Rule 26**

16    As Salazar observed:

17    > The minimal information Plaintiff requests is indeed contemplated under
18    > the Federal Rules of Civil Procedure ("F.R.C.P.") as basic to the discovery
19    > process.  For example, F.R.C.P. 26(a)(1)(A) requires each party to
     > disclose *before formal discovery begins* "the names, addresses and
     > telephone numbers of each individual likely to have discoverable
20    > information that the disclosing party may use to support its claims and
     > defenses.

21    Salazar v. Avis Budget Group, Inc. (S.D. Cal.) (Oct. 10, 2007) 2007 WL 2990281 at *2; Plts. MPA,

22    12:6-9.

23    Defendant chides Plaintiffs for citing and relying on California law, including the California's

24    Supreme Court's Pioneer decision.   However, this Court recognized that: "While the Court is not bound

25    by state privilege law in a federal question case, **because the rational in Pioneer is persuasive and**

26    **because the requested information has been provided** with respect to the period within the statute of

27    limitations, the motion to compel further responses ... is denied." Palmer v. Stassinos (N.D. Cal.) 2005

28

6

1    WL 3868803, *4.

2       Here, Defendant fails to produce any information or documents by which Plaintiffs may contact

3    the aggrieved borrowers who have been foreclosed upon or who have complained to World about the

4    negative amortization that was purposefully built into these loans.  For this reason Defendant's reliance

5    on this Court's decision in <u>Palmer</u> is misplaced.

6       Defendant's reliance upon <u>Oppenheimer</u>, is similarly misguided.  In fact, the Supreme Court

7    specifically stated:

8           **We do not hold that class members' names and addresses never can**
            **be obtained under the discovery rules**.  There may be instances where
9           this information could be relevant to issues that arise under Rule 23 ... or
            where a party has reason to believe that communication with some
10          members of the class could yield bearing on these or other issues."

11   <u>Oppenheimer</u>, 437 U.S. at 354, fn. 20.

12

13   **D.    The Resulting Public Relations Nightmare Has Already Fallen in World's Lap**

14      In its opposition, World desperately argues against the disclosure of names and addresses of the

15   putative Class members by speculating that the information "might be inadvertently discovered or lost."

16   Defs Op., 5:4-5.  Further, World postulates, "[p]rotective orders notwithstanding, the near-weekly news

17   of such lists being misplaced or stolen from laptops or *offices* shows that the mere existence of such as

18   list increases its risk of compromise."  <u>Id</u>. at 5:5-7.  This is absurd.  While Plaintiffs acknowledge that

19   computer hackers and thieves exist, the chances for such a leak by such persons is just as likely to occur

20   within the confines of World's "offices" as it would in Plaintiffs' counsel's offices.  While protective

21   orders seek to prevent improper disclosure, they are not foolproof.  Such attenuated and speculative

22   circumstances are not a valid reasons to prevent the disclosure of even the most sensitive information

23   when, as here, its relevancy to the litigation has been shown.

24      The now weekly news reports about World's abhorrent loan practices, and its CEO being

25   "sacked," already created the "public relations nightmare" for World.  The remote possibility that

26   thieves may break into Plaintiffs' counsel's offices and disclose the "list" is not a valid reason to

27   withhold relevant information, particularly when Defendant purposefully engineered its own

28   "nightmare."  Moreover, security measures such as file encryption and further limitations on who may

Plts. Reply Mem. P&A's I.S.O. Motion to Compel - C-07-04497 - JF (RSx)

1    have access to the borrowers contact information can assuage World's imagined threat of improper

2    disclosure.

3

4        **E.    Plaintiffs' Request for the Putative Class Members' Contact Information is Genuine**

5        Although Plaintiffs have six (6) named class representatives, each of which adequately represent

6    the class or proposed classes, World postulates that the purpose of the request for the disclosure of

7    names and addresses is so that Plaintiffs' may have "*unfettered* ability to cold-call all of World's

8    customers" to replace or add them to this lawsuit.  This too is absurd.  The plain simple fact is that

9    Defendant enjoys unfettered access to these material witnesses and Plaintiffs merely desire, at the very

10    least, to have the Court provide a method of communication whereby putative Class members can

11    contact Plaintiffs' counsel and share their experiences.

12        Plaintiffs' counsel certainly does not have a desire to "cold call" the nearly 600,000 putative

13    class members and intrude in their lives.  What Plaintiffs do seek is to allow those class members who

14    have complained to World about the negative amortization on their loans, and those who have been

15    foreclosed upon or are in the process of being foreclosed upon, by World to be able to speak with

16    Plaintiffs' counsel.  To this end, there is nothing improper about Plaintiffs' counsels request.

17

18        **F.    World Has Not Yet Produced The Documents It Has Agreed to Produce**

19        While Plaintiffs' first sets of interrogatories and requests for production were served over three

20    (3) months ago, to date, Defendant has not yet produced (1) all versions of the relevant loan documents

21    that it used during the liability period, namely, a copy of each version of the Notes, TILDS, Adjustable

22    Payment Riders, Prepayment Penalty Addendums and Program Disclosures; (2) copies of World's sales

23    protocols, procedures, manuals, sales scripts, form letters, and interoffice memoranda concerning the

24    sales and servicing of the subject World "Pick-A-Payment" Option ARM loans; and (3) copies of all

25    documents that concern customer complaints that relate to prepayment penalties, negative amortization

26    (deferred interest), and the payment schedules or in anyway relate to the terms of the loans that

27    consumers were complaining to World about.

28    / / /

1    To date, all that Defendants have produced are the loan files of the named Plaintiffs.  Thus,

2  contrary to Defendant's arguments, Plaintiffs have <u>not</u> had an "ample opportunity with this discovery to

3  explore and test the claims they have made about the disclosures that World makes to borrowers

4  concerning the terms of the "Pick-A-Payment" product."  Defs Op., 3:14-16.

5  **V.    CONCLUSION**

6    For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to

7  compel Defendant World Savings Bank, FSB to provide a full and complete, *verified*, responses to

8  Plaintiff's Interrogatory No. 5 seeking identity and contact information of the putative class members.

9    In the alternative, Plaintiffs requests the Court entertain other possible alternatives, such as

10  requiring Defendant to send a Privacy Notice along with a Refusal of Consent form allowing the

11  putative class members to assert their own privacy interests, or merely require Defendant to include in

12  the borrowers monthly billing statements, a neutral notice of the instant action with Plaintiffs' counsel's

13  contact information so that those class member who wish to contact Plaintiffs counsel may do so if they

14  wish.

15                                    Respectfully submitted,

16  DATED:  June 4, 2008            **ARBOGAST & BERNS LLP**

17
                        By:    */s/ David M. Arbogast*
18                             David M. Arbogast, Esq.
                               19510 Ventura Boulevard, Suite 200
19                             Tarzana, California 91356.
                               Phone:  (818) 961-2000; Fax: (310) 861-1775
20
                               Paul R. Kiesel, Esq.
21                             Patrick Deblase, Esq.
                               Michael C. Eyerly, Esq.
22                             **KIESEL BOUCHER LARSON LLP**
                               8648 Wilshire Boulevard
23                             Beverly Hills, California 90210
                               Phone:  (310) 854-4444; Fax:  (310) 854-0812
24
                               Jonathan Shub (SBN 237708)
25                             **SEEGER WEISS LLP**
                               1515 Market Street, Suite 1380
26                             Philadelphia, PA 19107
                               Phone: (215) 564-2300; Fax (215) 851-8029
27
                               Attorney for Plaintiffs and all others Similarly Situated
28

9