David M. Arbogast (SBN 167571)
darbogasta@law111.com
Jeffrey K. Berns, Esq. (SBN 131351)
jberns@jeffbernslaw.com
**ARBOGAST & BERNS LLP**
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000; Fax: (818) 867-4820

Paul R. Kiesel, Esq. (SBN 119854)
kiesel@kbla.com
Patrick DeBlase, Esq. (SBN 167138)
deblase@kbla.com
Michael C. Eyerly, Esq. (SBN 178693)
eyerly@kbla.com
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211
Phone:  (310) 854-4444
Fax:  (310) 854-0812

Attorneys for Plaintiffs and all others Similarly Situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

| | |
|---|---|
| DOLORES MANDRIGUES, JUANITA JONES, AL F. MINYEN and WILMA R. MINYEN, MARK CLAUSON and CHRISTINA CLAUSON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WORLD SAVINGS, INC., WORLD SAVINGS BANK, FSB, WACHOVIA MORTGAGE CORPORATION, and DOES 1 through 10 inclusive, <br><br> Defendants. | **CASE NO. C-07-4497 JF (RSx)** <br><br> CLASS ACTION <br><br> **PLAINTIFFS' REPLY TO WORLD'S OBJECTIONS TO EVIDENCE SUBMITTED WITH PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** <br><br> Hearing Date: June 18, 2008 <br> Time:           9:30 a.m. <br> Place:          Courtroom 4 <br> Judge:          Hon. Richard Seeborg <br><br> Complaint Filed: August 30, 2007 <br> Trial Date: Not set yet. |

1   Plaintiff submits this reply memorandum in opposition to Defendant World Savings Bank,
2   FSB'S (now known as and appearing as Wachovia Mortgage, FSB) Objections to Evidence Submitted
3   with Plaintiffs' Reply Memorandum in Support of Motion to Compel.

**Objection No. 1 - The "CBS5 Investigative Report"** (Reply at 2:22-3:15)

Defendant has objected to Plaintiffs citation to the CBS5 Investigative Report on the grounds that it is allegedly (1) irrelevant; (2) is unfairly prejudicial; (3) lacks proper foundation; (4) it contains hearsay, and (5) it violates the best evidence rule.

Overview: The CBS5 Investigative Report contains visual depictions of, among other things, a table full of World training and instructional videos, one of which is entitled the "Blue Collar Borrower" scenario. The Report also contains audio and video portions from those videos which confirm Plaintiffs' allegations that World engaged in a common scheme to deceive consumers from leaning the true facts, that the ARM loans sold to Plaintiffs were negative amortization loans.

Relevance: The cited to portions of the CBS5 Investigative Report are relevant to rebut Defendant's arguments that Plaintiffs had not shown "any basis for certification" (Op. 1:8-9), and that (1) Plaintiffs' "experiences are not representative of or common to the putative class," "not based on the uniformity [of information] given by World to borrowers, but instead are dependent on specific individualized [inquiry]." (Op, 1:23-25). Certainly, the existence of these training tapes depicting World's employees training others on how to deceive and conceal from borrowers the severe consequences of negative amortization is, at the very least, common evidence of Defendant's knowledge and understanding of its failures to disclose and omission of material facts as alleged by Plaintiffs. Because the existence of common proof of Defendant's knowledge and awareness of its failures to disclose and omissions demonstrates that this issue can be determined on a class-wide basis, therefore, it is directly relevant to the class certification question.

"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401; <u>United States v. Boulware</u> (9th Cir. 2004) 384 F3d 794, 805—evidence need not prove anything but only must have tendency to prove fact in issue.

1    At the very least, the CBS5 Investigative Report demonstrates that common, class-wide, evidence is available and it also disproves or has a tendency to disprove Defendant's argument that Plaintiffs have not shown "any basis for certification" (Op. 1:8-9).

