\*\*E-Filed 1/20/09\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DOLORES MANDRIGUES, JUANITA JONES, AL F. MINYEN, WILMA R. MINYEN, MARK CLAUSON, and CHRISTINA CLAUSON, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WORLD SAVINGS, INC., WORLD SAVINGS BANK FSB, and WACHOVIA MORTGAGE CORPORATION,<br><br>Defendants. | Case Number C 07-4497 JF (RS)<br><br>**ORDER[1] DENYING MOTION FOR PRELIMINARY INJUNCTION AND ENTERING STAY OF ACTION** |

Plaintiffs Dolores Mandrigues, Juanita Jones, Al Minyen, Wilma Minyen, Mark Clauson, and Christina Clauson ("Plaintiffs") allege violations of the federal Truth in Lending Act ("TILA") and state-law claims for unfair business practices, breach of contract, and breach of the implied covenant of good faith and fair dealing. Plaintiffs allege that Defendants World Savings, Inc. and Wachovia Mortgage Corporation ("Defendants") failed to disclose important

---

[1] This disposition is not designated for publication in the official reports.

information about their home mortgages in the clear and conspicuous manner required by law. On April 9, 2008, this Court denied Defendants' motion to dismiss Plaintiffs' complaint. On November 7, 2008, Plaintiffs moved to certify several classes of similarly situated individuals and for a class-wide preliminary injunction. Plaintiffs request that the Court preliminarily enjoin Defendants from foreclosing upon any of the approximately 500,000 putative class member' loans.

On November 21, 2008, Defendants filed an administrative request seeking a stay of the instant action on the ground that it currently is the subject of a transfer motion pending before the Joint Panel on Multidistrict Litigation ("JPML"). Evaluating Defendants' request by reference to the factors governing the issuance of stays, the Court determined that, at least based on the concededly incomplete record and briefing then before it, Plaintiffs were likely enough to succeed in demonstrating an entitlement to class certification and some form of preliminary injunctive relief that countervailing considerations of judicial economy did not justify imposition of a stay.[2] Accordingly, the Court declined to vacate the scheduled hearing on Plaintiffs' motions.

With the benefit of full briefing and a complete record, it is now apparent that Plaintiffs are unable to demonstrate an entitlement to the sweeping preliminary injunctive relief they seek. Plaintiffs cannot show that they are likely to suffer imminent, irreparable harm, and their motion accordingly must be denied. Moreover, because considerations of judicial economy still weigh heavily in favor of a stay during the pendency of the JPML proceedings, and because the countervailing possibility that Plaintiffs otherwise would suffer imminent, irreparable harm has been shown not to exist, the Court will order the instant action stayed pending a decision by the

---

[2] The Court observed that "much as '[a] preliminary injunction is not a preliminary adjudication on the merits, but a device for preserving the status quo and preventing irreparable loss of rights before judgment,' the present inquiry concerns only whether Plaintiffs are likely enough to succeed in obtaining preliminary injunctive relief that the Court should preserve their right to proceed without further delay, notwithstanding the countervailing interest of judicial economy." Order Denying Request for Administrative Relief, at 4:18-24 (quoting *Textile Unlimited, Inc. v. ABMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir. 2001)).

JPML.

## I. BACKGROUND

Plaintiffs and the putative class members each entered an agreement for an Option Adjustable Rate Mortgage product known as the "Pick-a-Payment" loan. Such loans permitted each borrower to chose an initial payment level corresponding to his or her financial situation. The payment levels included: (1) a "Minimum Payment" calculated using an "internal" rate and not guaranteed to cover all of the interest due in a given month; (2) an interest-only payment designed to ensure coverage of all interest due each month; and (3) a payment comparable to that on a fixed-rate loan, calculated to retire the loan evenly over its thirty-year term.