The Probative Value is Not *Substantially* Outweighed Unfair Prejudice:   The Court in its discretion may exclude otherwise relevant evidence "if its probative value is *substantially outweighed* by the danger of unfair prejudice ..." Fed.R.Evid. 403; Swajian v. General Motors Corp. (1st Cir. 1990) 916 F2d 31, 34–35 – relevant evidence may only be excluded under Rule 403 when its probative value is substantially outweighed by the risk of unfair prejudice (or one of the other specified risks).

"Unfair prejudice ... means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403, Adv. Comm. Notes; Old Chief v. United States (1997) 519 U.S. 172, 180, 181.

The fact that excerpts from the CBS5 Investigative Report are damaging are not enough.  In fact, most evidence is "prejudicial" to the party against whom it is offered.   But that is not enough to exclude it under Rule 403: Rule 403 only guards against "unfair prejudice, not prejudice per se ... " United States v. Benedetti (1st Cir. 2005) 433 F3d 111, 117–118—trials were never meant to be "antiseptic affairs" (internal quotes omitted).  Moreover, "unfair prejudice" does not mean the damage to Defendant's case that results from the legitimate probative force of the evidence; rather it refers to the evidence which tends to suggest a decision on an improper basis." United States v. Winkle (6th Cir. 2007) 477 F3d 407, 417 (internal quotes omitted).

Lastly, as to Defendant's argument that the cited to portions or the CBS5 Investigative Report have "not been substantiated," (World's Obj., 1:16),  lack of credibility does not itself constitute "unfair prejudice" under Rule 403. Rainey v. Conerly (4th Cir. 1992) 973 F2d 321, 325—Rule 403 does not permit exclusion of evidence simply because a judge may find it improbable.

Beyond Defendant's hollow cry of "prejudice," Defendant fails to demonstrate how the Court could possibly be prejudiced in watching the news clip of a publicly broadcasted segment on CBS5. The cited to portions of the CBS5 Investigative Report are extremely probative of the issue of the existence of common class-wide evidence to support Plaintiff class allegations,  and are not outweighed

1  by any danger of unfair prejudice.

2

3  <u>The CBS5 Investigative Report is Self-Authenticating</u>:  The CBS5 Investigative Report is
4  publically available at http://cbs5.com/investigates ("Bank Faces Questions Over Bay Area Home
5  Lending" ) (May 20, 2008).  Under Fed.R.Evid. Rule 902 (b) (6), extrinsic evidence of authenticity as a
6  condition precedent to admissibility is ***not required*** with respect to newspapers and periodals.  While
7  videotape excerpts of news reports are not specifically listed under Rule 902(b), the list was not
8  intended as an exclusive enumeration of the allowable methods of authentication.  The Rule was
9  purposely drafted to provide flexibility and allow authentication of forms of evidence that the drafters
10 could not have anticipated. <u>See</u> <u>United States v. Simpson</u> (10th Cir. 1998) 152 F3d 1241,
11 1249—authentication of Internet "chat room" logs; <u>United States v. Burt</u> (7th Cir. 2007) 495 F3d 733,
12 738–740.
13         Here, Plaintiffs have offered excerpts of the CBS5 Investigative Report to show: (1) the
14 existence of World training videos concerning the negative amortization feature of the subject loans; and
15 (2) for the admissions made by World's employees in those CD's.  In addition, the only "interviewee"
16 cited from the CBS5 Investigative Report is the portion of the video which depicts a man sitting in front
17 of, and inside his house where he states that he will likely lose his home because of World's "Pick-A-
18 Payment" loan.  Nevertheless, Defendant objects on the grounds that this homeowner lacks "personal
19 knowledge."
20         Fed. R. Evid. 602 provides that "A witness may not testify to a matter unless evidence is
21 introduced sufficient to support a finding that the witness has personal knowledge of the matter."
22 Certainly this homeowner knows about the facts to which he speaks because he states his personal
23 knowledge and experiences with World in the video.  However, Plaintiffs only proffer this portion of the
24 Investigation Report to demonstrate that it is extremely likely that a large number of the putative class
25 who would want to be advised of this action and provided information so as to be able to contact
26 Plaintiffs' counsel and assist in the prosecution of this action.
27 / / /
28 / / /