In connection with the loan transaction, each Plaintiff and the putative class members received a federally mandated Truth in Lending Disclosure Statement ("Statement") and a Loan Program Disclosure ("Disclosure") with information specific to the loan under consideration.[3] The Statement disclosed the cost of the loan as an Annual Percentage Rate ("APR") and provided a schedule of estimated payments ("Payment Schedule"). The Payment Schedule listed an initial minimum payment that increased by up to 7.5% each year on a specified payment change date. The loans provided for re-amortization when the principal balance exceeded either 110% or 125% of its original value, a process known as "recasting." A loan may reach its balance cap when the borrower's monthly payment routinely is insufficient to cover all of the interest due in a given month, resulting in the addition of excess interest to the principal balance. This phenomenon is known as negative amortization.

Plaintiffs claim that the loan documents failed clearly and conspicuously to disclose the interest rate structure applicable to their loans and the purported certainty that negative amortization would occur if they made only the minimum payments. On this basis, Plaintiffs

---

[3] Consideration of these materials is proper pursuant to Federal Rule of Civil Procedure 10(c), which states that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." In addition to the above documents, several of the named Plaintiffs and many of the putative class members received additional documentation and oral representations concerning their loans. The instant disposition does not require reference to these materials.

allege multiple violations of TILA's implementing regulations, contained in Title 12 of the Code of Federal Regulations ("Regulation Z"). Primarily, they claim that Defendants failed adequately to disclose (1) the cost of credit, presumably expressed as an APR, (2) that negative amortization was certain to occur if Plaintiffs followed the Payment Schedule; and (3) the effect of the payment cap on the cost of the loan. Plaintiffs also allege that by failing adequately to make the foregoing disclosures, Defendants committed fraud as well as unlawful, unfair, and fraudulent business practices in violation of § 17200 of the California Business and Professions Code. Finally, Plaintiffs claim that, by failing to apply each payment to "principal and interest," Defendants breached both the express terms of the Note and the implied covenant of good faith and fair dealing contained in every contract under California law. Plaintiffs seek an award of statutory damages on behalf of a putative nationwide class, and a "reallocation" of allegedly improper additions to Plaintiffs' and the putative class members' principal balances–in effect reversing any negative amortization that may have occurred.

## II. LEGAL STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008). A party seeking a preliminary injunction must show either "(1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980). These "two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the possibility of success decreases." *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985).

"Regardless of how the test for a preliminary injunction is phrased, the moving party must demonstrate irreparable harm." *American Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing grant of preliminary injunction because movant failed to offer evidence of irreparable harm). It is not enough that the claimed harm be irreparable; it also must be imminent. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d

668, 674 (9th Cir. 1988); *Los Angeles Mem'l Coliseum*, 634 F.2d at 1201. "A plaintiff must do more than merely allege imminent harm . . . ; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co.*, 844 F.2d at 674. This threat must be shown by probative evidence, *Bell Atl. Bus. Sys., Inc. v. Storage Tech. Corp.*, No. C-94-0235, 1994 WL 125173, at *3 (N.D. Cal. Mar. 31, 1994) (denying preliminary injunction motion because movant failed to show sufficient evidence of threat of irreparable harm), and conclusory affidavits are insufficient. *American Passage*, 750 F.2d at 1473; *see also K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972).

In addition, where injunctive relief is sought on a class-wide basis, the moving party must prove that (1) the named plaintiffs face imminent, irreparable harm, and (2) there is reason to believe that the putative class members face the same harm. *Angotti v. Rexam, Inc.*, No. C 05-5264 CW, 2006 WL 1646135, at *14-15 (N.D. Cal. June 14, 2006).[4] Finally, any preliminary injunction "must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983)).