Defendant's Hearsay Objection:

1. <u>Pictures of the World Training Videos</u>: The visual portions of the CBS5 Investigation Report depicting a table full of World Training Video's, and a close-up of the "Blue Collar Borrower" scenario is not hearsay and therefore is admissible. Only the reporters narration of this portion of the Investigative Report contains statements which may be subject to the hearsay rule. However, during these portions, the reporter is just describing what the CD's are (World training videos) and thus, these statements are admissible under Fed. R. Evid. 803(1) as present sense impressions ( "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" *is not excluded by the hearsay rule regardless of whether the declarant is available to testify*.)

2. <u>Excerpt's of World's Training Videos</u>: The statements made by World's employees in the training videos are admissions of a party opponent and are not hearsay. An admission is an out-of-court "statement ... offered against a party." Fed.R.Evid. 801(d)(2) (emphasis added). The out-of-court "statement" may be written or oral or assertive conduct by (or on behalf of or imputable to) an opposing party. Fed. R. Evid. 801(a).

3. <u>Statements of World Borrower that He May Lose His Home</u>: The cited to statements of the World "Pick-A-Payment" borrower about his experience with World, that he may lose his home because he was sold one the subject loans, is not being offered for the truth of the matter asserted and thus is not hearsay. An out-of-court statement offered for any purpose other than to prove its truth is non-hearsay. <u>Swirsky v. Carey</u> (9th Cir. 2004) 376 F3d 841, 852. As stated above, Plaintiffs merely cited to this portion of the video to demonstrate the existence of class members who are likely to want to be provided with Plaintiffs' counsels contact information so that they may learn more about the case and assist in the prosecution. The statement is not offered for the truth of what this man said but rather, merely to demonstrate the likelihood that there are class members who are likely to assist Plaintiff's counsel in marshalling a successful class action against World. <u>See</u>, e.g., <u>Pioneer Electronics (USA), Inc. v. Superior Court</u> (2007) 40 Cal.4th 360, 374.

<u>Citation to the CBS5 Investigative Report Does Not Violate the Best Evidence Rule</u>: "To prove the content of a writing, recording, or photograph, the original writing, recording or photograph is required, except as otherwise provided in these rules or by Act of Congress." Fed. R. Evid. 1002. The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing. Fed. R. Evid. 1002, Adv. Comm. Notes; <u>United States v. Ross</u> (11th Cir. 1994) 33 F.3d 1507, 1513; <u>United States v. Holton</u> (DC Cir. 1997) 116 F.3d 1536, 1545. The best evidence rule is an exclusionary rule (excluding secondary evidence ***absent satisfactory explanation for the failure to produce the original***). <u>See</u> Fed. R. Evid. 1002, Adv. Comm. Notes.

Here, the CBS5 Investigative Report is publically available at http://cbs5.com/investigates and may be viewed in its original form by logging onto CBS5's website. Further, World's Training Videos depicted in the Investigative Report are not in Plaintiffs possession and are presumably in the possession of Defendant since it is their training videos! Because the originals of the World's video tapes are, or should be, in World's possession, Defendant's objection that Plaintiffs have not produced the originals is nonsense.

**Objection No. 2 - Deposition Excepts of Jon Finley** (Reply at 4:4-18)

Defendant objects to the cited to excerpts of the deposition transcript of Jon Finley, <u>Reyes v. Downey Savings and Loan Assn., F.A, et al.</u> on the grounds that his testimony is allegedly (1) irrelevant; (2) unfairly prejudicial; and (3) lack proper foundation.