### III. DISCUSSION

**A. Irreparable Harm**

Plaintiffs, on behalf of the absent class members, assert two forms of irreparable harm: (1) a purportedly imminent risk of foreclosure; and (2) the risk that if foreclosed upon, Plaintiffs will lose their right under TILA to rescind their loans. With respect to the first contention, Plaintiffs are correct that foreclosure under certain circumstances may constitute irreparable harm. *See, e.g., Nichols v. Deutsche Bank Nat. Trust Co.*, Civ. No. 07-2039-L(NLS), 2007 WL 4181111, at *2 (S.D. Cal. Nov. 7, 2007) (noting that "the imminent foreclosure of Plaintiff's

---

[4] While there is no directly controlling authority on this point, the court in *Angotti* followed the Second Circuit's approach in *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48 (2d Cir. 2004), concluding that such an approach was "consistent with the approach so far taken by the Ninth Circuit." *Angotti*, 2006 WL 1646135, at *15 (discussing *Beltran v. Meyers*, 677 F.2d 1317, 1322 (9th Cir. 1982)).

residence presents a threat of irreparable harm," and citing *Sundance Land Corp. v. Comty First Fed. Sav. & Loan Ass'n*, 840 F.2d 653, 661 (9th Cir.1988)).  However, whether a particular foreclosure constitutes irreparable harm turns in part on the reasons for foreclosure.  *See Parker v. U.S. Dep't of Agric.*, 879 F.2d 1362, 1367-68 (6th Cir. 1989) (finding that foreclosure did not constitute irreparable harm where borrower declined to avail itself of remedies offered by lender); *see also Alcaraz v. Wachovia Mortgage FSB*, No. CV F 08-1640 LJO, 2009 WL 30297, at *4 (E.D. Cal. Jan. 6, 2009) (denying motion for preliminary injunction because while the "loss of a home is a serious injury[,] . . . . the record suggests that Ms. Alcaraz sought a loan beyond her financial means and expectation of job loss[,] . . . [and the] resulting harm does not alone entitle her to injunctive relief").

Consistent with the foregoing, Plaintiffs must link the allegedly deceptive loan documents at issue in this case to the likelihood that they will default and suffer foreclosure. Plaintiffs attempt to do so by reference to the subject loans' recasting provisions.  As explained above, recasting involves a re-amortization of the remaining principal balance when that balance reaches a certain limit.  The loans in question contain a balance cap set at either 110% or 125%. When a loan reaches that percentage, presumably as a result of negative amortization, the remaining principal is re-amortized and paid off in equal monthly installments over the remaining term of the loan.  Recasting overrides any payment cap included in the loan and therefore may result in a sudden increase in the payment amount.  Plaintiffs postulate that such payment increases impair a borrower's ability to make monthly payments and thus increase the incidence of foreclosures.

While Plaintiffs' theory is a plausible one, there is a paucity of evidence in the record that (1) the named Plaintiffs' loans are expected to recast in the near future, or (2) the putative class will experience recasting in significant numbers.  *Cf. Angotti v. Rexam, Inc.*, No. C 05-5264 CW, 2006 WL 1646135, at *14-15  (N.D. Cal. June 14, 2006).  With respect to the named Plaintiffs, it appears that none of their loans will recast until 2013 at the earliest,

assuming current interest rates. *See* Roberts Decl. ¶ 13.[5]  With respect to the putative class, Plaintiffs have pointed to generalized evidence that foreclosures are rising in number.  *See* Pls.' Reply at 3:14-18 (citing Defendants' financial statements, Scholz Decl., Ex. A, Pt. 2, at 29-30). However, Defendants have presented sworn declarations stating that (1) between November 2007 and November 2008, only nine of Defendants' Pick-a-Pay loans recast as a result of reaching their balance cap, and (2) in 2009, only 27 out of approximately 270,000 loans will recast for the same reason.  Plaintiffs fail to rebut this showing in their reply papers and supporting materials.[6]  In light of that failure, and given the generality of Plaintiffs' initial evidence, the current record provides an inadequate basis for granting the sweeping injunction that Plaintiffs seek.