<u>Overview</u>:  Defendant argued in its opposition "that the only borrowers with Pick-A-Pay ARMs who are at risk of, or are in, foreclosure are those who have failed to make payments on their mortgage – typically because they have lost their job or suffered a pay cut – not because they received inadequate disclosure about their loan." Op., 5, fn 4. Defendant then attacks two of the named Plaintiffs and attaches the Declaration of Lisa Beens in alleged support, which is nothing more than attempt to blame the victims. Moreover, notwithstanding that post contract formation conduct is completely irrelevant to Plaintiffs TILA and Fraudulent Omissions claims, Plaintiffs proffered the testimony of Jon Finley, a mortgage broker for Homefield Financial, who was trained by World (weekly) and who has personally sold World's Pick-A-Pay ARM Loans.

1       Relevance:   The testimony of Jon Finley is relevant as it either proves or has a tendency to prove that the cause of the wave of foreclosures is because: (1) Defendant failed to disclose important material information to borrowers, prior to entering into the loans; and (2) to the extent that post formation conduct is relevant, the primary cause for borrowers difficulty in keeping up with their legal obligations (payments of both principal and interest), is primarily due to Defendant's own underwriting guidelines (or lack thereof).   Moreover, World's "*loosest*" underwriting "guidelines," which did not have a credit score requirement and are primarily based on the equity borrowers had in their homes, was the genesis, if not the primary cause of borrowers post formation failure to keep up with their payments.

      The cited to portions of the deposition excerpts of Jon Finley about World's underwriting guidelines (or lack thereof) are therefore directly relevant to rebut World's attempt to blame the victims of its deceptive practices.

The Probative Value of the Testimony is Not *Substantially* Outweighed By Unfair Prejudice:

      As stated above, "unfair prejudice" does not mean the damage to Defendant's case that results from the legitimate probative force of the evidence.." United States v. Winkle, 477 F3d at 417.  The probative value, which tends to show or negates Defendant's attack on World's borrowers post formation conduct, is not outweighed merely because it damages the credibility of Defendant's arguments.  While this case primarily concerns Defendant's failures to disclose and omissions of material fact during the contract formation stage, as demonstrated by Defendant's opposition and the Declaration of Lisa Beens, Defendant has, and is likely to attempt to interject borrowers post formation conduct as a defense to class certification.

      Moreover, Plaintiffs have objected to portions of Defendant's opposition and the Declaration of Lisa Beens on the grounds that borrowers post formation conduct is (1) completely irrelevant to the issue of Defendant's failure to disclose and omission of material facts ***prior to*** borrowers entering into the loans; (2) are inadmissible hearsay; and (3) violates the best evidence rule since Defendant neither proffered the originals or copies of the records upon which the arguments and statements were allegedly based.  Nor has there been any explanation, let alone a *satisfactory explanation,* for Defendant's failure to produce these documents.

-7-

PLAINTIFFS' REPLY TO WORLD'S OBJECTIONS - C-07-4497 JF (RSx)

1    Thus, to the extent that the Court permits Defendant to make such arguments and introduce
2  "evidence" of borrowers post formation conduct, the highly probative value of the genesis, if not the
3  cause, for borrowers getting put into the World "Pick-A-Pay" loan is not outweighed by any perceived
4  unfair prejudice that could result from the introduction of this testimony.

6    Sufficient Foundation for the Admission of Jon Finley's Testimony has been Provided:
7    Jon Finley worked for Homefield Financial in 2004. Finley Dep. Tr. 5:12-19, Arbogast Decl.
8  Exh. 3. Mr. Finley testified about his personal knowledge of lending guidelines of Indymac,
9  Countrywide, First Franklin, and Homefield Financial. Id. at 57:6-21. He also testified about the
10 weekly training he received from World during 2004 while he worked for Homefield.