Plaintiffs also fail to demonstrate the likelihood of imminent, irreparable harm as a result of the loss of their rescission rights upon foreclosure.  Plaintiffs are correct that foreclosure, even though involuntary, is a "sale" within the meaning of 15 U.S.C. § 1635(f) and 12 C.F.R. § 226.23(a)(3), and terminates TILA's extended three-year rescission period.  *See Hallas v. Ameriquest Mortgage Co.*, 406 F. Supp. 2d 1176, 1183 (D. Or. 2005) (holding that "foreclosure sale has terminated Plaintiff's right of rescission"); *see also Marschner v. RJR Fin. Servs., Inc.*, 382 F. Supp. 2d 918, 921 (E.D. Mich. 2005) (observing that a "foreclosure sale would terminate an unexpired right to rescind").  However, Plaintiffs either (1) allege violations that do not appear to trigger an extended right of rescission, or (2) allege violations that may trigger such a right, but as to which Plaintiffs are unlikely to succeed on the merits.

---

[5] Plaintiffs have filed evidentiary objections to ¶ 12 of the declaration of Victoria Barone, which also attests to the above-referenced facts, but Plaintiffs do not contest the facts themselves.

[6] After filing their reply but prior to oral argument, Plaintiffs filed four additional declarations in an attempt to demonstrate imminent, irreparable harm.  These declarations contain evidence of a significant number of foreclosure proceedings instituted by Defendants and attest to the appalling hardship suffered by the individuals subject to foreclosure.  However, the declarations provide no further link between the illegalities alleged in the complaint and the foreclosures themselves.  *See* O'Tool, Golant, Mandel, and Berns Declarations, filed Jan. 15, 2009.  Without such evidence, the Court cannot grant an injunction of the breadth Plaintiffs seek.

Only "material" violations of TILA, as set forth in 12 C.F.R. § 226.23(a)(3) & n.48, will trigger the extended rescission period.  Courts have explained that when a loan contains a variable rate feature, TILA mandates two sets of disclosures: those set forth in 12 C.F.R. § 226.19(b)(1)-(2), which require disclosures with respect to negative amortization, and those set forth in 226.18(f)(2), which require two statements prior to consummation of the loan transaction: (1) "that the transaction contains a variable-rate feature;" and (2) "that variable-rate disclosures have been provided earlier."  *See Ngwa v. Castle Point Mortg., Inc.*, No. 08 Civ. 0859(AJP), 2008 WL 3891263, at *10 (S.D.N.Y. Aug. 20, 2008) (emphasis added) (citing 15 U.S.C. § 1635(f), 12 C.F.R. § 226.23(a)(3), and *Pulphus v. Sullivan*, No. 02 C 5794, 2003 WL 1964333, at *14 (N.D. Ill. Apr. 28, 2003)).

> [O]nly the second set of disclosures are considered "material disclosures" which, if not provided before consummation of the transaction, will trigger the extended rescission period.  Failure to provide the first set of variable-rate disclosures, while still a violation of the statute, "may subject [the lender] to other sanctions, but it will not extend the rescission period granted to the consumer."

*Id.* (quoting *Pulphus*, 2003 WL 1964333, at *14 ); *see also Pulphus*, 2003 WL 1964333, at *14 ("The plain meaning of the Board's commentary on 12 C.F.R. § 226.23(a)(3) is that only one variable rate disclosure violation–a lender's failure to disclose the existence of a variable rate feature–tolls the rescission period."); Federal Reserve Board Staff Commentary, 12 C.F.R. Pt. 226, Supp. I, cmt. § 226.23 ("Footnote 48 sets forth the material disclosures that must be provided before the rescission period can begin to run.  Failure to provide information regarding the annual percentage rate also includes failure to inform the consumer of the existence of a variable rate feature.  *Failure to give the other required disclosures does not prevent the running of the rescission period, although that failure may result in civil liability or administrative sanctions.*").[7]

---

[7] TILA is implemented by the Federal Reserve Board of Governors ("FRB") through regulations found in 12 C.F.R. § 226 and through the FRB's Official Staff Commentary ("Commentary").  The Commentary is binding on all lenders, and compliance with it shields an issuer from civil liability pursuant to TILA's safe-harbor provision.  *See* 15 § U.S.C. 1640(f); *see also* 12 C.F.R. Pt. 226, Supp. I-1 ("Good faith compliance with this commentary affords protection from liability under 130(f) of the Truth in Lending Act").