12   Q:   Did you receive any training specifically to World option ARM loans as opposed to
13        Downey option ARM loans?
14   A:   **There was a World account representative that came by once a week** and she would,
15        you know, help us, you know, with the things. But we would go to them if we couldn't
16        get approved anywhere else. It was usually a call. "This is what I have, do you think you
17        can do this loan," and they would call and tell us.
18   Q:   **And World actually had an account representative come to your guys' office on a**
19        **weekly basis**?
20   A:   **Correct**.
21 See Finley Dep. Tr. 85:16-86:3, Arbogast Decl. Exh. 3.
22   Under Rule 602, "[a] witness may not testify to a matter unless evidence is introduced
23 sufficient to support a finding that the witness has personal knowledge of the matter." In addition, Rule
24 701, lay witnesses may give opinion testimony if it is "rationally based on the perception of the
25 witness."
26   Here, the above referenced deposition excerpts demonstrate Mr. Finley's personal knowledge
27 through his dealings with Defendant. Fed. R. Evid. 602; United States v. Lake (3rd Cir. 1998) 150 F.3d
28 269, 273 ("A witness' personal knowledge of a matter may be shown by any admissible evidence,

1  including the witness' own testimony.)  Mr. Finley's statements are therefore admissible because they
2  are based upon what he actually observed or perceived through his or her own senses.

3  In its objections, Defendant apparently argues that Mr. Finley's testimony about what he
4  personally observed and knew about World's lending practices can only be admitted through expert
5  testimony.  See World's Obj., 3:1-3 ( "Plaintiffs offer no evidence about Mr. Finley's identity,
6  background, or credentials.")

7  Experts who possess certain qualifications and knowledge may give opinion testimony not
8  based on personal knowledge. Fed. R. Evid. 702, 703; see also United States v. de Soto (7th Cir. 1989)
9  885 F2d 354, 361 (officer's testimony on drug dealers' "countersurveillance techniques" was based on
10 special knowledge and experience).  Thus, because Mr. Finley's testimony is based upon his own
11 perceptions and experiences with World, the Court need not qualify him as an expert to admit his
12 testimony.  Nevertheless, if disputed, the foundational facts required for admissibility of expert opinion
13 testimony (e.g., witness' specialized knowledge, skill, experience, etc.) must be determined by the court.
14 See Fed. R. Evid. 104(a); Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993) 509 US 579, 593.  If the
15 witness is shown to have specialized knowledge that will assist the trier of fact, it is an abuse of
16 discretion to exclude the expert's testimony simply because he or she is not the "best" qualified person.
17 ***The degree of expertise or knowledge goes to the weight of the testimony rather than its admissibility***.
18 Holbrook v. Lykes Bros. S.S. Co. (3rd Cir. 1996) 80 F.3d 777, 782; McCullock v. H.B. Fuller Co. (2nd
19 Cir. 1995) 61 F.3d 1038, 1043; Huval v. Offshore Pipelines, Inc. (5th Cir. 1996) 86 F.3d 454, 457–458.

20 Here, the submitted deposition excerpts identify Mr. Finley, by name and as a former
21 employee of Homefield Financial, ***who received weekly training from World about its underwriting***
22 ***guidelines***, and regularly sold World option ARM loans during the liability period, August 29, 2003 to
23 the present.

24 Thus, Mr. Finley's testimony should be admitted and the Court can place whatever weight it
25 deems appropriate to his testimony.

26 / / /
27 / / /
28 / / /

## **CONCLUSION**

Plaintiffs respectfully request that the Court overrule the cited to portions of the CBS5 Investigative Report, and deposition excerpts of the testimony of Jon Finley.

DATED: June 16, 2008 **ARBOGAST & BERNS LLP**

By:  */s/ David M. Arbogast*
David M. Arbogast, Esq.
Jeffrey K. Berns, Esq.
19510 Ventura Boulevard, Suite 200
Tarzana, California 91356.
Phone: (818) 961-2000; Fax: (310) 861-1775

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
**KIESEL BOUCHER LARSON LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone: (310) 854-4444; Fax: (310) 854-0812

Jonathan Shub (SBN 237708)
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300; Fax (215) 851-8029

Attorney for Plaintiffs DOLORES MANDRIGUES, JUANITA JONES, AL F. MINYEN and WILMA R. MINYEN, MARK CLAUSON and CHRISTINA CLAUSON and all others Similarly Situated