In the instant case, while Plaintiffs dispute the adequacy of the first set of disclosures, particularly with respect to negative amortization, they do not contend that Defendants failed to provide the two statements required by 226.18(f)(2). Thus, even if Plaintiffs were to succeed in showing that Defendants failed to provide adequate disclosures of negative amortization, it appears that this failure would not trigger a right of rescission.[8]

Plaintiffs argue that regardless of whether Defendants' alleged failure to disclose the certainty of negative amortization is a "material" violation, "it is beyond question that [Defendants'] misstatements of the APR" are capable of tolling the statutory rescission period. Plaintiffs are correct that inadequate or misleading disclosure of the APR may constitute a material violation triggering the extended rescission period. *See* 12 C.F.R. § 226.23(a)(3) n.48; *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 941 (9th Cir. 1975) (holding that three-day rescission period was tolled where defendants' disclosures understated the APR). However, as explained below, Defendants are unlikely to prevail on any claim with respect to disclosure of the APR.[9]

---

[8] Defendants argue that *Ngwa* and *Pulphus* are inconsistent with the Ninth Circuit's holdings in *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935, 941 (9th Cir. 1975) and *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 703-04 (9th Cir. 1986). As discussed below, *Ljepava* authorized rescission on the basis of an APR violation, which, if proven, clearly *does* trigger TILA's extended rescission period. With respect to *Semar*, the Ninth Circuit did state generally that "[t]echnical or minor violations of TILA or Reg Z, as well as major violations, impose liability on the creditor and entitle the borrower to rescind." *Semar*, 791 F.2d at 703-04. However, *Semar* involved the lender's wholesale omission on the loan forms of the date from which TILA's three-day rescission period would run. Because the Federal Reserve Board's Staff Commentary stated explicitly that such an omission triggered TILA's extended rescission period, *Williamson v. Lafferty*, 698 F.2d 767, 768-69 (5th Cir. 1983) ("[F]ailure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard[,] [because] . . . . the applicable regulation makes clear that failure to fill in the expiration date of the rescission form is a violation of the TILA.") (citing 12 C.F.R. § 226.9(b) (1982)), the court authorized rescission without reference to materiality. *Semar*, 791 F.2d at 704. In any event, a right of rescission based on Defendants' allegedly inadequate disclosure of negative amortization is sufficiently doubtful that it cannot serve as the basis for the broad injunction that Plaintiffs seek.

[9] Even if Plaintiffs ultimately could demonstrate–in some other lawsuit–a right to rescind their individual loans, they cannot and do not seek such relief in this action. *See, e.g.*, *Andrews v.*

B.  **Likelihood of success on claims giving rise to a protectable right of rescission**

Because Plaintiffs must show an imminent likelihood of irreparable harm under either test for a preliminary injunction, and because, as explained above, it appears that Plaintiffs may do so only by showing an APR violation giving rise to a protectable right of rescission, the Court will limit its discussion to the alleged APR violations.  For several reasons, Plaintiffs are highly unlikely to succeed on the merits of their claims with respect to disclosure of the APR.  As a result, they cannot show irreparable harm in the form of potentially forfeited rescission rights.

As Defendants observed in their motion to dismiss the operative Second (Corrected) Amended Complaint ("SCAC"), Plaintiffs attack the adequacy of Defendants' APR disclosures only indirectly, referring to allegedly misleading "interest rate disclosures."  *See* Defs. Mot. to Dismiss SCAC, at 13 n.20 (citing SCAC ¶¶ 68, 86-88).  These allegations presumably rely on one of two theories: that Defendants violated § 226.17(c) by failing to disclose a composite APR applicable to the loans; or that Defendants violated § 226.19(b) by failing to disclose the true cost of the loans in the form of an APR.  With respect to the former claim, § 226.17(c) "simply requires that the APR, which appears only on the [Truth in Lending Disclosure Statement], be a composite rate rather than the . . . initial interest rate."  *Plascencia v. Lending 1st Mortgage*, No. C 07-4485 CW, 2008 WL 1902698, *7 (N.D. Cal. Apr. 28, 2008).  Where, as here, the loan simply discloses such a rate on the TILDS, Courts uniformly have rejected this type of claim.  See *Amparan v. Plaza Home Mortg., Inc.*, No. C 07-4498 JF, 2008 WL 5245497, at *10 (N.D. Cal. Dec. 17, 2008); *Plascencia*, 2008 WL 1902698, at *7

---

*Chevy Chase Bank*, 545 F. 3d 570, 578 (7th Cir. 2008) (holding that rescission may not be sought on a class-wide basis).  In that respect, it is highly doubtful whether this Court would have jurisdiction to enter an injunction for the protection of rights not sought to be vindicated through this action.  *See, e.g.*, *Zepeda v. INS*, 753 F.2d 719, 728-29 & n.1 (9th Cir. 1983).  While a proper, narrowly drawn injunction "may incidentally benefit" non-parties to an action, *id*. at 28 n.1 (quoting *Gregory v. Litton Systems, Inc.*, 472 F.2d 631, 633-34 (9th Cir.1972)), such an effect indeed must be "incidental" to relief actually sought and granted in the subject action.  *Id*. (explaining that the broader "practical effect[s]" of an injunction "do[] not militate against the legal limitations that should be placed on the injunction).

1    A second possible theory is that alleged discrepancies between the "yearly" interest rate listed in the subject notes and the APR listed in the TILDS created impermissible ambiguity and confusion with respect to the actual cost of the loan. Numerous courts have rejected such a claim. As the Fourth Circuit explained in *Smith v. Anderson*, the term "APR" has a meaning distinct from that of "interest rate." Because the APR "considers, by definition, a broader range of finance charges when determining the total cost of credit as a yearly rate," discrepancies between the "interest rate" stated in a loan note and the APR stated on a TILDS are not misleading. *Smith v. Anderson*, 801 F.2d 661, 663-64 (4th Cir. 1986); *see also Mincey v. World Savings Bank, FSB*, __ F. Supp. 2d __, 2008 WL 3845438, at *27 (D.S.C. Aug. 15, 2008); *Robinson v. First Franklin Fin. Corp.*, Civ. No. 05-6652, 2006 WL 2540777, at *4 (E.D. Pa. April 31, 2006) (citing *Smith*, 801 F.2d at 663). This Court recently relied on *Andrews v. Chevy Chase Bank, FSB*, 240 F.R.D. 612, 618-19 (E.D. Wis. 2007) to distinguish *Smith*, holding that under certain circumstances a plaintiff *may* state a claim based on discrepancies between the interest rate disclosed in the note and the APR disclosed in the TILDS. *See Amparan*, 2008 WL 5245497, at *6. However, as in *Andrews*, the Court permitted such a claim *only* because the loan documents at issue referred exclusively to a low, initial "teaser" rate–a rate that would apply for only thirty days and which therefore did *not* bear the relationship to the APR described in *Smith*. *Id*.

In the instant case, the notes consistently stated the actual interest rate, not a low, initial teaser rate. *See, e.g.*, Yandel Decl. Exs. F, G, & K (Mandrigues notes dated April 7, 2004, April 18, 2005, and August 4, 2006, disclosing annual interest rates of 4.763%, 5.486%, 6.790%, respectively); Roberts Decl., Ex. B, at 1-3 (Mandrigues TILDS for loans dated April 7, 2004, April 18, 2005, and August 4, 2006, disclosing APRs of 4.929%, 5.578%, and 6.846%, respectively); SCAC, Ex. 2 (Jones note and TILDS, indicating interest rate of 7.681% and APR of 7.877%, respectively), Ex. 3 (Minyen note and TILDS, indicating interest rate of 5.190% and APR of 5.331%, respectively); Ex. 4 (Clauson note and TILDS, indicating interest rate of 5.320% and APR of 5.469%, respectively). Any "perceived discrepancy [between the interest rate disclosed in the note and that provided as the APR on the TILDS] arises. . . from the

lender's compliance with the truth-in-lending requirements." *Smith*, 801 F.2d at 663. Accordingly, Plaintiffs lack a viable claim for APR disclosure violations and a corresponding right to rescission. Because the loss of a right that Plaintiffs do not enjoy cannot constitute irreparable harm, Plaintiffs have failed to show an entitlement to the "extraordinary and drastic remedy" of preliminary injunctive relief. *Munaf v. Geren*, 128 S.Ct. 2207, 2210 (2008).

### C.  Balance of hardships

Even if a plaintiff succeeds in showing some level of imminent, irreparable harm, the "extraordinary" nature of preliminary injunctive relief nonetheless requires that courts "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008) (quoting *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). In the instant case, Plaintiffs argue that the balance of hardships tips sharply in their favor because foreclosures would cause "human suffering" while the requested injunction merely would "maintain the status quo." *See* Pls.' Reply at 7:4-13. Defendants counter that notwithstanding their retention of a security interest and ultimate right of foreclosure on any mortgages subject to the proposed injunction, that injunction would remove "one of the few incentives for borrowers to make payments where home values have fallen precipitously." Defs.' Opp. at 14:25-26. The injunction purportedly would jeopardize payments on interest amounting to approximately $727 million per month–Defendants' primary source of revenue. Hairr Decl. ¶ 4. In addition, Defendants assert that pursuant to federal lending regulations, the loans' non-accrual status would trigger a series of increasingly severe accounting adjustments depriving Defendants of much of their operational revenue. Hairr Decl. ¶¶ 5-13.

Plaintiffs fail to address any of the foregoing arguments, repeating only that the instant case presents a straightforward "conflict between financial concerns and preventable human suffering" which must be resolved in Plaintiffs' favor. Pls.' Reply at 7:8-11 (quoting *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004)). However, given the extremely broad nature of the injunctive relief sought and the very substantial portion of Defendants' assets potentially subject to the requested class-wide injunction, the Court finds this to be a rare case in which financial

Case 5:07-cv-04497-JF Document 157 Filed 01/20/09 Page 13 of 14

considerations might well tip the balance of hardships in Defendants' favor, even if Plaintiffs could show some imminent likelihood of irreparable harm to themselves and the class members.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction will be denied. Moreover, because considerations of judicial economy weigh heavily in favor of a stay pending the JPML's transfer decision, and because the countervailing interest in protecting Plaintiffs from potentially irreparable harm has proven illusory, the Court will order the instant action stayed pending a decision by the JPML. Plaintiffs' motion for class certification will be terminated without prejudice, and may be re-noticed following and in accordance with the JPML's decision.

**IT IS SO ORDERED**

DATED: 1/20/09

_____
JEREMY FOGEL
United States District Judge

1  This Order has been served upon the following persons:
   Alicia Anne Adornato    AAdornato@reedsmith.com
2  David M. Arbogast    darbogast@law111.com, jkerr@law111.com
3  Jack R. Nelson    jnelson@reedsmith.com, cahunt@reedsmith.com
4  Jeffrey K Berns    jberns@law111.com, staff@jeffbernslaw.com
   Jonathan Shub    jshub@seegerweiss.com, atorres@seegerweiss.com
5  Keith David Yandell    kyandell@reedsmith.com, dkelley@reedsmith.com
6  Michael C Eyerly    eyerly@kbla.com
   Michael J. Quirk    mquirk@wcblegal.com
7  Patrick DeBlase    deblase@kbla.com
8  Paul R. Kiesel    Kiesel@kbla.com, cgarcia@kbla.com

9  Notice has been delivered by other means to:
10

11 Mark R. Cuker
   Williams Cuker Berezofsky
12 1617 John F. Kennedy Blvd
13 Suite 800
   Philiadelphia, PA 19103
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28